William F. Brattain II (7305007)
BAKER BRATTAIN LLC
821 N Street Suite 101
Anchorage AK 99501
907 277 3232 (Telephone)
907 279 2323 (Facsimile)
brattain@bakerbrattain.com (email)

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| ERA HELICOPTERS, INC., a Delaware Corporation, | ) |
| Plaintiff, | ) Case No.A02-0131 CV (JKS) |
| vs. | ) TRIAL BRIEF: PRATT WHITNEY CANADA, INC. |
| PRATT & WHITNEY CANADA, INC., *et. al.* | ) |
| Defendants. | ) |

COMES NOW the defendant, Pratt Whitney Canada, Inc., by and through its attorney of record, William F. Brattain II, Baker Brattain LLC, and submits it initial Trial Brief:

## I. PRELIMINARY STATEMENT

This is a property damage case. Plaintiff seeks compensatory damages for the destruction of the Helicopter and for lost profits. Plaintiff claims that defendants performed negligent maintenance and provided defective parts for the engine. Defendants contend that their maintenance was not negligent, parts were not defective and the Helicopter was destroyed due to negligence of the plaintiff and its agents. Plaintiff contends that the law of Alaska governs. Defendants contend that Nevada law governs. The Court has ruled that Alaska law governs.



Baker Brattain
821 N Street, Suite 101
Anchorage, AK 99501
Telephone: 907.277.3232 Facsimile: 907.279.2323

The *sine qua non* of ERA Helicopters ("ERA") case depends on proving the failure of a CT Disk was either due to the tortious design or manufacture of it by PWC or the service and maintenance of it by DAI, or both. Because there is insufficient evidence to prove either proposition, under any theory of liability, ERA's claims must fail.

Moreover, if the jury determines that either proposition is true to some degree, as to either PWC or DAI, the damages which could be awarded to ERA is limited due to the paucity of legally cognizable evidence.

## II ESSENTIAL FACTS

| | |
|---|---|
| DATE OF OCCURRENCE: | 13 August 2000 |
| REGISTRATION: | N 174 EH |
| MODEL: | BELL 412 |
| ENGINE: | PT6 T-3/3B |
| | No. 1 Power Section S/N 62224<br>No. 2 Power Section S/N 62059<br>Combining Gearbox S/N 1936 |
| SITUS: | Cold Springs, NV |
| OWNER: | ERA Helicopters |

**N 174 EH (BELL 412 HELICOPTER):**

N 174 EH was a Bell 412 helicopter is operated by one pilot powered by an engine with two power sections, a model PT-6T ("twin-pack") manufactured by PWC.

**CARGO HOOK:**



Baker Brattain
821 N Street, Suite 101
Anchorage, AK 99501
Telephone: 907.277.3232 Facsimile: 907.279.2323

N 174 EH was fitted with a cargo hook on the center of the underside of the hull. The hook was used to attach sling loads, i.e. loads suspended from wire cables that join at a ring or other coupling that is then attached to the cargo hook.

**BAMBI BUCKET:**

One type of sling load is a "Bambi bucket", a cloth, plastic reinforced and wire hardware container designed to carry water to fight forest fires. N 174 EH's pilot had the ability to release its cargo ( the water contained in the Bambi Bucket) but could also jettison the Bambi Bucket assembly (wires, hook, bucket) in its entirety. The volume of the Bambi Bucket ( and thus the weight) was controlled by the pilot using adjustment devices built into the Bambi Bucket.

**THE COMPRESSOR TURBINE ("CT") DISC:**

The Compressor Turbine disk (the "CT disk") is a round metal disk made from a nickel-based alloy called Waspaloy. It has jagged ridges called "fir trees running around the circumference at regular intervals. Metal blades are fitted between every fir tree and allow the disk to rotate when hot gases pass by it in the engine compartment "hot section". The CT disk is a highly sophisticated, complex , and highly machined component. It, together with the CT blades are very expensive (in excess of $25,000). It is about the size of a large salad plate. It rotates at speeds exceeding 25,000 rpm.

Baker Brattain
821 N Street, Suite 101
Anchorage, AK 99501
Telephone: 907.277.3232 Facsimile: 907.279.2323

**THE INTERMEDIATE DRIVE SHAFT/SPRAG CLUTCH:** ERA further contends that PWC's design of its intermediate drive shaft assembly was defective because it failed in torsional overload when the number one engine failed and sudden demand was placed on the number two engine. ERA contends the intermediate drive shaft ought not have failed under these circumstances i.e., one engine failure and theorizes that the sprag clutch engaged, disengaged and then reengaged, causing the drive shaft to fail in torsional over load.

**THE ACCIDENT:**

No one actually saw the helicopter crash. The pilot, Lester Shadrick, did not survive the crash. The closest witness was a follow along pilot, Les Hanberg, who briefly observed N 174 EH a few minutes before he over flew the crash site. Based upon his later examination of his observations, Hanberg concluded that at the time he last saw N 174 EH, Mr. Shadrick was already attempting emergency maneuvers to compensate for his partial loss of engine power. Hamberg observed Shadrick make a sharp banking turn "down slope". He was approximately a mile or more behind N 174 EH at the time of these observations. He did not see N 174 EH jettison its long line sling or water cargo. A few minutes later Hanberg observed the crash site, immediately reported the incident, and then asked for clearance to dump his load of water on the crash site.

**PILOT MISTAKES:**

**Over gross:** Before the accident flight, Lester Shadrick was required to complete a form for calculation of aircraft weight and balance.. He wrote his body weight as 225 pounds, while

Baker Brattain
821 N Street, Suite 101
Anchorage, AK 99501
Telephone: 907.277.3232 Facsimile: 907.279.2323

his autopsy notes his weight as almost 300. The Department of the Interior's concluded that the helicopter was 600 to 900 pounds in excess of the allowable gross weight for the conditions of the day.

According to witness statements, pilot Shadrick had been working repeated 8 hour shifts in Nevada from August 1, 2000 until the day of the crash on August 13th. This accident occurred near the end of one of those repeated 8 hour shifts as Shadrick was heading up a canyon with a full bucket of water. Prior to the accident, numerous witnesses observed Shadrick performing dangerous and impermissible maneuvers when fighting the fires, thereby over-taxing the Bell 412's engine and the CT Disk.

**Failure to jettison:** Shadrick proceeded up a ridge with a load of water, he apparently lost engine power to the No. 1, or left power section when the CT disk failed. According to ERA operations manual, the pilot was required to jettison the bambi bucket. Shadrick did not jettison the bucket. The ERA helicopter operations manual explicitly directs pilots that they must "if any difficulties arise during the flight and emergency landing is necessary, be prepared to release the load immediately. If autorotation is necessary, release the load immediately."

The button to release the external load was located on the pilot's cyclic, which should have been held by pilot Shadrick throughout the accident sequence. Chief ERA pilot Terry Cole testified that it would take an average pilot a maximum of only 2 seconds to press the electrical cargo release and jettison the water bucket. ERA's own manual advised the pilot in advance of the danger of failing to jettison the load: "If for some reason the

Baker Brattain
821 N Street, Suite 101
Anchorage, AK 99501
Telephone: 907.277.3232 Facsimile: 907.279.2323

load will not release, use a flared landing so as to eliminate dragging the load on the ground prior to touchdown as this will cause the rotor craft to nose over with inadequate aft cyclic control to compensate." Here, the bambi bucket dragged along the ground for approximately 90 feet. Ultimately, the bucket became wrapped around a pinion tree and pulled the nose of the helicopter directly into the hillside.

**Pilot Conduct Caused the CT Disk Failure:** Much of the evidence will demonstrate that the CT Disk had experienced "creep" *(i.e.,* its diameter grew) due to excessive use of the engine caused by Lester Shadrick's reckless piloting i.e., probable operation of N 174 EH in manual fuel control mode; over grossing N 174 EH during demanding flight operations; and his failure to jettison his long line sling load.

## III. ERA'S THEORY OF THE CASE

In its claims against PWC, ERA asserts that the CT Disk in the left engine failed due to a undisclosed manufacturing or design error, or it was somehow negligent is some untold way. *Complaint ¶ 10.6.1; 18.0; 26.0.* No evidence has been adduced to support either theory. Rather, all metallurgist and other qualified examiners who examined the failed CT Disk were unable to find any defect in the metal or design of the blade suggesting the CT Disk was somehow defective or that PWC was negligent in any respect.

## IV. PWC'S THEORY OF THE CASE

PWC will present evidence to establish N 174 EH crashed because it was necessarily being operated at low altitude due to its firefighting mission; the engine failed because of pilot abuse; it lost altitude because it was being operated over gross; the pilot



Baker Brattain
821 N Street, Suite 101
Anchorage, AK 99501
Telephone: 907.277.3232 Facsimile: 907.279.2323

neglected to jettison the sling (contrary to explicit instructions and training) and, as a consequence, it snagged on a tree which pitch poled the helicopter to the ground.

PWC will present evidence to establish that the intermediate drive shaft failure occurred, not as a result of any defect in the sprag clutch or intermediate drive shaft, as contended by ERA, but rather because of the post-impact rotor strike and/or an improperly maintained or contaminated combining gear box.

## V. LIABILITY ISSUES

**1. No proof of defective product.** Under Alaska law, a manufacturer is strictly liable in tort when (1) an article he places on the market; (2) knowing that it is to be used without inspection for defects, (3) proves to have a defect; (4) that causes injury; (5) to a human being. *Pratt & Whitney Canada, Inc. v Sheehan*, 852 P.2d 1173, 1176 (Alaska 1993), *citing Clary v Fifth Avenue Chrysler Center*, 452 P.2d 244 (Alaska 1969). Alaska recognizes strict liability damages for purely economic losses if the plaintiff proves (1) causation and (2) that the loss occurred under "dangerous circumstances." *Id.* at 1177.

In this case, however, ERA fails not for lack of a legal theory but rather fails because it has no evidence to support the legal theory. There is no evidence to suggest the CT disk was in anyway defective at the time it was sold by PWC. There is no evidence to suggest either the sprag clutch and/or intermediate drive assembly was in anyway defective at the time it was sold by PWC.

**2. Plaintiff cannot prove that PWC was negligent**

Baker Brattain
821 N Street, Suite 101
Anchorage, AK 99501
Telephone: 907.277.3232 Facsimile: 907.279.2323

To establish the tort of negligence under Alaska law, a plaintiff must prove four elements: (1) duty; (2) breach of duty; (3) causation; and (4) harm. *Parks Hiway Enters, LLC v CEM Leasing, Inc.*, 995 P.2d 657, 667 (Alaska 2000). A failure to prove causation is fatal to a plaintiff's negligence claim. *Lyons v Midnight Suntransportation Services, Inc.*, 28 P.2d 1202, 1204 (Alaska 1996) (holding that "[w]ith the element of causation lacking, even the most egregious negligence cannot result in liability.").

In order to prove causation, a plaintiff must prove (1) actual causation and (2) proximate, or legal, causation. *Vincent v Fairbanks Memorial Hospital*, 862 P.2d 847, 851 (Alaska 1993). Alaska uses the "but for" test when evaluating actual cause. Id. (holding that the "'but for' test is the appropriate test for actual causation"). In order to prove proximate cause, a plaintiff must satisfy the "substantial factor test" by proving that (1) the defendant's conduct is a substantial factor in bringing about the harm and (2) that there is no rule of law relieving the actor from liability. *Id.*

Significantly, ERA has adduced not a scintilla of evidence to suggest that PWC did anything to the CT disk, the sprag clutch and/or intermediate drive assembly contributory to failure.

## VI. DAMAGES

In Alaska, the party seeking damages has the burden of proof of such damages. *Onam Alaska v Bell Lavalin*, 842 P.2d 148, 154 (Alaska 1992). Damages must be proven with specificity and cannot be speculative. *Cent. Bering Sea Fishermen's Ass'n v Anderson*, 54 P.3d 271, (Alaska 2002) (noting that "an award cannot stand . . . if the amount is the result of the

Baker Brattain
821 N Street, Suite 101
Anchorage, AK 99501
Telephone: 907.277.3232 Facsimile: 907.279.2323

speculation."); *Chenega Corp. v Exxon Corp.*, 991 P.2d 769, 799 (Alaska 1999) (stating that "the law does not permit a recovery of damages which is merely speculative or conjectural.") (internal citations and quotations omitted). Alaska strictly construes awards of future damages. *Chenega Corp.*, 991 P.2d at 799 (Alaska 1999) (noting that "[a]s a general rule, [Alaska law] refuses to allow a plaintiff damages relating to the tortious injury unless the proofs establish with reasonable probability the nature and extent of those consequences.").

**1. Loss Of Use:**

There are two types of damages that may be recovered in cases involving destruction or damage of personal property: (1) the lost value or cost of repairing the item, and (2) the loss of use of the item. Because the helicopter was totally destroyed only compensation, in some form for its loss of use would be appropriate. Richard Larew , ERA's 30 (b) (6) designee on the issues associated with its damage claim, was unable to competently support ERA's claimed loss of use damages at his deposition. Although Larew and his counsel promised that the information would be delivered later that day, it was not until a week later, after all opportunity to depose Mr. Larew on the particulars of the claim had passed, that ERA finally condescended to send a summary of its claimed damages albeit without any evidentiary support other than that originally provided by Mr. Larew on October 1, 2003. *Plaintiffs Id. 7. See also, PWC's Motion In Limine To Limit Trial Testimony and Striking Plaintiff's Exhibits 7-9.*

Because ERA's claim for loss of use damages is, on the record, so speculative this court should follow the procedure established by the Alaska Supreme Court in those cases



Baker Brattain
821 N Street, Suite 101
Anchorage, AK 99501
Telephone: 907.277.3232 Facsimile: 907.279.2323

where loss of use damages are assuredly present but where their computation would be too speculative. In those cases, the Alaska Supreme Court has repeatedly concluded prejudgment interest was the only damage element which could be awarded. *State v Stanley*, 506 P.2d 1284 (Alaska 1973), and rehearing denied 509 P.2d 279, was a case involved damage to a fishing vessel sufficient to constitute a constructive total loss.

In that case, the Court found plaintiff's evidence was too speculative to support an award for loss of use. However, the trial court's award of prejudgment interest on the value of the vessel from the date of the loss was approved. The Supreme Court noted that such an award served the purpose of compensating the plaintiff for loss of use of the vessel:

> Such an award is to compensate for the loss of the funds representing the value of the vessel. To grant such an award plus a separate one for damages attributable to loss of use of the vessel constitutes a double recovery. In order to make a wronged plaintiff whole, under certain circumstances, it may be more appropriate to award the actual, provable damages attributable to loss of use of property than to award interest from the date of loss. Both interest and an award of loss of use of property, however, are not permissible.

*Id.* at 1295. See also, *Brinkerhoff v Swearingen Aviation Corp.*, 663 P.2d 937 (Alaska 1983), where the Court repeated its observation that an overlapping of loss of use damages and prejudgment interest would constitute a double recovery.

**2. Duty To Mitigate:** ERA has a strict duty to mitigate damages. *Irving v Bullock*, 549 P.2d 1184, 1187 (Alaska 1976) (stating that "[i]t is the duty of any person who has been injured to use reasonable diligence and reasonable means under the circumstances in order



Baker Brattain
821 N Street, Suite 101
Anchorage, AK 99501
Telephone: 907.277.3232 Facsimile: 907.279.2323

to prevent the aggravation of such injuries to mitigate his damages and to effect a recovery."). Consequently, a plaintiff's failure to mitigate damages results in a dollar-to-dollar deduction to his recovery for the amount of damages he failed to mitigate. *Johnson v Alaska State Dep't of Fish & Game*, 836 P.2d 896, 910 (Alaska 1991).

**VII. OBJECTION TO EXHIBITS:** PWC adopts the objections advanced by UNC/Dallas Airmotive to plaintiff's exhibits.

**VIII JURY INSTRUCTIONS:** The proposed jury instructions regarding product liability issues (Alaska Pattern Instructions 7.01, 7.02, 7.03, 7.03a, 7.06, 7.07, 7.08 and 7.08a) are submitted at this time without waiving PWC 's right to later object or withdraw same, because plaintiff will not be able to prove at trial that a claim of product liability lies against these defendants.

**NINTH CIRCUIT PATTERN JURY INSTRUCTIONS**

| | |
|---|---|
| 2.2 | Bench Conferences and Recesses |
| 2.6 | Deposition as Substantive Evidence |
| 3.7 | Opinion Evidence, Expert Witnesses |
| 3.11 | Two or More Parties - Different Legal Rights |
| 4.5 | Additional Instructions of Law |

**ALASKA CIVIL PATTERN JURY INSTRUCTIONS**

| | |
|---|---|
| 3.01 | Negligence - When Plaintiff Entitled to Recover |
| 3.02A | Comparative Negligence |
| 3.03A | Negligence Defined |
| 3.06 | Legal Cause |
| 3.07 | Multiple Causes/Superseding Cause |
| 3.09 | Introduction to Special Verdict Form |
| | |
| 7.01 | Products Liability - Plaintiff's Claims |
| 07.02 | Liability for Defect in Product |

Baker Brattain
821 N Street, Suite 101
Anchorage, AK 99501
Telephone: 907.277.3232 Facsimile: 907.279.2323

| | |
|---|---|
| 07.03 | Defectiveness Defined |
| 07.03a | Scientific Unknowability |
| 07.06 | Strict Liability in Tort - Comparative Negligence |
| 07.07 | Strict Liability in Tort - Legal Cause |
| 07.08 | Strict Liability in Tort - Multiple Causes |
| 07.08a | Strict Liability in Tort - Superseding Cause |
| 20.14 | Conversion, Loss, or Destruction of Property |
| 20.16 | Loss of Use of Property |
| 20.17A | Fair Market Value Defined |
| 20.17B | Value of Loss of the Use of Property Defined |
| 20.18A | Avoidable Consequences |

## IX. SUPPLEMENTAL JURY VOIR DIRE

1. Are you or any member of your immediate family involved in the aviation industry?

2. Are you or any member of your immediate family or have been a pilot?

3. A member of a flight crew?

4. Have you or any member of your immediate filed an insurance claim?

5. Have you or any member of your immediate filed an insurance claim for damage to personal property which you owned? Like a car, boat or airplane?

6. Have you or any member of your family ever had repairs to an aircraft done?

7. Have you or any member of your family ever had repairs to an aircraft engine done?

8. Is the Federal Aviation Administration presently or in the past employed you or any members of your family? The NTSB?



Baker Brattain
821 N Street, Suite 101
Anchorage, AK 99501
Telephone: 907.277.3232 Facsimile: 907.279.2323

9. Are you or any member of your family involved with any law enforcement agency?

10. Are you or any member of your family involved with any investigate agency, either public or private?

11. Are you or any member of your family employed by, or have in the past, been employed by the Federal government?

12. Are you or any member of your family employed by or have in the past, been employed the State of Alaska?

13. Are you or any member of your family employed by or have in the past, been employed any employer in a fire fighting capacity?

14. Are you or any member of your family employed in position where accurate reporting of information is critical on matters of safety? For example, a pilot may be required to make weight and balance computations, or a captain of a vessel may be required to make computations regarding the stowing of cargo all of which may be necessary to assure a safe operation ?

15. Have any of you taken a flight in an airplane where you have been asked how much you weigh prior to boarding the aircraft?

16. Have any of you taken a flight in a small airplane where your bags have been weighed?

17. Have any of you taken a flight in a small aircraft where your bags have been purposefully left behind and carried on a different flight because of weight concerns?

Baker Brattain
821 N Street, Suite 101
Anchorage, AK 99501
Telephone: 907.277.3232 Facsimile: 907.279.2323

18. Have any of you ever refused or asked to be relocated from Emergency Exit Row seating on a commercial flight?

19. Have any of you ever anchored a boat?

20. Have any of you ever been involved in an emergency situation where your actions, or inaction, played a significant role in the outcome of the emergency situation? For example, having a moose run out in front of your car and you, as the driver of the car, being required to suddenly make an emergency maneuver to avoid a collision?

Date: February 20, 2007

BAKER BRATTAIN LLC

By: ______________________

William F. Brattain
Alaska Bar Association 7305007
Attorney for PWC

Baker Brattain
821 N Street, Suite 101
Anchorage, AK 99501
Telephone: 907.277.3232 Facsimile: 907.279.2323

## CERTIFICATE OF SERVICE

I, William F. Brattain, hereby certify that a copy of the foregoing pleading and any supporting exhibits were mailed, first postage prepaid, on February 20, 2007 to:

Jon A. Kodani, Esq.
Jeffrey J. William
LAW OFFICES OF JON A KODANI
2200 Michigan Avenue
Santa Monica CA 90404

David A. Devine
GROH EGGERS, LLC
3201 C St., Suite 400
Anchorage, AK 99503-3967

Michael D. Hall
Office of the Clerk
Federal Building, United States Courthouse
222 W. 7th Avenue, Box 4 Room 229
Anchorage, AK 99513-7564
A02-0131 CV (JKS)

William F. Brattain II

Baker Brattain
821 N Street, Suite 101
Anchorage, AK 99501
Telephone: 907.277.3232 Facsimile: 907.279.2323