Jon A. Kodani, Esq. (*pro hac vice*)
Jeffrey J. Williams, Esq. (*pro hac vice*)
**LAW OFFICES OF JON A. KODANI**
2200 Michigan Avenue
Santa Monica, CA  90404
Tel. (310) 453-6762

**Attorneys for Plaintiff**
Era Helicopters, LLC

## UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| **ERA HELICOPTERS, LLC**, a Delaware company, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | Civil Case No. |
| vs. ) | **A02-0131 CV (JKS)** |
| ) | |
| **UNC AIRWORK CORPORATION** a/k/a ) | |
| DAI Airwork Corporation, a Delaware corporation; ) | |
| **DALLAS AIRMOTIVE, INC.** d/b/a ) | |
| UNC Airwork Corporation and DAI Airwork Corporation, ) | |
| a Delaware corporation; ) | |
| **PRATT & WHITNEY CANADA, INC.**, ) | |
| a Canadian corporation; and ) | |
| **DOES 1 through 500**, Inclusive, ) | |
| ) | |
| Defendants. ) | |
| ) | |

## PLAINTIFF'S OPPOSITION TO
## "*DAI'S MOTION FOR RULINGS OF LAW RE: RECOVERABLE DAMAGES*"
### (Doc. 448 and 454)

/ / /

/ / /

/ / /

## TABLE OF CONTENTS

1.0    SUMMARY OF PLAINTIFF'S POSITION . . . . . . . . . . . . . . . . . . . .    2

2.0    FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    4

3.0    THE SUMS PAID TO ERA AVIATION, INC. BY USAU
       AND OTHER SUBROGATED COLLATERAL
       SOURCES CANNOT BE USED TO REDUCE ANY
       AWARD IN FAVOR OF THE PLAINTIFF . . . . . . . . . . . . . . . . . . . .    6

       3.1    Era's Insurers Are Subrogated Collateral Sources . . . . . . . .    8

       3.2    Alaska's Collateral Source Statute Forbids
              Any Reduction Based On Payments Made By
              Subrogated Collateral Sources . . . . . . . . . . . . . . . . . . . . . . . . .    9

       3.3    The Defendants' Interpretation Of The Statutory
              Collateral Source Rule Is Inconsistent With The
              Majority Opinion In *Falconer*, And Consistent
              With The *Falconer* Dissent . . . . . . . . . . . . . . . . . . . . . . . . . . . .    11

       3.4    On The Basis Of The Present Record, The Court
              Cannot Determine Whether Any Award Should
              Be Reduced By The Lesser Amount Of Money
              That Was Paid By Non-Collateral Sources
              To Settle The Subrogation Claims . . . . . . . . . . . . . . . . . . . . . .    13

4.0    ERA AVIATION, INC. ASSIGNED ITS CLAIMS TO
       ERA HELICOPTERS, LLC *BEFORE* ERA AVIATION, INC.
       FILED FOR CHAPTER 11 BANKRUPTCY PROTECTION . . . . .    14

5.0    AT THE TIME OF THE ASSIGNMENT, ERA AVIATION,
       INC. POSSESSED A VALID AND ENFORCEABLE
       RIGHT TO RECOVER THE FAIR MARKET VALUE OF
       THE DESTROYED HELICOPTER . . . . . . . . . . . . . . . . . . . . . . . . . . .    14

Era Av 4EH/PO/WO Lg24175/20070321

**TABLE OF CONTENTS**
*(continued)*

**6.0     PLAINTIFF IS ENTITLED TO RECOVER LOSS OF USE DAMAGES *AND* PREJUDGMENT INTEREST, BUT NOT FOR THE SAME OVERLAPPING TIME PERIOD** . . .     15

**7.0     PLAINTIFF IS ENTITLED TO RECOVER LOSS OF USE DAMAGES FOR THE NINE MONTH PERIOD AFTER THE CRASH, REGARDLESS OF WHEN ERA RECEIVED PAYMENT FROM ITS OWN INSURANCE COMPANIES** . . . . . .     17

**8.0     SUMMARY OF PLAINTIFF'S RECOVERABLE DAMAGES** . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     20

**9.0     CONCLUSION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     21

**TABLE OF AUTHORITIES**

**Cases**

Alaska Const. Equipment, Inc. v. Star Trucking, Inc.,
128 P.3d 164 (Alaska 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     17-18

Beaulieu v. Elliott,
434 P.2d 665 (Alaska 1967) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     16

Beaux v. Jacob,
30 P.3d 90 (Alaska 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     16

Era Av 4EH/PO/WO Lg24175/20070321

# TABLE OF AUTHORITIES

**Cases** *(continued)*

Bevins v. Peoples Bank & Trust Co.,
671 P.2d 875 (Alaska 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    14

Brinkerhoff v. Swearingen Aviation Corp.,
663 P.2d 937 (Alaska 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 5-6, 8, 10, 16

Chenega Corp. v. Exxon Corp.,
991 P.2d 769 (Alaska 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    7-8

Falconer v. Adams,
974 P.2d 406 (Alaska 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    2, 5-12, 14

Gibson v. GEICO General Ins. Co.,
— P.3d — (2007 WL 625206) (Alaska 2007) . . . . . . . . . . . . . . . . . . . . . . .    12

Liimatta v. Vest,
45 P.3d 310 (Alaska 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    12

Loncar v. Gray,
28 P.3d 928 (Alaska 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    6

State v. Stanley,
506 P.2d 1284 (Alaska 1973) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    15

**Statutes**

AK.ST.ANN. § 09.17.070 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    2, 5-12, 14

AK.ST.ANN. § 09.30.070(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    15

## 1.0    SUMMARY OF PLAINTIFF'S POSITION.

The defendants' motion (Doc. 448) and joinder (Doc. 454) request an advisory opinion as to what might happen if certain hypothetical events occur in the future. Plaintiff respectfully submits that the court should deny the defendants' motion, and decline to issue an advisory opinion – especially on the basis of the skimpy evidentiary record that now exists.

1.    First, *if* the jury awards damages to the plaintiff for the fair market value of the helicopter, then Alaska's statutory collateral source rule forbids any reduction of that award based on the $2,047,480.00 that was paid to Era Aviation, Inc. by its own insurers, because the defendants cannot prove that Era's insurers were *unsubrogated* collateral sources. (AK.ST.ANN. § 09.17.070.) **"Accordingly, when, as here, a defendant fails to prove unsubrogated collateral source payments, the appropriate recourse for the trial court is to deny reduction of the verdict …"** (Falconer v. Adams, 974 P.2d 406, 413, fn. 8 (Alaska 1999).) To the extent the defendants say that the common law (Brinkerhoff v. Swearingen Aviation Corp., 663 P.2d 937, 942 (Alaska 1983)) must control this issue because section 09.17.070 makes no mention of *subrogated* collateral sources (like Era's own insurers), the defendants' are wrong, and indeed, the defendants are making the exact same arguments that were expressed by the *Falconer* **dissent**. However, the *Falconer* **majority** rejected the defendants' views, and held that a plaintiff *can* recover for a claim that the subrogee has settled, and that the trial court *cannot* reduce an award by the amounts paid by the subrogated collateral sources. (Id. at p. 411.) On these particular issues, the common law has been abrogated by section 09.17.070, and *Brinkerhoff* is no longer good law in light of *Falconer*.

- 2 -

2.    At the time of trial, plaintiff Era Helicopters, LLC, will have the burden of proving that the claims previously held by Era Aviation, Inc. have been transferred to Era Helicopters, LLC.  The undisputed evidence demonstrates that in April, 2005 – more than eight months *before* Era Aviation, Inc. filed for Chapter 11 bankruptcy protection in December 2006 – Era Aviation, Inc. transferred and assigned all of its claims in this matter to the present plaintiff, Era Helicopters, LLC.  (See, Exh. "1" [Master Bill of Sale and Assignment].)  The defendants' attempts to cast suspicion on this rather ordinary and unremarkable assignment are novel and creative, but they lack any real substantive merit.

3.    Finally, plaintiff Era Helicopters, LLC, agrees that it cannot recover both prejudgment interest and loss of use damages for the same overlapping time period.  But plaintiff *is* entitled to recover prejudgment interest accruing after the end of any time period used to calculate the loss of use damages.  Plaintiff also disagrees with the defendants' argument that the loss of use damages terminated on some earlier date before the helicopter could be replaced.  However, that issue is not ripe for decision until such time as the defendants produce some admissible evidence to meet their burden of proving that Era Aviation, Inc. was fully compensated for the loss of the helicopter by an earlier date.

Based on the foregoing, plaintiff Era Helicopters, LLC, respectfully requests that the Court deny the defendants' motion (Doc. 448) and joinder (Doc. 454).

/ / /

- 3 -

## 2.0   FACTS.

1.   The subject helicopter was destroyed on August 13, 2000.

2.   The helicopter was owned by Era Aviation, Inc.

3.   On April 1, 2005, Era Aviation, Inc. assigned all of its claims in this matter to Era Helicopters, LLC.  (Exh. "1" [Master Bill of Sale and Assignment].)

4.   On December 28, 2005 – more than eight months *after* the assignment of these claims to Era Helicopters, LLC – Era Aviation, Inc. filed a voluntary petition for Chapter 11 bankruptcy protection.  (*In re Era Aviation, Inc.*, U.S. Bankruptcy Court, District of Alaska, Case No. 05-02265, Doc. 1.)

5.   Contrary to the defendants' arguments, USAU did *not* pay $2,047,500.00 to Era Aviation, Inc.  USAU paid only $204,750.00 to Era Aviation, Inc.  (Steiner Depo., pp. 44-45, 65-66; Exh. "2" [check].)

6.   Several  other participating insurers (*not* USAU) also paid additional sums to Era Aviation, Inc.  The total sum of all payments made to Era Aviation, Inc. by all insurers (including USAU) for the loss of the helicopter was $2,047,480.00 (not $2,047,500.00.)  (Exh. "3" [Claim Payment Status].)

/ / /

- 4 -

7.    On behalf of itself and the other participating insurers, USAU sued the defendants, and then settled those subrogation claims in March, 2004.   The terms of that settlement, including the amount of the settlement, are confidential.

8.    At the time of trial, plaintiff Era Helicopters, LLC, will introduce admissible evidence establishing that the fair market value of the helicopter at the time of the crash was $2,100,000.00.  (Doc. 409, Larew Testimony, pp. 4-10.)  The defendants have no witnesses who will contradict this testimony.

9.    At the time of trial, plaintiff Era Helicopters, LLC, will also introduce admissible evidence establishing that the helicopter could not be replaced until more than nine months after the crash, and the loss of revenue sustained by Era Aviation, Inc. during that nine month period was $814.972.37.  (Doc. 409, Larew Testimony, pp. 10-14.)  The defendants have no witnesses who will contradict this testimony.

/ / /

/ / /

/ / /

**3.0    THE SUMS PAID TO ERA AVIATION, INC. BY USAU AND OTHER
SUBROGATED COLLATERAL SOURCES CANNOT BE USED
TO REDUCE ANY AWARD IN FAVOR OF THE PLAINTIFF.**

The defendants' motion asks the Court to declare that the defendants are entitled to
reduce any award for the fair market value of the helicopter by the total amount paid to Era
Aviation, Inc. by Era's own subrogated insurers ($2,047,480.00), because Era's insurers
settled their subrogation claims for an undisclosed confidential sum.

- Applying the common law in *Brinkerhoff*, the Supreme Court of Alaska held that a
  plaintiff *cannot* recover for a subrogated claim that the subrogee has settled, and that
  the trial court *must* reduce the plaintiff's award by the amounts paid by the
  subrogated collateral sources.  (Brinkerhoff v. Swearingen Aviation Corp., 663 P.2d
  937, 942 (Alaska 1983).)

- Sixteen years later, applying the post-*Brinkerhoff* collateral source statute in
  *Falconer*, the Supreme Court of Alaska held that a plaintiff *can* recover for a
  subrogated claim that the subrogee has settled, and that the trial court *cannot* reduce
  the plaintiff's award by the amounts paid by subrogated collateral sources.  (Falconer
  v. Adams, 974 P.2d 406, 411-413 (Alaska 1999); AK.ST.ANN. § 09.17.070.)

Thus, on the narrow issues of whether a plaintiff may recover for claims settled by the
subrogated collateral sources, and whether the trial court is permitted to reduce the plaintiff's

award to reflect payments received from those subrogated collateral sources, *Brinkerhoff*

and *Falconer* cannot be reconciled.[1]

| | ***Brinkerhoff*** (1986) | ***Falconer*** (1999) | ***This Case*** (2007) |
|---|---|---|---|
| ***Collateral source benefits?*** | $672,500 paid by Brinkerhoff's own insurer | $5,000 paid by Falconer's own insurer | $2,047,480 paid by Era Aviation, Inc.'s own insurers |
| ***Were the collateral sources subrogated?*** | Yes | Yes | Yes |
| ***Were the subrogation claims settled?*** | Yes, for $375,000 | Yes, for $5,000 | Yes, for a confidential sum |
| ***Is the plaintiff/insured allowed to recover for settled subrogated claims?*** | No | Yes | Yes |
| ***May the trial court reduce award to reflect payments from subrogated collateral sources?*** | Yes | No (*reversing trial court's $5,000 reduction*) | No |

Today, in this case based on diversity jurisdiction, *Falconer* is the controlling legal

precedent which governs the resolution of the issues raised by the defendants' motion:

**Brinkerhoff** **and the common law have been abrogated by section 09.17.070.**  (Loncar v.

Gray, 28 P.3d 928, 933, fn. 19 (Alaska 2001) ["A second prong of the common law

collateral source rule, which 'prohibit[ed post-verdict] reduction of plaintiff's damages when

he ha[d] received compensation from another source' ... was abrogated by AS 09.17.070."])

---

[1]    It is worth noting that Justice Matthews – the author of Brinkerhoff v. Swearingen Aviation Corp., 663 P.2d 937, 942 (Alaska 1983) – was also the author of the dissenting opinion in Falconer v. Adams, 974 P.2d 406, 411 (Alaska 1999), where he noted that the views expressed by the *Falconer* majority were inconsistent with *Brinkerhoff*.

### 3.1    Era's Insurers Are Subrogated Collateral Sources.

Everyone agrees that USAU and the other participating insurers of Era's helicopter possessed a right of subrogation.  After all, USAU was at one time a co-plaintiff in this lawsuit, and the defendants paid a substantial sum of money to settle subrogation claims made by USAU on behalf of itself and the other participating insurers of the helicopter.

Although there seems to be no dispute that Era's insurers were subrogated, the defendants say that Era's own insurers were not collateral sources, a flawed analysis which is aptly summarized in a single sentence in their motion.  According to the defendants:  "Since USAU had a right of subrogation, which it actively pursued and settled in this lawsuit, the payment from USAU was not a collateral source, and therefore the collateral source statute has nothing whatsoever to do with this case."  (Def. Motion [Doc. 448], p. 5.)  On this point, the defendants are just plain wrong.

USAU and the other participating insurers of the helicopter are now – and have always been – collateral sources, because they were the tort victims' (Era's) own insurers. (Chenega Corp. v. Exxon Corp., 991 P.2d 769, 790 (Alaska 1999) ["A collateral source is 'a source [that] is entirely independent of and collateral to a wrongdoer who is legally responsible for the injuries.' [Citation omitted.]  Thus, while a victim's own insurance or a charity may be a collateral source, a tortfeasor's insurance is not, since it is actually paid for by the tortfeasor."])  The settlement of USAU's subrogation claims did *not* magically transform Era's own insurers into non-collateral sources, even though the same settlement may have converted Era's insurers into *unsubrogated* collateral sources.[2]

---

[2]    *See*, *e.g.*, Falconer v. Adams, *supra*, 974 P.2d at p. 411 ("Taylor-Welch implicitly asserts that, by extinguishing State Farm's right of subrogation, Allstate's mid-trial payment to State Farm converted the subrogated medical expenses State Farm incurred on Falconer's behalf into unsubrogated benefits that became subject to offset under AS 09.17.070(a).")

Citing *Chenega*, the defendants claim that a "party that has a right to pursue a subrogation claim after making a payment is not a collateral source within the meaning of the statute." (Def. Motion [Doc. 448], p. 5.) But *Chenega* says no such thing. In *Chenega*, the Supreme Court of Alaska held that the source of the payments involved in that case (the Trans-Alaska Pipeline Liability Fund or TAPL) was *not* a collateral source, but there was absolutely no discussion in *Chenega* that suggests collateral sources become non-collateral sources when they settle subrogation claims. The TAPL was deemed to be a non-collateral source not because it settled its subrogation rights, but because the TAPL was *not* "entirely independent of" the tortfeasor (Exxon.) (Chenega Corp. v. Exxon Corp., supra, 991 P.2d at p. 792.)

Based on the foregoing, Era's own insurers are now, and they have always been, collateral sources. Therefore, the only material question is whether those collateral sources are subrogated (in which case no reduction is allowed) or unsubrogated (in which case a limited reduction might be allowed if the defendants satisfy their burden of proof under section 09.17.070.) (Falconer v. Adams, supra, 974 P.2d at pp. 411-413.)

## 3.2     Alaska's Collateral Source Statute Forbids Any Reduction Based On Payments Made By Subrogated Collateral Sources.

The defendants say that because USAU *was* subrogated, the statutory collateral source rule (AK.ST.ANN. § 09.17.070) does not apply here, and the court must instead calculate the amount of any offset based on common law cases like *Brinkerhoff*, which was decided three years *before* the enactment of section 09.17.070.

The plaintiff responds that because USAU *was* subrogated, Alaska's statutory collateral source rule prohibits any offset for payments Era received from its own insurers.

To paraphrase the holding of the Supreme Court of Alaska in _Falconer_: "It is undisputed that [the insurers'] payments [to Era Aviation, Inc.] were initially subject to a right of subrogation; hence, under subsection (a) of AS 09.17.070, [the defendants] would not have been entitled to introduce evidence of those payments to reduce the jury's damage award." (Falconer v. Adams, supra, 974 P.2d at p. 411.)  In other words, when a defendant seeks to reduce an award based on payments made by collateral sources, the defendant must prove that those collateral sources had no right of subrogation, and in the absence of such proof, there can be no reduction, credit, or offset.

Because it is undisputed that Era's insurers _were_ subrogated, the statute forbids a reduction in any award based on Era's receipt of collateral source benefits from those subrogated insurers.

> **Accordingly, when, as here, a defendant fails to prove unsubrogated collateral source payments, the appropriate recourse for the trial court is to deny reduction of the verdict;**  on appeal of an unsupported reduction, the correct remedy is reversal, not a remand for a second opportunity to prove up the claim.   We note that [Era] has consistently acknowledged that the medical payments he received from State Farm were subject to a right of subrogation.   We find no reason to presume that the parties and their insurers will be unable to protect against the possibility of double recovery through negotiations or separate proceedings. (Falconer v. Adams, supra, 974 P.2d at p. 413, fn. 8.)

In short, the defendants have not even attempted to meet their "burden of proving [their] right to an offset by 'introduc[ing] evidence of amounts received' by [Era] from a collateral source that '[did] not have a right of subrogation by law or contract.'    Thus, [they are] entitled to no reduction of the verdict unless [they] prove[] that [the settlement] payment[s]

- 10 -

actually extinguished [USAU's] right of subrogation against [Era]."  (Falconer v. Adams, supra, 974 P.2d at p. 412.)

### 3.3    The Defendants' Interpretation Of The Statutory Collateral Source Rule Is Inconsistent With The Majority Opinion In *Falconer*, And Consistent With The *Falconer* Dissent.

The undeniable fact that *subrogated* collateral sources are not specifically mentioned in section 09.17.070 does **not** mean that payments made by such sources can be used as the basis for a reduction under the common law.  If that was the case, then there would have been no need for the Alaska Supreme Court to have engaged in its extensive analysis of the statute in *Falconer*, since in that case (and this case) it was "undisputed that [the insurer's] payments … were initially subject to a right of subrogation."  (Falconer v. Adams, supra, 974 P.2d at p. 411.)

- • If the defendants' arguments were accepted as a correct statement of the law, and if *Brinkerhoff* and its common law had survived the enactment of section 09.17.070, then a majority of the Alaska Supreme Court in *Falconer* would not have voted to reverse the trial court's reduction of the plaintiff's award in that case, and the Alaska Supreme Court's entire analysis of the issue in *Falconer* would have consisted of a single sentence approving of the reduction with a citation to *Brinkerhoff*.  (Falconer v. Adams, supra, 974 P.2d at p. 416 ["At common law a plaintiff may not recover for a subrogated claim that the subrogee has settled.  [Citing *Brinkerhoff*]."  [Matthews, C.J. and Eastaugh, J., dissenting].)

- 11 -

- Similarly, *Falconer* does **not** say that the statute's reference to payments "from collateral sources that *do not* have a right of subrogation" means that the common law applies to payments from collateral sources that *do* have a right of subrogation. To the contrary, this was the position of the *Falconer* **dissent**. (Falconer v. Adams, supra, 974 P.2d at p. 415 ["Since the statute does not apply, the common law does."] and at p. 416 ["Alaska Statute 09.17.070 does not apply as to amounts received by a claimant from collateral sources which have a right of subrogation. It is uncontested that State Farm had a right of subrogation. It should follow that AS 09.17.070 does not apply and the common law does."])

*Falconer* leaves no room for much debate. After *Falconer*, it is clear that the statute controls the issue of when trial courts are permitted to reduce awards for payments made to tort victims by ***both*** subrogated ***and*** unsubrogated collateral sources. ***Falconer* reversed the trial court's reduction even though the payments were made by subrogated collateral sources, just as they were in this case.** If the collateral sources are subrogated, then there can be no reduction at all. (Falconer v. Adams, supra, 974 P.2d at p. 413, fn. 8 ["Accordingly, when, as here, a defendant fails to prove unsubrogated collateral source payments, the appropriate recourse for the trial court is to deny reduction of the verdict; on appeal of an unsupported reduction, the correct remedy is reversal, not a remand for a second opportunity to prove up the claim."]) On the other hand, if the collateral sources are not subrogated, then the defendants may be entitled to a limited reduction, but only if they can first satisfy their burden of proof under section 09.17.070. (Falconer v. Adams, supra, 974 P.2d at p. 412-413 ["On the record presently before us, we conclude that the trial court

lacked a sufficient evidentiary basis to deduct any collateral source payments from the jury's award of damages."])

**3.4     On The Basis Of The Present Record, The Court Cannot Determine Whether Any Award Should Be Reduced By The Lesser Amount Of Money That Was Paid By Non-Collateral Sources To Settle The Subrogation Claims.**

There is one important question left unasked by the defendants' motion: Since *Falconer* and section 09.17.070 prohibit the reduction of any award based on the $2,047,480.00 that was paid to Era by the subrogated collateral sources, might the defendants be entitled to a lesser reduction based on their payment of confidential sums to settle the claims made by the subrogated collateral sources?

With regard to this question – which the defendants have *not* discussed in their motion – the defendants and their insurers are *not* collateral sources, so the payments made by those non-collateral sources are also clearly not within the scope of the collateral source statute discussed above.  (Liimatta v. Vest, 45 P.3d 310, 320 (Alaska 2002) ["The funds advanced by Liimatta's insurer were therefore not from a 'collateral source,' and AS 09.17.070 does not apply."]; Gibson v. GEICO General Ins. Co., — P.3d — (2007 WL 625206) (Alaska 2007) ["But AS 09.17.070 does not apply to this situation since payments from a tortfeasor's insurance company are not considered 'collateral' payments."]))

But the answer to this question cannot be provided on the basis of the present record. Among other things, there is currently no proof in the record of how much money was paid by each of the defendants to settle the subrogation claims, so the amount of the reduction (if

any) applicable to each defendant cannot now be determined.[3]  For now, the plaintiff takes no position on whether such a lesser reduction is (or is not) warranted.

## 4.0    ERA AVIATION, INC. ASSIGNED ITS CLAIMS TO ERA HELICOPTERS, LLC *BEFORE* ERA AVIATION, INC. FILED FOR CHAPTER 11 BANKRUPTCY PROTECTION.

The defendants' motion and joinder suggest that there is no proof that Era Aviation, Inc. ever assigned any claims to the present plaintiff, Era Helicopters, LLC.  (Def. Motion [Doc. 448], pp. 5-6.)  Plaintiff's short response to this argument is that the time to present such proof has not yet arrived.  Adequate proof in the form of admissible documentary evidence and testimony from an appropriate witness will be presented at the time of trial, if necessary.[4]  For now, the plaintiff respectfully offers a copy of the assignment document as Exhibit "1."

## 5.0    AT THE TIME OF THE ASSIGNMENT, ERA AVIATION, INC. POSSESSED A VALID AND ENFORCEABLE RIGHT TO RECOVER THE FAIR MARKET VALUE OF THE DESTROYED HELICOPTER.

The defendants' motion and joinder also say that "Era Aviation, Inc. had no power or authority to assign to Era Helicopters any property damage claim in excess of $52,500." (Def. Motion [Doc. 448], pp. 6-7.)  This argument is premised on the mistaken assumption

---

[3]    One big problem is that the defendants have not identified how much money they each separately paid to settle the subrogation claims.  For example, suppose the jury assigns no fault to one defendant, and some fault to the other defendant.  Any credit or offset available to the defendant at fault would naturally be limited to the sum it contributed to the settlement.  The defendant at fault would not be entitled to an offset or credit based on payments made by its co-defendant.

[4]    Based on this uncontraverted assignment, plaintiff does not know why the defendants continue to make such a fuss about this non-issue.

- 14 -

that any award for the fair market value of the helicopter must be reduced by the full amount of money Era Aviation, Inc. was paid by its own insurers (subrogated collateral sources.) But for the reasons discussed above, that is no longer the law after the enactment of section 09.17.070 and after *Falconer*.

As the assignee of Era Aviation, Inc.'s claims, plaintiff Era Helicopters, LLC (like Era Aviation, Inc.) is entitled to ask the jury to award damages for the fair market value of the helicopter. And if the jury makes such an award, then that award cannot be reduced by the sums paid to Era Aviation, Inc. by subrogated collateral sources. (Falconer v. Adams, supra, 974 P.2d at pp. 411-413; AK.ST.ANN. § 09.17.070.)

It necessarily follows that to the extent the defendants' motion ask this court to declare that the value of the assignment between Era Aviation, Inc. and Era Helicopters, LLC is limited to $52,500.00, the defendants' motion must be denied.

## 6.0     PLAINTIFF IS ENTITLED TO RECOVER LOSS OF USE DAMAGES *AND* PREJUDGMENT INTEREST, BUT NOT FOR THE SAME OVERLAPPING TIME PERIOD.

The defendants' motion asks the court to rule that plaintiff can recover loss of use damages *or* prejudgment interest, but *not both*. But the defendants' request is based on a misstatement of the damages being sought by the plaintiff.

"The purpose of awarding prejudgment interest is not to penalize the losing party, but rather to compensate the successful claimant for losing the use of the money between the date he or she was entitled to it and the date of judgment. A corollary purpose is to prevent the judgment debtor from being unjustly enriched by the use of that money." (Bevins v. Peoples Bank & Trust Co., 671 P.2d 875, 881 (Alaska 1983).)

- 15 -

It is undisputed that plaintiff cannot recover *both* prejudgment interest on the fair market value of the helicopter *and* loss of use damages *from the same date of loss*.  (State v. Stanley, 506 P.2d 1284, 1295 (Alaska 1973).)  "To grant such an award plus a separate one for damages attributable to loss of use of the [property] constitutes a double recovery." (Ibid.)  But in this case, the plaintiff will not be seeking prejudgment interest and loss of use damages for the same overlapping period of time, and plaintiff will *not* be compensated twice for the same injury or damage.

- Plaintiff will seek to recover damages for the *loss of revenue generated by the destroyed helicopter* for the period of time from August 2000 until April 2001. Those nine months between August 2000 and April 2001 represent the reasonable amount of time it took to replace the destroyed helicopter.  (Doc. 409 [Larew Testimony], pp. 10-15.)  *For that same nine month period of time between August 2000 and April 2001, the plaintiff is claiming no entitlement to prejudgment interest.*

- By statute, prejudgment interest cannot begin to run until the defendants have been served with the complaint.  (AK.ST.ANN. § 09.30.070(b).)  Thus, prejudgment interest in this case does not begin to run until July 2002 (when the defendants were served with the complaint.)  Plaintiff will seek to recover prejudgment interest for the *loss of use of the money owed by the defendants* for the period of time from July 2002 until the date of judgment in June 2007 (roughly five years).  *For that same period of time between July 2002 and June 2007, the plaintiff is claiming no entitlement to loss of revenue.*

Because these damages are compensation for different injuries and different time periods, there is no risk of awarding overlapping damages or providing the plaintiff with an impermissible double recovery. (*See, e.g.*, Brinkerhoff v. Swearingen, supra, 663 P.2d at pp. 942-943 ["But, here neither side contended that the loss of use extended beyond October 7, the date on which prejudgment interest commences. Under these circumstances there is no potential for double recovery. The award was not erroneous."])

## 7.0    PLAINTIFF IS ENTITLED TO RECOVER LOSS OF USE DAMAGES FOR THE NINE MONTH PERIOD AFTER THE CRASH, REGARDLESS OF WHEN ERA RECEIVED PAYMENT FROM ITS OWN INSURANCE COMPANIES.

Finally, the defendants' motion argues that plaintiff cannot recover damages for loss of use of the helicopter beyond the date when Era Aviation was paid by its insurers. The defendants' arguments are contrary to Alaska law.[5]

"The plaintiff is entitled to be compensated for the fair value of the use of the [personal property] during the period … reasonably necessary to replace it." (Alaska Pattern Jury Instruction 20.16.) "The general principle underlying the assessment of damages in tort cases is that an injured person is entitled to be replaced as nearly as possible in the position he would have occupied had it not been for the defendant's tort." (Beaulieu v. Elliott, 434 P.2d 665, 670-671 (Alaska 1967); Beaux v. Jacob, 30 P.3d 90, 97 (Alaska 2001).)

/ / /

---

[5]    The defendants' arguments are also moot because it is undisputed that Era was *never* fully compensated for the full $2.1 million fair market value of the helicopter at any time, either before or after the nine month period used to calculate loss of use damages.

> In cases of total destruction, loss of use damages should be permitted for
> the period of time that is reasonably required to obtain a suitable
> replacement for the property.  Because the act of seeking a replacement is
> predicated on the property being destroyed, this period includes a
> reasonable period of time, if any, following the accident that is needed to
> determine whether the property has in fact been totally destroyed or
> whether it remains repairable, so long as any delay in reaching this
> determination is not the fault of the party seeking damages.  To obtain loss
> of use damages, the owner need not necessarily establish as part of its
> proof that there was an actual attempt or ability to obtain a replacement for
> the destroyed property.   Rather, we adopt the replacement standard
> because it is a sensible measurement to capture the expectation interest;
> the damages suffered by the owner of the property are not necessarily
> affected by whether a replacement was ultimately obtained.   (Alaska
> Const. Equipment, Inc. v. Star Trucking, Inc., 128 P.3d 164, 169-170
> (Alaska 2006).)

Of course, if the evidence presented at trial proves that it took more than nine months to

obtain a replacement helicopter (Doc. 409 [Larew Testimony]. pp. 10-14), then it doesn't

matter if Era Aviation, Inc. received full payment from its insurers sooner than nine months

after the loss.  There is no evidence that Era's receipt of insurance funds placed Era in the

same position it occupied before the crash, and there is no evidence that Era could eliminate

the loss of use damages it suffered merely by receiving or investing the insurance funds.

"We believe that making loss of use compensation available in cases of total destruction will

enable damage awards to fully reflect the expectation interest of the owner seeking damages.

This expectation interest includes both the expectation that the owner would obtain the

benefit of the bargain (loss of use) and that it would have a useful piece of property at the

end of the contract (replacement)."  (<u>Alaska Const. Equipment, Inc. v. Star Trucking, Inc.</u>, 128 P.3d 164, 169 (Alaska 2006).)

The defendants note that in <u>*Alaska Construction*</u>, the Alaska Supreme Court observed that "loss of use damages may no longer accrue for an owner once the owner has received actual payment for the value of its property, as, for example, where the owner obtains a cash amount pursuant to a settlement agreement."  (<u>Alaska Const. Equipment v. Star Trucking</u>, <u>supra</u>, 128 P.3d at p. 170.)  But this dicta in <u>*Alaska Construction*</u> does not say that plaintiff's loss of use damages are cut off once Era Aviation was paid by its own insurers.  In fact, there were no such insurance payments in <u>*Alaska Construction*</u>, and that case was remanded to the trial court to calculate loss of use damages based on "what amount of time was reasonably required for [plaintiff] to obtain a suitable replacement for its [property]."  (<u>Id</u>. at p. 170.)

The law in Alaska is crystal clear on this point: "Loss of use damages are available to an owner of damaged property even where the property has been totally destroyed and is not repairable."  (<u>Alaska Const. Equipment v. Star Trucking</u>, <u>supra</u>, 128 P.3d at p. 171.)  "A plaintiff in a total destruction case deprived of his reasonable loss-of-use expenses has simply not been made whole."  (<u>Id</u>. at p. 169.)  In this case, loss of use damages must be calculated from the date of the crash until at nine months later – the earliest date when a replacement helicopter could be obtained.  (Doc. 409 [Larew Testimony], pp. 10-14.)


/ / /

/ / /

- 19 -

## 8.0    SUMMARY OF PLAINTIFF'S RECOVERABLE DAMAGES.

To prevent any further misunderstanding as to the precise nature and amount of all damages plaintiff claims it may be entitled to recover in this action, plaintiff respectfully offers the following chart to summarize plaintiff's damages:

**A.  Destroyed Helicopter**
FMV of N174EH (*Doc. 409, pp. 4-10*)                                                    **$2,100,000.00**

**B.  Loss of Revenue**
Aug. '00 to Apr. '01 (*Doc. 409, pp. 10-15*)                                           **$814,972.37**

**C.  Employee Expenses**
Employee expenses (*Doc. 409, pp. 14-15*)                                             **$25,086.62**

**D.  Prejudgment Interest**

| | | |
|---|---|---|
| Principal sum (*A + B + C*) | $2,940,058.99 | |
| Accrual date (A.S. 09.30.070(b)) | July '02 | |
| Rate (A.S. 09.30.070(a)) | 9.25% | |
| Interest per annum | $271,955.46 | |
| Accrual period (years) (approx.) | 5 | **$1,359,777.28** |

**E.  Total Compensatory Damages**
*(A + B + C + D)*                                                                       **$4,299,836.27**

**F.  Possible Post-Trial Reduction**                                                  **Confidential**
*Confidential sum paids by non-collateral*
*sources (defendants' insurers) to settle*
*subrogation claims*

**G.  Punitive Damages**

| | | |
|---|---|---|
| Maximum (A.S. 09.17.020(f)(2)) | $500,000.00 | |
| Paid to state (50%) (A.S. 09.17.020(j)) | -$250,000.00 | |
| Net punitive damages (*maximum*) | | **$250,000.00** |

/ / /

## 9.0    CONCLUSION.

Based on the foregoing, plaintiff Era Helicopters, LLC, respectfully requests that the Court deny the defendants' motion (Doc. 448) and joinder (Doc. 454).

Respectfully Submitted,

Dated:  March __21__, 2007            **LAW OFFICES OF JON A. KODANI**

_____ s/  Jeffrey J. Williams _____

By:     Jon A. Kodani, Esq.
        Jeffrey J. Williams, Esq.

2200 Michigan Avenue
Santa Monica, CA  90404
Tel. (310) 453-6762
EMail *lojak@kodanilaw.com*

Attorneys for Plaintiff
Era Helicopters, LLC

- 21 -

## CERTIFICATE OF SERVICE
*Era Helicopters, LLC v. UNC Airwork Corp. et al.*
D.Alaska Case No. A02-0131 CV (JKS)

[XXXX]    I hereby certify that on _____ **March 21, 2007** _____,
I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses:

**For Defendants UNC Airwork Corp.**
**and Dallas Airmotive, Inc.**
David A. Devine, Esq.
Ken Eggers, Esq.
GROH EGGERS, LLC
3201 C Street, Suite 400
Anchorage, AK  99503
Tel. (907) 562-6474
Fax (907) 562-6044
EMail *devined@groheggers.com*
        *wardm@groheggers.com*

**For Defendant Pratt & Whitney**
**Canada Corp.**
William F. Brattain II
BAKER BRATTAIN, L.L.C.
N Street Plaza
821 N Street Suite 101
Anchorage, AK  99501
Tel. (907) 277-3232
Fax (907) 272-4850
EMail *brattain@bakerbrattain.com*
        *williamfbrattain@hotmail.com*

_____ s/ Jeffrey J. Williams _____

Jeffrey J. Williams, Esq.
LAW OFFICES OF JON A. KODANI

**Attorneys for Plaintiff**
**Era Aviation, Inc.**

2200 Michigan Avenue
Santa Monica, CA 90404-3906
Tel: (310) 453-6762
Fax: (310) 829-3340
**Email: *lojak@kodanilaw.com***

- 22 -