David A. Devine, AK Bar No. 7906015
GROH EGGERS, LLC
2600 Cordova Street, Suite 110
Anchorage, AK 99503
Phone: (907) 562-6474
Fax:    (907) 562-6044
devined@groheggers.com

Raymond L. Mariani, NY Bar No. RM2077
NIXON PEABODY LLP
50 Jericho Quadrangle, Suite 300
Jericho, NY 11753
Phone: (516) 832-7520
Fax:    (516) 832-7555
rmariani@nixonpeabody.com

Attorneys for Defendants
Dallas Airmotive, Inc. and
UNC Airwork Corp.

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| ERA HELICOPTERS, LLC, ) <br> a Delaware Company, ) <br> ) <br> Plaintiff, ) <br> ) <br> vs. ) <br> ) <br> UNC AIRWORK CORPORATION a/k/a DAI ) <br> Airwork Corporation, a Delaware corporation; ) <br> DALLAS AIRMOTIVE, INC., d/b/a UNC ) <br> Airwork Corporation and DAI Airwork, a ) <br> Delaware corporation; PRATT & WHITNEY ) <br> CANADA, INC., a Canadian corporation; and ) <br> DOES 1 THROUGH 500, Inclusive, ) <br> ) <br> Defendants. ) <br> _____ ) | Case No. A02-0131 CV  (JKS) <br><br><br><br><br> **DAI's REPLY BRIEF** <br> **IN FURTHER SUPPORT OF ITS** <br> **MOTION FOR RULINGS OF LAW** |

Defendants UNC Airwork Corporation and Dallas Airmotive, Inc. (jointly "DAI") file this Reply in further support of their Motion for Rulings of Law re: Recoverable

Damages that may be pursued by plaintiff in this case.

## I

## Era Cannot Recover the $2,047,480 Paid By USAU

In its opposition to DAI's motion for rulings of law, Era continues its practice of ignoring controlling Alaska Supreme Court precedent. In the extensive briefing on this issue, both now and in the past, Era has refused to discuss the holdings of *Ruggles ex rel. Estate of Mayer v. Grow*, 984 P.2d 509, 512 (Alaska 1999) and *Thomann v. Fouse*, 93 P.3d 1048, 1051 n 10 (Alaska 2004) even though these cases have been at the center of DAI's briefs on this issue. It is one thing for Era to ignore these cases when DAI discusses them in its motions; however, it is disconcerting that Era continues to ignore these cases even after the Court explained their import during the Status Conference on March 7, 2007.

In its Opposition, Era acknowledged that "[e]veryone agrees that USAU and the other participating insurers of Era's helicopter possessed a right of subrogation. After all, USAU was at one time a co-plaintiff in this lawsuit, and the defendants paid a substantial sum of money to settle subrogation claims made by USAU on behalf of itself and the other participating insurers of the helicopter." Opposition at 8. Nevertheless, Era continues its refusal to distinguish between a collateral source and a subrogation claim. Indeed, Era now tries to morph the two distinct concepts into a new "subrogated collateral sources" rule, even though there is no such rule in Alaska.

The principle that an insured, which is compensated by an insurance carrier for a property loss, lacks the legal authority to pursue a subrogation claim that the carrier elects to pursue itself has long been established in Alaska. *Truckweld Equipment Co. v. Swenson*

*Trucking*, 649 P.2d 234 (Alaska 1982) (a subrogated property insurer should be joined as a real party in interest to the litigation.); *Brinkerhoff v. Swearingen Aviation Corp.*, 663 P.2d 937, 942 (Alaska 1983) (insurance company's decision to settle its subrogation claim prevented the insured property owner from adding the carrier's subrogation claim to his own claim for damages).

*Ruggles ex rel. Estate of Mayer v. Grow*, 984 P.2d 509 (Alaska 1999) is directly on point.  "When an insurer pays expenses on behalf of an insured it is subrogated to the insured's claim.  **The insurer effectively receives an assignment of its expenditure by operation of law and contract.**" *Id.* at 512 (emphasis added).  The Court made it clear that "**the subrogated claim belongs to the insurer**" who "may pursue a direct action against the tortfeasor, discount and settle its claim, or determine that the claim should not be pursued." *Id.* (emphasis added).

*Thomann v. Fouse*, 93 P.3d 1048, 1051 n 10 (Alaska 2004) made the identical points:

1. When an insurer pays expenses on behalf of an insured it is subrogated to the insured's claim;

2. The insurer effectively receives an assignment of its expenditure by operation of law and contract;

3. The subrogated claim belongs to the insurer; and

4. The insurer has the right to pursue a direct action against the tortfeasor, discount and settle its claim, or determine that the claim should not be pursued.

In this case, USAU chose to pursue its subrogation claim in a direct action against the defendants.  USAU then chose to settle its claims and thereafter dismissed them "in their

entirety and with prejudice." Stipulation and Order at 4, Docket No. 189. Because the owner of the $2,047,480 subrogation claim chose to dismiss the claim in its entirety and with prejudice, Era has no authority to resurrect the claim in the hope of gaining a double recovery. **"[T]he insurance company's decision to settle its claim foreclosed this option."** *Brinkerhoff*, 663 P.2d at 942 (emphasis added).

Era's Opposition doesn't just ignore controlling Alaska subrogation law; it also completely fails to address this Court's earlier Orders which made it clear that Era is ***not*** allowed to recover a judgment that includes the $2,047,480 already paid by USAU. In the Order at Docket 333 at 1 this Court ruled: **"If Era is awarded damages, the full amount of the insurance proceeds paid to Era will be subtracted from the award (not simply the amount for which the insurer settled the subrogated claim)."** (emphasis added). See also the Order at Docket 404 at 1-2:

> Initially, United States Aviation Underwriters, Inc. ("Aviation Underwriters") and Era sought compensation for the loss of Era's helicopter from Defendants UNC Airwork Corporation/Dallas Airmotive, Inc. (collectively "DAI") and Pratt & Whitney Canada, Inc. ("PWC") for defective manufacturing, and from DAI for negligent repair and maintenance. … Aviation Underwriters settled its action with the Defendants. **All that remains is Era's claim for damages, to which Aviation Underwriters was not subrogated, *i.e.*, losses that were not covered by Era's insurance with Aviation Underwriters.** (emphasis added).

and the Order at Docket 439:

> In addition, the subrogation claims that originally formed a part of this litigation have settled. **Only ERA's claims for uninsured losses remain.** (emphasis added).

In the face of repeated rulings from this Court and controlling authority from the

Alaska Supreme Court, Era stubbornly repeats its assertion that it is entitled to recover the $2,047,480 from the defendants in this case pursuant to the Alaska collateral source statute, AS 09.17.070. However, the collateral source statute does *not* apply to subrogation payments. Instead, the statute only applies to payments received by a plaintiff "as compensation for the same injury from collateral sources that do *not* have a right of subrogation by law or contract." AS 09.17.070. (emphasis added). The statute only applies to "*unsubrogated* payments from collateral sources." *Gibson v. GEICO General Ins. Co.*, (Alaska Supreme Court Op. No. 6106 – March 2, 2007) at *11. (emphasis added). Era is relying on a statute that simply has no application to this case.

      The distinction between a collateral source and a subrogated source makes common sense as well as legal sense. A collateral source payment may well give a plaintiff a windfall double recovery but it does *not* expose a defendant to a double liability. In such cases, an argument can be made that since the windfall to the plaintiff doesn't actually inflict an additional harm on the defendant, there is no reason to deprive the plaintiff of the entire windfall. But in the case of a subrogation claim, the defendant *is* subject to a double liability since the subrogated insurer has the right to pursue its subrogation claim. As Era itself admits, that is exactly what happened in this case. USAU pursued its own subrogation claim against the defendants for the $2,047,480 and the defendants settled and secured the dismissal of that claim.

      Era's heavy reliance on *Falconer v. Adams*, 974 P.2d 406 (Alaska 1999) is equally misplaced and its argument that *Falconer* and Alaska cases dealing with subrogation claims cannot be reconciled is wrong. *Falconer* did *not* involve a settlement of an insurer's

subrogation claim. *Falconer* instead involved a case where one defendant was trying to obtain a credit for a payment made by another defendant, despite the fact that Alaska abandoned joint and several liability, repealed the Uniform Contribution Among Joint Tortfeasors Act, and instituted a pure several liability scheme where no defendant can ever be compelled to pay damages beyond those allocated to it based on its own percentage of fault.

The Alaska Supreme Court recognized exactly this limitation in *Wing v. GEICO Insurance Co.*, 17 P.3d 783 (Alaska 2001). In that case, Wing was injured by an uninsured motorist. GEICO, her automobile insurer, made payments to Wing for medical expenses and an additional $6,000 for economic loss. Wing sought an award against GEICO under her uninsured motorist coverage. At arbitration, her award of damages was reduced by the payments previously made by GEICO. Wing argued that the collateral source rule as interpreted in *Falconer v. Adams*, precluded the offset, but the Court disagreed:

> Wing is wrong. GEICO made all the relevant payments to Wing, or directly on her behalf, whereas in *Falconer* the issue involved credit, in the form of offsets, claimed by one defendant for payments made to the plaintiff by another defendant.

*Wing*, 17 P.3d at 788. *Falconer* might be relevant if Pratt & Whitney were to settle with Era and if DAI then sought a credit for the amount of that settlement; but *Falconer* is not even remotely relevant to the subrogation issue presented in DAI's Motion for Rulings of Law. The issue raised in DAI's motion should be determined in accordance with long established Alaska subrogation law, not by reference to a collateral source statute that by definition does not apply to payments made by a subrogated insurer.

## II

## Era Aviation Had No Power To Assign a Claim for $2,100,000

In its Opposition filed March 21, 2007, Era for the first time produced a copy of a purported assignment of claims from Era Aviation, Inc. to Era Helicopters, LLC. Era steadfastly refused to produce the document to the defendants, arguing that since discovery closed before Era Aviation filed bankruptcy and this issue arose, Era did not have to provide any information. Because DAI was deprived of all opportunity to engage in discovery, it cannot admit that the purported assignment is valid and enforceable. There are serious questions about the alleged assignment including the fact that it contradicts the previous declaration of Era Helicopters' chief financial officer, Anna Goss, who swore under oath that Era Aviation assigned the claims to Offshore Aviation, Inc. Goss Declaration at Docket 395. DAI will have to explore these discrepancies at trial since it has been denied a fair opportunity to address them in discovery.

Even if Era Helicopters has a valid assignment of claims, that assignment could not include a claim for the $2,047,480 that USAU paid Era Aviation since upon payment of that sum, the claim was assigned by operation of subrogation law to USAU. By the time of the alleged Era assignment in June 2005, USAU had not only pursued its own subrogation claim for the $2,047,480 – it had already settled and dismissed that claim with prejudice a full year before the alleged assignment. See Docket 189.

Era claims that the fair market value of the helicopter on the day of the accident was $2,100,000. Everyone admits USAU paid Era $2,047,480 and then pursued, settled and dismissed a subrogation claim for that amount. At the date of the alleged assignment, the

property damage claim Era Aviation actually possessed was not a claim for $2,100,000 but only a claim for no more than $52,520. Era Aviation had nothing more to assign to Era Helicopters, and therefore Era Helicopters has nothing more to pursue in this lawsuit.

## III

### Era Cannot Recover Loss of Use Damages and Prejudgment Interest

A.   **AS 09.30.070 Precludes Any Award of Loss of Use Damages.**

Era makes an interesting argument in its opposition to DAI's motion for rulings of law. However, that argument actually leads to the conclusion that Era is not entitled to pursue any loss of use damages in this case since those damages were incurred more than a year before Era asserted a claim against the defendants.

Era agrees that Alaska law prevents it from recovering both loss of use damages and prejudgment interest, but it then goes on to argue that its loss of use damages in this case are for the period of time from August 2000 to April 2001, while prejudgment interest does not begin until the defendants were served with the Summons and Complaint in July 2002.

AS 09.30.070 reflects the public policy of the State of Alaska that a plaintiff should not be allowed to pursue a claim for prejudgment interest, *i.e.* a claim for the loss of use of money, until the plaintiff first serves legal process or delivers to the defendant a "written notification that an injury has occurred and that a claim may be brought against the defendant for that injury." AS 09.30.070(b). The requirement of a written notification applies to both personal injury and property damage cases. *Id.*

Prejudgment interest and loss of use damages are mutually exclusive remedies in cases involving damage to personal property because they compensate a plaintiff for the

same loss of use of the property. *Alaska Construction Equipment v. Star Trucking, Inc.*, 128 P.3d 164, 170 (Alaska 2006); *State v. Stanley*, 506 P.2d 1284, 1295 (Alaska 1973), rehearing denied 509 P.2d 279. Since loss of use damages are the equivalent of prejudgment interest in personal property cases, the same public policy applies when a plaintiff pursues loss of use in lieu of prejudgment interest. A plaintiff cannot pursue a claim for loss of use damages unless and until it first delivers to the defendant a written notification that an injury has occurred and that a claim will be made against that defendant for the injury.

Era is claiming loss of use damages from August 2000 to April 2001, but Era did not deliver written notification of its claim against DAI until July 2002 when it served defendants with the Summons and Complaint in this action. As a result, Era cannot recover any loss of use damages from August 2000 to April 2001. Era is instead limited to a possible award of prejudgment interest on a principal amount of no more than $52,520 -- the difference between $2,100,000, which Era claims was the fair market value of the helicopter, and the $2,047,480 that Era received from USAU in December 2000.

B.   **Era Cannot Claim Loss of Use Damages After December 2000.**

In the alternative, Era cannot claim loss of use damages after December 2000. Era is seeking loss of use damages for a nine month period from August 13, 2000 when the crash occurred until April 2001. However, there was a significant intervening event. In December 2000, Era received $2,047,480 from its subrogated insurer, USAU. This means that as of December 2000, Era had full use of the $2,047,480 and therefore was no longer deprived of the money value of its property. Once Era had the use of the money value of its

helicopter, it would constitute a double recovery to let plaintiff both use the money and seek loss of use damages. "[L]oss of use damages may no longer accrue for an owner once the owner has received actual payment for the value of its property [.]" *Alaska Construction*, 128 P.3d at 170.

In *Liimatta v. Vest*, 45 P.3d 310 (Alaska 2002) an injured bicyclist sued the motorist who hit her. Before trial, the motorist's insurance carrier advanced plaintiff the sum of $10,214. The Supreme Court held that this amount had to be deducted from the jury verdict, but the Court also held that it was error to award the plaintiff prejudgment interest on the $10,214 since plaintiff received and had use of that money. *Id.* at 321. The Court held that to the extent the advanced funds were intended to compensate plaintiff for her past damages, an award of prejudgment interest on those funds after the day she received them would give her a "windfall double recovery, because [plaintiff] was no longer deprived of the use of the funds after she received them." *Id.* at 322. Instead, prejudgment interest was limited "to the periods when [plaintiff] was actually deprived of damages due her." *Id.*

The same principle applies here. Era cannot claim loss of use damages for destruction of its helicopter after it had use of $2,047,480 in December 2000 because it was no longer deprived of the value of its helicopter. To let Era use over $2,000,000 and still claim loss of use damages would constitute an impermissible double recovery, and therefore no loss of use damages should be permitted after December 2000.

C.   **Prejudgment Interest Only Accrues on Era's Uninsured Property Loss.**

In *Tookalook Sales & Service v. McGahan*, 846 P.2d 127, 129 (Alaska 1993), the Court first noted that the questions surrounding an award of prejudgment interest are

questions of law. The Court then held that prejudgment interest would not automatically accrue on all consequential damages sustained by a plaintiff and, in fact, interest should not be awarded when it would result in a double recovery. In that case, an action to rescind a contract for the sale of a motor home, the Court would not allow the plaintiff to recover prejudgment interest on the amount borrowed from a finance company in connection with the sale since the jury's award of consequential damages already included the interest payments plaintiff actually paid the finance company and since plaintiff did "not actually lose the use of those funds borrowed from" the finance company. *Id.* at 130.

Because Era received $2,047,480 in December 2000, it did not actually lose the use of that money and cannot seek prejudgment interest on that amount. Any claim for prejudgment interest must be limited to interest on property damages that were ***not*** covered by Era's insurance with USAU. Thus, if Era can prove uninsured property damages of $52,520, it could ask for prejudgment interest on that amount from the date the Summons and Complaint were served upon the defendants.

## **CONCLUSION**

For the foregoing reasons, DAI asks the Court to issue rulings of law regarding the damages plaintiff may seek and recover in this case as follows:

1. Era cannot recover an award of property damages for destruction of the helicopter that includes the $2,047,480 it received from its subrogated insurer, USAU. Since Era claims the total fair market value of the helicopter was $2,100,000 on the day of the accident, this means that the maximum amount Era can recover for the damage to the helicopter is $52,520.

2.   If Era proves a valid assignment of claims from Era Aviation, Inc. to Era Helicopters, LLC, the only claim that Era Aviation, Inc. owned and could assign to Era Helicopters, LLC for damage to the helicopter is a claim for no more than $52,520. With respect to the property damage claim, Era Aviation had nothing more to assign, which means Era Helicopters has nothing more to assert.

3.   Era cannot recover any loss of use damages because Era failed to deliver to defendants a timely written notification of a claim pursuant to AS 09.30.070.

4.   In the alternative, Era cannot recover any loss of use damages after December 2000 when Era received and had the use of the money value of the helicopter. To allow Era to both use the money and recover damages for loss of use would constitute an impermissible double recovery.

5.   If Era is allowed to recover prejudgment interest, any such award is limited to interest on Era's property losses that were not covered by insurance. With respect to the claim for damage to the helicopter, that means that prejudgment interest is limited to interest on an amount of no more than $52,520.

Respectfully submitted this 27th day of March, 2007.

          Defendants Dallas Airmotive, Inc. and
          UNC Airwork Corporation

          By:   s/ David A. Devine
                David A. Devine (AK Bar No. 7906015)
                GROH EGGERS, LLC
                2600 Cordova Street, Suite 110
                Anchorage, AK 99503
                Phone: (907) 562-6474
                Fax: (907) 562-6044
                E-Mail: devined@groheggers.com

>Raymond L. Mariani, NY Bar No. RM2077
>NIXON PEABODY LLP
>50 Jericho Quadrangle, Suite 300
>Jericho, N.Y. 11753
>Phone: (516) 832-7520
>Fax:   (516) 832-7555
>E-Mail: rmariani@nixonpeabody.com

I HEREBY CERTIFY that on March 27, 2007,
a copy of the foregoing was served **electronically** on:

Jon A. Kodani, Esq.
Jeffrey J. Williams, Esq.
LAW OFFICE OF JON A. KODANI

Attorney for Plaintiff Era Helicopters, LLC

William F. Brattain II, Esq.
BAKER BRATTAIN, LLC

Attorney for Defendant Pratt & Whitney

  s/ David A. Devine