Jon A. Kodani, Esq. (*pro hac vice*)
Jeffrey J. Williams, Esq. (*pro hac vice*)
**LAW OFFICES OF JON A. KODANI**
2200 Michigan Avenue
Santa Monica, CA  90404
Tel. (310) 453-6762

**Attorneys for Plaintiff**
Era Helicopters, LLC

# UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| **ERA HELICOPTERS, LLC**, a Delaware company, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | Civil Case No. |
| vs. ) | **A02-0131 CV (JKS)** |
| ) | |
| **UNC AIRWORK CORPORATION** a/k/a ) | |
| DAI Airwork Corporation, a Delaware corporation; ) | |
| **DALLAS AIRMOTIVE, INC.** d/b/a ) | |
| UNC Airwork Corporation and DAI Airwork Corporation, ) | |
| a Delaware corporation; ) | |
| **PRATT & WHITNEY CANADA, INC.,** ) | |
| a Canadian corporation; and ) | |
| **DOES 1 through 500**, Inclusive, ) | |
| ) | |
| Defendants. ) | |
| ) | |

## PLAINTIFF'S SECOND SUPPLEMENTAL TRIAL BRIEF

## TABLE OF CONTENTS

**1.0     SUMMARY OF UNRESOLVED MAJOR ISSUES** . . . . . . . . . . . . . . .     2

**2.0     PLAINTIFF MAY ASK THE JURY TO AWARD
DAMAGES FOR THE FAIR MARKET VALUE OF
THE DESTROYED HELICOPTER, AND IF THOSE
DAMAGES ARE AWARDED, THEN THE
APPROPRIATE POST-TRIAL REDUCTION IS A
CREDIT FOR THE SUMS PAID BY EACH
NON-COLLATERAL SOURCE (DEFENDANTS)
TO SETTLE THE SUBROGATION CLAIMS, AND
NOT THE SUMS THAT WERE PAID TO ERA
BY SUBROGATED COLLATERAL SOURCES** . . . . . . . . . . . . . . . . .     3

**2.1     The Collateral Source Statute Must Be Read
Broadly To Forbid Any Reduction Unless The
Defendants Can Prove That The Collateral
Sources Were Not Subrogated, And If The
Defendants Fail To Meet That Burden Of
Proof, Then There Can Be No Reduction** . . . . . . . . . . . . . . . . .     4

**2.2     Alaska's Collateral Source Statute Forbids A
Reduction Even Though Era's Insurance
Company Actively Pursued, Settled, And Then
Dismissed Its Own Subrogation Claims** . . . . . . . . . . . . . . . . . .     6

**2.3     *Gibson v. GEICO* Does Not Say That The Statute
Applies Only To Unsubrogated Payments From
Collateral Sources – That Case Says The Statute
Applies Only To Payments From Collateral Sources** . . . . . . . . .     8

**3.0     THE DEFENDANTS MAY NOT OFFER
EVIDENCE OF PAYMENTS ERA RECEIVED
FROM COLLATERAL SOURCES** . . . . . . . . . . . . . . . . . . . . . . . . . . .     9

**4.0     THE UNC DEFENDANTS MAY NOT OFFER
TESTIMONY IN THEIR CASE-IN-CHIEF FROM
TWO EMPLOYEES WHO WERE NEVER
IDENTIFIED DURING DISCOVERY OR IN
MANDATORY RULE 26 DISCLOSURES** . . . . . . . . . . . . . . . . . . . . .     10

Era Av 4EH/PO/WO Lg24175/20070330

**TABLE OF CONTENTS**
*(continued)*

**5.0   ALL CLAIMS AND RIGHTS OF
ERA AVIATION, INC. WERE ASSIGNED
TO PLAINTIFF ERA HELICOPTERS, LLC** . . . . . . . . . . . . . . . . . . . .   12

    **5.1   The Assignment Occurred *Before* Era Aviation Filed
A Voluntary Petition For Chapter 11 Bankruptcy** . . . . . . . . . . .   13

    **5.2   The Defendants Were Provided With A Copy Of The
Assignment In A Reasonable And Timely Manner** . . . . . . . . . . .   13

    **5.3   The Written Assignment Is Consistent With The
Declaration Of Ms. Anna Goss** . . . . . . . . . . . . . . . . . . . . . . . . . . .   15

    **5.4   The Assignor (Era Aviation, Inc.) Possessed
A Valid Legal Claim For The $2.1 Million Fair
Market Value Of The Helicopter** . . . . . . . . . . . . . . . . . . . . . . . . . .   16

    **5.5   Claims For Punitive Damages Can Be Assigned** . . . . . . . . . . . .   17

**6.0   THE UNC DEFENDANTS MAY BE HELD
STRICTLY LIABLE FOR INSTALLING A
DEFECTIVE COMPONENT PART IN ERA'S
ENGINE, EVEN IF THE UNC DEFENDANTS
DID NOT "SELL" THAT DISK TO ERA** . . . . . . . . . . . . . . . . . . . . . .   18

**7.0   PLAINTIFF'S OBJECTIONS TO DEFENDANTS'
EXHIBITS HAVE NOT BEEN RESOLVED,
AND THOSE OBJECTIONS SHOULD BE SUSTAINED** . . . . . . . . .   19

**8.0   CONCLUSION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   19

Era Av 4EH/PO/WO Lg24175/20070330

## <u>TABLE OF AUTHORITIES</u>

<u>Cases</u>

<u>Bell v. Precision Airmotive Corp.</u>,
42 P.3d 1071 (Alaska 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     18

<u>Britton v. Co-Op Banking Group</u>,
4 F.3d 742 (9th Cir. (E.D.Cal.) 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     12

<u>Croxton v. Crowley Maritime Corp.</u>,
758 P.2d 97 (Alaska 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     17

<u>Cuson v. Maryland Cas. Co.</u>,
735 F.Supp. 966 (D.Hawaii 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     17

<u>Deal v. Kearney</u>,
851 P.2d 1353 (Alaska 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     17

<u>Falconer v. Adams</u>,
974 P.2d 406 (Alaska 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     4-7, 9, 16

<u>First Federal Sav. and Loan v. Oppenheim, Appel, Dixon & Co.</u>,
629 F.Supp. 427 (S.D.N.Y. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     17

<u>Gibson v. GEICO General Ins. Co.</u>,
— P.3d — (2007 WL 625206) (Alaska 2007) . . . . . . . . . . . . . . . . . . . . . . .     3, 8

<u>Kleinwort Benson v. Quantum Financial Services, Inc.</u>,
285 Ill.App.3d 201 [673 N.E.2d 369] (Ill.App. 1996) . . . . . . . . . . . . . . . .     17

<u>Oppel v. Empire Mut. Ins. Co.</u>,
517 F.Supp. 1305 (S.D.N.Y. 1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     18

Era Av 4EH/PO/WO Lg24175/20070330

# TABLE OF AUTHORITIES

**Cases** *(continued)*

Ruggles v. Grow,
984 P.2d 509 (Alaska 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     7

Thomann v. Fouse,
93 P.3d 1048 (Alaska 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     7

Tolan v. Era Helicopters, Inc.,
699 P.2d 1265 (Alaska 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     9

Wing v. GEICO Insurance Co.,
17 P.3d 783 (Alaska 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     7

**Statutes and Rules**

FED.R.CIV.P. 26(a)(1)(A) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     11

Fed.R.Civ.P. 37(c)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     11

AK.ST.ANN. § 09.17.070(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     3, 6, 8-9, 16

AK.ST.ANN. § 09.68.060 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     12

Era Av 4EH/PO/WO Lg24175/20070330

Pursuant to the Court's Order (Doc. 413), plaintiff Era Helicopters, LLC, respectfully submits the following Second Supplemental Trial Brief:

## 1.0     SUMMARY OF UNRESOLVED MAJOR ISSUES.

Based on the parties' discussions during the preparation of the joint proposed Pretrial Order, plaintiff Era Helicopters, LLC, believes that the following major issues are still unresolved:

1.  **If the jury awards damages to plaintiff for the fair market value of the helicopter, may that award be reduced by the sums paid to Era by subrogated collateral sources?** Plaintiff submits the answer to this question is "*no*."

2.  **May the defendants offer evidence of payments made to Era by collateral sources?** Plaintiff submits the answer to this question is also "*no*."

3.  **May the defendants offer testimony in their case-in-chief from two employee witnesses (Mike Cumnock and Mike Snellgrove) who were never identified during discovery or in mandatory Rule 26 disclosures?** Plaintiff submits the answer to this question is also "*no*."

4.  **Whether the claims of Era Aviation, Inc., including its claim for punitive damages, were assigned to plaintiff Era Helicopters, LLC?** Plaintiff submits the answer to this question is "*yes*."

5.  **Whether the UNC defendants may be held strictly liable for selling, installing and repairing the CT disk?** Plaintiff submits the answer to this question is also "*yes*."

6.  **Whether the court should exclude the defendants' exhibits described in Appendices "A" and "B"?** Plaintiff submits the answer to this question is also "*yes*."

- 2 -

**2.0    PLAINTIFF MAY ASK THE JURY TO AWARD DAMAGES FOR THE FAIR MARKET VALUE OF THE DESTROYED HELICOPTER, AND IF THOSE DAMAGES ARE AWARDED, THEN THE APPROPRIATE POST-TRIAL REDUCTION IS A CREDIT FOR THE SUMS PAID BY EACH NON-COLLATERAL SOURCE (DEFENDANTS) TO SETTLE THE SUBROGATION CLAIMS, AND NOT THE SUMS THAT WERE PAID TO ERA BY SUBROGATED COLLATERAL SOURCES.**

The parties continue to debate the issue of how much money should be deducted from any award the jury might eventually make for the fair market value of the helicopter.  The parties' dispute centers on the proper application of Alaska's statutory collateral source rule:

(a) After the fact finder has rendered an award to a claimant, and after the court has awarded costs and attorney fees, a defendant may introduce evidence of amounts received or to be received by the claimant as compensation for the same injury from collateral sources that do not have a right of subrogation by law or contract. (AK.ST.ANN. § 09.17.070(a))[1]

This statute authorizes a limited post-trial reduction only when the injured victim has been paid by "collateral sources that *do not* have a right of subrogation by law or

---

[1]    Despite the defendants' claims to the contrary, the issue here must be resolved under the collateral source rule, because the reduction the defendants are seeking represents the total sum that was paid to Era by its own insurers.  Era's own insurers are, by definition, collateral sources, and so the collateral source rule must decide whether the defendants are entitled to any reduction. A different analysis would apply if the defendants sought a reduction based only on the sums they paid to USAU, since the defendants (unlike Era's own insurers) are not "collateral sources." (Gibson v. GEICO General Ins. Co., — P.3d — (2007 WL 625206) (Alaska 2007).)  But to date, the defendants have not asked for any such reduction.

- 3 -

contract."  Because everyone in this case agrees that Era Aviation received payments from collateral sources that *did* have a right of subrogation: (1) plaintiff contends the statute forbids any reduction, (2) but the defendants say that the statute does not even apply here, and a reduction must be made in accordance with the common law that existed prior to the enactment of the statute.  (Doc. 462.)  In other words, the parties' dispute can be summarized as follows:

- Plaintiff believes the statute must be read broadly to preclude all reductions based on payments made by collateral sources, unless the defendants can prove that the reduction is based on payments made by "collateral sources that do not have a right of subrogation."

- Defendants believe the statute must be read narrowly to apply only to payments made by "collateral sources that do not have a right of subrogation," and that the common law (not the statute) determines whether a reduction can be made based on payments made by subrogated collateral sources (as in this case).

## 2.1    **The Collateral Source Statute Must Be Read Broadly To Forbid Any Reduction Unless The Defendants Can Prove That The Collateral Sources Were Not Subrogated, And If The Defendants Fail To Meet That Burden Of Proof, Then There Can Be No Reduction.**

In Falconer v. Adams, 974 P.2d 406, 411-413 (Alaska 1999), the Alaska Supreme Court analyzed section 09.17.070, and held that a plaintiff *can* recover for a subrogated claim that the subrogee has settled, and that the trial court *cannot* reduce the plaintiff's award by the amounts paid by subrogated collateral sources.  (Falconer v. Adams, supra,

974 P.2d at pp. 411-413.)  The court also went on to hold that unless the defendant proves that the collateral sources were unsubrogated, then there can be no reduction:

> **Accordingly, when, as here, a defendant fails to prove unsubrogated collateral source payments, the appropriate recourse for the trial court is to deny reduction of the verdict;**  on appeal of an unsupported reduction, the correct remedy is reversal, not a remand for a second opportunity to prove up the claim.  (Falconer v. Adams, supra, 974 P.2d at p. 413, fn. 8.)

According to the defendants, "*Falconer* did not involve a settlement of an insurer's subrogation claim." (Doc. 462, pp. 5-6.)  But a cursory review of *Falconer* shows that: (1) the victim of the tort (Falconer) was paid by his own insurance company (State Farm); (2) State Farm was subrogated; (3) State Farm settled its subrogation rights by accepting money from the defendant's insurer (Allstate); and (4) the Supreme Court of Alaska held that the trial court committed reversible error when it reduced the victim's award by the sums paid to Falconer by his own insurance company (State Farm).[2]

On the salient points, *Falconer* cannot be easily distinguished form this case: (1) the victim of the tort (Era) was paid by its own insurance company (USAU); (2) USAU was subrogated; (3) USAU settled its subrogation rights by accepting money from the defendants; and (4)  it would be reversible error to reduce any award by the sums paid to Era by its own insurance company.

---

[2]      The only real distinction between *Falconer* and this case is that in *Falconer*, State Farm apparently never filed  or joined a formal lawsuit before it accepted money to settle its subrogation claims.  However, the filing of a lawsuit does not appear to be a distinction that is significant or material to any issue here.

## 2.2     Alaska's Collateral Source Statute Forbids A Reduction Even Though Era's Insurance Company Actively Pursued, Settled, And Then Dismissed Its Own Subrogation Claims.

The defendants complain that the plaintiff's interpretation of section 09.17.070 would expose defendants to "double liability," since they already paid a sum to the subrogated insurer (USAU) and they are now being asked to pay again to Era.  (Doc. 462, p. 5.)  However, this exact same complaint was lodged by then-Chief Justice Matthews in his dissenting opinion in _Falconer_: "Under today's opinion GEICO, having with Allstate paid $5,000 to State Farm on State Farm's subrogated claim, will have to pay the same amount for the same loss to Falconer.  Double payment here is thus not merely a fear, it is a reality."  (_Falconer v. Adams_, supra, 974 P.2d at p. 415 [Matthews,C.J. dissenting].)  Of course, the _Falconer_ majority held that it was reversible error to reduce the plaintiff's award ***even if that meant the defendants would be exposed to a "double liability."***  (Id. at p. 413, fn. 8 ["We find no reason to presume that the parties and their insurers will be unable to protect against the possibility of double recovery through negotiations or separate proceedings."])

Additionally, in the context of this case, the threat of exposing the defendants to a "double liability" is more imagined than real.  The defendants would only be exposed to a "double payment" if they fail to obtain a credit for the sums they paid to settle the subrogation claims.  If they do receive a credit for those payments, then there is no risk of a "double liability" if they are also asked to pay additional sums that they never paid to USAU in the first place.  Rather than being exposed to a true "double liability," the defendants are simply barred form artificially inflating the value of their offset to match the sums paid by collateral sources, as was permitted by _Brinkerhoff_ prior to the enactment of section 09.17.070.

The defendants also say that Ruggles v. Grow, 984 P.2d 509 (Alaska 1999) "is directly on point." (Doc. 462, p. 3.) Not so. (*See*, Doc. 196, p. 15 ["Absent in the present case is the fundamental point behind Ruggles – there is no evidence that U.S. Aviation has asked era to refrain from pursuing the insurer's claims."]) Similarly, the defendants also say that Thomann v. Fouse, 93 P.3d 1048 (Alaska 2004) "made the identical points." (Doc. 462, p. 3.) However, *Thomann* does not address section 09.17.070 or the issue involved in *Falconer*, nor does *Thomann* say anything that would help decide whether an award can be reduced for sums paid to the victim by subrogated collateral sources.

Plaintiff does not deny that its insurers (represented by the former plaintiff, USAU) had a nearly unfettered right to settle their subrogation claims as they deemed fit. However, neither the existence of that right, nor the fact that the USAU settled the subrogation claims, means that the defendants are now entitled to reduce an award by the amount of money that was paid to Era by USAU and the other insurers. Notably, the defendants paid much less to the insurers than the insurers paid to Era, and the insurers in this case (unlike the insurers in *Ruggles*) did not demand that Era discontinue its pursuit of the difference between those two sums.

Finally, the defendants' reliance on Wing v. GEICO Insurance Co., 17 P.3d 783 (Alaska 2001), is similarly misplaced. (Doc. 462, p. 6.) In *Wing*, the injured plaintiff's arbitration award was reduced to reflect sums paid to her by her own insurance company. However, that reduction occurred in the context of a suit between the plaintiff/victim and her own insurer (GEICO). Because the reduction was sought by the plaintiff/victim's own insurer, the collateral source rule and *Falconer* did not apply. (Wing. v GEICO, supra, 17 P.3d at p. 788 ["Because all payments were made by GEICO for or to Wing,

- 7 -

there was no collateral source to be considered."])  This, of course, is not the situation in this case, because Era has neither sought nor obtained an award against its own insurers. If such an award was ever obtained, then the award would naturally be reduced to reflect payments already made to Era by USAU.

**2.3**    ***Gibson v. GEICO* Does Not Say That The Statute Applies Only To Unsubrogated Payments From Collateral Sources – That Case Says The Statute Applies Only To Payments From Collateral Sources.**

Citing Gibson v. GEICO General Ins. Co., — P.3d — (2007 WL 625206) (Alaska 2007), the defendants claim that "[t]he statute only applies to 'unsubrogated payments from collateral sources.'"  (Doc. 462, p. 5.)  But this argument only serves to demonstrate the rather disingenuous and shallow nature of the defendants' position.  Nowhere in *Gibson* did the Alaska Supreme Court ever hold, suggest, or even imply that section 09.17.070 applied only to *unsubrogated* payments from collateral sources, as the defendants claim.  Instead, the Alaska Supreme Court held that "AS 09.17.070 does not apply to this situation since payments from a tortfeasor's insurance company are not considered 'collateral' payments."  (Id. at p. *5.)

Plaintiff wholeheartedly agrees with *Gibson* on this point, and that is why plaintiff has repeatedly said that any credit for the payments made by the *defendants* (not collateral sources) is an issue that is *not* covered by the statute.  But the same cannot be said about reductions for money Era received from its own insurers, who are undeniably collateral sources.  As to the payments made by these subrogated collateral sources, *Gibson* says nothing that is very useful to the analysis here, and *Gibson* definitely does *not* say that section 09.17.070 is the wrong starting point for the Court's analysis.

- 8 -

In summary, *if* the jury awards damages to the plaintiff for the fair market value of the helicopter, then Alaska's statutory collateral source rule forbids any reduction of that award based on the $2,047,480.00 that was paid to Era Aviation, Inc. by its own insurers, because the defendants cannot prove that Era's insurers were *unsubrogated* collateral sources.    (AK.ST.ANN. § 09.17.070.)    **"Accordingly, when, as here, a defendant fails to prove unsubrogated collateral source payments, the appropriate recourse for the trial court is to deny reduction of the verdict ..."** (Falconer v. Adams, supra, 974 P.2d 406, 413, fn. 8 (Alaska 1999).)

## 3.0    THE DEFENDANTS MAY NOT OFFER EVIDENCE OF PAYMENTS ERA RECEIVED FROM COLLATERAL SOURCES.

In addition to a damages component discussed above, Alaska's collateral source rule also has an evidentiary component in that strictly forbids the defendants from telling the jury about payments made to Era by collateral sources (like USAU.)  (*See, e.g.*, Tolan v. Era Helicopters, Inc., 699 P.2d 1265, 1267 (Alaska 1985) ["The collateral source rule thus prohibits the reduction of a plaintiff's damages when he has received compensation from another source.    It also has an evidentiary role, excluding evidence of other compensation on the theory that such evidence would affect the jury's judgment unfavorably to the plaintiff on the issues of liability and damages."])

Consistent with this evidentiary component of the collateral source rule, the Court has previously ruled that the defendants may not tell the jury about the money that Era received from its own insurance companies.  (Doc. 196, p. 15 ["The Court will grant Plaintiffs' motion to exclude evidence of insurance payments already received in relation to the helicopter crash."].)  Despite this clear and unambiguous ruling:

- 9 -

1.    The defendants have identified several trial exhibits (D25, 26, 27, 85) that disclose the fact that Era was paid by USAU and the other insurers, in violation of the collateral source rule; and

2.    The defendants have proposed three special jury instructions (Pretrial Order, pp. 80-82) that tell the jury that Era was paid by USAU and the other insurers, in violation of the collateral source rule; and

3.    The defendants have identified various excerpts form the deposition of Mr. Richard Larew (Exh. D106 and D251) which explain the nature and amount of payments era received from its own insurers, in violation of the collateral source rule

To allow the jury to learn that Era was paid for some of its losses would violate the letter and the spirit of the collateral source rule, and would necessarily constitute reversible error.  Plaintiff respectfully urges the Court to reaffirm its previous ruling that all such evidence is inadmissible.

**4.0     THE UNC DEFENDANTS MAY NOT OFFER TESTIMONY IN THEIR CASE-IN-CHIEF FROM TWO EMPLOYEES WHO WERE NEVER IDENTIFIED DURING DISCOVERY OR IN MANDATORY RULE 26 DISCLOSURES.**

In the proposed Pretrial Order, the UNC defendants have listed two witnesses who were never identified in the defendants' Rule 26 disclosures or during the course of discovery.  (Pretrial Order, pp. 126-127.)  These two witnesses, Mr. **Mike Cumnock** and Mr. **Mike Snellgrove**, are listed as "Shall Be Called" by the UNC defendants, and both

witnesses are identified as employees of the UNC defendants.  According to the UNC defendants, these two witnesses will testify on a variety of issues including "procedures," "training," "manuals" and the "work performed" by the UNC defendants.  (<u>Ibid</u>.)

Mr. Cumnock and Mr. Snellgrove were never identified in the UNC defendants' Rule 26 disclosures; neither witness was identified in the defendants' expert disclosures; and neither witness was mentioned or identified during the course of discovery. Moreover, many of the issues on which these witnesses will testify were the subject of a Rule 30(b)(6) deposition where the UNC defendants designated a third person (Mr. Weldon Walshe) to testify on the same issues.

Rule 26(a)(1)(A) mandates the early disclosure of the names of "each individual likely to have discoverable information that the disclosing party may use to support its claims or defenses …"  (FED.R.CIV.P. 26(a)(1)(A).)  Rule 37 puts teeth into Rule 26 by prohibiting the UNC defendants from *sneaking* these two witnesses into this case.  Rule 37 provides an automatic and mandatory sanction of exclusion for these two witnesses:

> **A party that without substantial justification fails to disclose information required by Rule 26(a) … is not, unless such failure is harmless, permitted to use as evidence at a trial … any witness … not so disclosed.**  (Fed.R.Civ.P. 37(c)(1).)

Based on the foregoing, plaintiff respectfully submits that Mr. Cumnock and Mr. Snellgrove are not allowed to testify in defendants' case-in-chief.

*/ / /*

## 5.0    ALL CLAIMS AND RIGHTS OF ERA AVIATION, INC. WERE ASSIGNED TO PLAINTIFF ERA HELICOPTERS, LLC.

The defendants continue to raise a substantial fuss about the assignment of Era Aviation, Inc.'s claims to the present plaintiff, Era Helicopters, LLC. According to the defendants, to the extent any assignment occurred: (1) that assignment occurred after Era Aviation had abandoned its claims in bankruptcy; (2) the defendants were never given a copy of the assignment until recently; (3) the assignment is "inconsistent" with the declaration of Ms. Anna Goss; (4) the assignor (Era Aviation, Inc.) only transferred its right to recover $52,520.00 that was left unpaid by Era's own insurers; and (5) claims for punitive damages cannot be assigned. (*See*, Proposed Pretrial Order, pp. 17-18.) Each of these arguments is addressed separately, below.[3]

/ / /

---

[3]    Plaintiff Era Helicopters, LLC does not deny that it must prove its rights as the assignee of Era Aviation's claims. "An assignee of a contractual right must prove the validity of his ownership claims. [Citation omitted.] Additionally, general contract principles dictate that to prove an effective assignment, the assignee must come forth with evidence that the assignor meant to assign rights and obligations under the contracts." (Britton v. Co-Op Banking Group, 4 F.3d 742, 746 (9th Cir. (E.D.Cal.) 1993).) During the trial, plaintiff will satisfy this burden of proof with testimony from Era Helicopters' CFO (Ms. Goss).

Of course, its is also undisputed that the defendants may assert against Era Helicopters any defenses that could have been asserted against Era Aviation. "If there is an assignment of a thing in action, the action by the assignee is without prejudice to a setoff or other defense existing at the time of, or before notice of the assignment." (AK.ST.ANN. § 09.68.060.)

**5.1    The Assignment Occurred *Before* Era Aviation Filed A Voluntary Petition For Chapter 11 Bankruptcy.**

It is undisputed that the helicopter was owned by Era Aviation, Inc.   (*See*, Proposed Pretrial Order, p. 11, Stipulated Fact No. 1.)

On April 1, 2005, Era Aviation, Inc. assigned all of its claims in this matter to Era Helicopters, LLC.   (Exh. P230 [Master Bill of Sale and Assignment] [copy attached to this brief].)

On December 28, 2005 – more than eight months *after* the assignment of these claims to Era Helicopters, LLC – Era Aviation, Inc. filed a voluntary petition for Chapter 11 bankruptcy protection.   (*In re Era Aviation, Inc.*, U.S. Bankruptcy Court, District of Alaska, Case No. 05-02265, Doc. 1.)

Based on these undisputed facts, there is no merit to the defendants' claim that Era Aviation abandoned its claims in bankruptcy before assigning those claims to the present plaintiff, Era Helicopters, LLC.

**5.2    The Defendants Were Provided With A Copy Of The Assignment In A Reasonable And Timely Manner.**

All discovery in this case was closed on October 1, 2004.   (Doc. 199.)   The assignment occurred on April 1, 2005.   (Exh. P230.)   Thus, ***the assignment did not exist during the time when discovery was being conducted in this case.***

On February 6, 2006, the defendants filed a motion asking the Court to substitute the real party in interest.   (Doc. 389.)   The Court granted the defendants' motion on March 13, 2006 (Doc. 392), and on March 27, 2006, plaintiff Era Helicopters, LLC was substituted in place of Era Aviation, Inc.   (Doc. 393).   The defendants objected to the

- 13 -

substitution, and asked the Court for permission to conduct discovery on the issue of the assignment of Era Aviation's claims to Era Helicopters, LLC.  (Doc. 394, 396, 398 and 399.)   On June 23, 2006, the Court overruled the defendants' objections to the substitution, and denied the defendants' motion to reopen discovery on the issue of the assignment of Era Aviation's claims.  (Doc. 402.)  Accordingly, ***the Court refused to allow the defendants to conduct discovery related to the assignment.***

On February 20, 2007, plaintiff filed its exhibit list.  (Doc. 427.)  The assignment was *not* listed as an exhibit on that list because plaintiff believed that ***as of June 23, 2006, there were no disputed issues as to the propriety of the assignment.***

Also on February 20, 2007, the defendants filed their respective Trial Briefs. (Doc. 420 and 429.)  Pursuant to the Court's order (Doc. 413), the defendants' Trial Briefs were required to "disclose and address those theories of the case that the party will present at trial."  (Doc. 413, p. 4.)  ***The defendants' Trial Briefs make no mention of any issues regarding the assignment of Era Aviation's claims to Era Helicopters, LLC.***

On March 1, 2007, all counsel met in Anchorage to discuss the preparation of the Pretrial Order.  During that meeting, the defendants' lawyers disclosed – ***for the first time ever*** – that they intended to dispute the existence and validity of the assignment of Era Aviation's claims.  ***Prior to this meeting on March 1, 2007, plaintiff reasonably believed that there were no issues relating to the assignment, based on the Court's order*** (Doc. 402) ***and the defendants' Trial Briefs*** (Doc. 420 and 429.)

On March 20, 2007, plaintiff provided the defendants with a copy of the assignment, and advised that the assignment would be included in plaintiff's exhibits list as exhibit P230.  ***Accordingly, the defendants were provided with a copy of the***

- 14 -

*assignment within three weeks after the defendants first disclosed their plan to attack the validity and scope of the assignment.*

### 5.3    The Written Assignment Is Consistent With The Declaration Of Ms. Anna Goss.

In response to the defendants' objections to the substitution of Era Helicopters, LLC in place of Era Aviation, Inc., plaintiff provided the Court with a declaration from Ms. Anna Goss, the CFO of Era Helicopters, LLC.  (Doc. 395, Attchmnt. 1.)  The defendants argue that the written assignment (Exh. P230) is "inconsistent with" Ms. Goss's declaration regarding the issues of "who became the assignee and as to the date of the assignment."  (Pretrial Order, p. 17.)

*There are no inconsistencies of any kind on any material issues relating to the assignment.*    Both Ms. Goss's declaration (Doc. 395, Attchmnt. 1) and the written assignment (Exh. P230) both clearly and unequivocally identify Era Helicopters, LLC as the assignee of Era Aviation's claims.

To the extent the defendants believe there are some other "inconsistencies" that need to be explored, plaintiff is ready to make Ms. Goss available for a pretrial deposition at a location near Ms. Goss's place of work, if the Court deems such a deposition necessary and appropriate.  Ms. Goss is also prepared to testify at trial, if necessary.

/ / /

Era Av 4EH/PO/WO Lg24175/20070330

**5.4    The Assignor (Era Aviation, Inc.) Possessed A Valid Legal Claim For The $2.1 Million Fair Market Value Of The Helicopter.**

According to the defendants, the assignor (Era Aviation, Inc.) possessed only a claim for $52,520.00 in losses that were not paid by Era's own insurers.  (Pretrial Order, p. 18.)  This argument should be rejected on at least two grounds.

1.  First, *before* the assignment, the Court ruled that the assignor (Era Aviation, Inc.) would be entitled to ask the jury to award $2.1 million for the fair market value of the destroyed helicopter, even though Era had been paid for some of those losses by its own insurers.  (Doc. 33 ["Era may offer evidence of its total damages at trial."])  That right was subsequently assigned to Era Helicopters, LLC.  (Exh. P230.)

2.  Second, the defendants' argument is based on a mistaken interpretation of the law. Alaska's statutory collateral source rule forbids any reduction of an award based on the $2,047,480.00 that was paid to Era Aviation, Inc. by its own insurers, because the defendants cannot prove that Era's insurers were *unsubrogated* collateral sources.  (AK.ST.ANN. § 09.17.070.)  **"Accordingly, when, as here, a defendant fails to prove unsubrogated collateral source payments, the appropriate recourse for the trial court is to deny reduction of the verdict …"** (Falconer v. Adams, 974 P.2d 406, 413, fn. 8 (Alaska 1999).)

/ / /

- 16 -

**5.5     Claims For Punitive Damages Can Be Assigned.**

The defendants say that to the extent Era Aviation, Inc. possessed a claim for punitive damages, that claim could not be assigned without violating public policy against champerty and maintenance. (Pretrial Order, p. 18.) This argument is patently absurd and frivolous.

Of course, as a general rule, there can be no valid assignment of a claim for personal injuries, because to do so would threaten to promote trafficking in pain and suffering. (Croxton v. Crowley Maritime Corp., 758 P.2d 97, 99 (Alaska 1988).) On the other hand, claims which do not involve personal injuries (like the claims in this case) may be freely assigned without violating public policy. (Deal v. Kearney, 851 P.2d 1353, 1356 (Alaska 1993).) Here, the underlying claims are not based on any "personal injuries." In fact, the "personal injury" aspect of this case (arising from the wrongful death of the pilot) was resolved in separate litigation in Florida. In this case, the only claims are for property damage and general monetary obligations, all of which are freely assignable as a matter of law.

Plaintiff is unaware of an published decisions from Alaska courts which hold that punitive damages claims may not be assigned, and no Alaska authorities have been identified by the defendants. However, because Era Aviation's underlying property damage claims are assignable, the general rule is that Era's related claims for punitive damages are also freely assignable. (See, e.g., Cuson v. Maryland Cas. Co., 735 F.Supp. 966, 970 (D.Hawaii 1990); First Federal Sav. and Loan Ass'n of Pittsburgh v. Oppenheim, Appel, Dixon & Co., 629 F.Supp. 427, 447 (S.D.N.Y. 1986); Kleinwort Benson North America, Inc. v. Quantum Financial Services, Inc., 285 Ill.App.3d 201,

- 17 -

213 [673 N.E.2d 369, 378] (Ill.App. 1996); <u>Oppel v. Empire Mut. Ins. Co.</u>, 517 F.Supp. 1305, 1307 (S.D.N.Y. 1981).)


## 6.0    THE UNC DEFENDANTS MAY BE HELD STRICTLY LIABLE FOR INSTALLING A DEFECTIVE COMPONENT PART IN ERA'S ENGINE, EVEN IF THE UNC DEFENDANTS DID NOT "SELL" THAT DISK TO ERA.

The UNC defendants claim that they cannot be held strictly liable for damages caused by the defective CT disk, because they "only installed the CT disk in the left hand [engine], which is not a 'sale' as intended by Alaska law."  (Pretrial Order, p. 19.)  The defendants are wrong.

In <u>Bell v. Precision Airmotive Corp.</u>, 42 P.3d 1071 (Alaska 2002), the Alaska Supreme Court agreed that "[i]n a hybrid sale/service transaction where the predominant purpose of the transaction is to overhaul and service an engine, [the] overhauler/repairer [is] strictly liable for selling and installing, during the course of the overhaul, a used, defective component part that the overhauler/repairer had subjected to extensive repair, inspection and testing[.]"  (<u>Id</u>. at pp. 1071-1072.)

The evidence to be presented at trial will prove that the UNC defendants: (1) sold the CT disk to Era when the disk was new; (2) charged Era for the CT disk; and (3) performed extensive repairs on the CT disk before reinstalling the disk in Era's engine. Under these circumstances, the UNC defendants are subject to strict liability as the "seller" of a defective product, provided (of course) that plaintiff meets the required burden of proof during the trial.


/ / /

- 18 -

**7.0    PLAINTIFF'S OBJECTIONS TO DEFENDANTS' EXHIBITS HAVE NOT BEEN RESOLVED, AND THOSE OBJECTIONS SHOULD BE SUSTAINED.**

Plaintiff's objections to defendants' exhibits are set forth in attached Appendices "A" and "B."  Those objections have not been resolved by the parties.  Plaintiff respectfully requests that its objections be sustained for the reasons discussed in Appendices "A" and B."

**8.0    CONCLUSION.**

Based on the foregoing, plaintiff respectfully submits that the Court should issue an order:

1. Reaffirming the Court's previous order that plaintiff may ask the jury to award damages for the fair market value of the helicopter, and determining that if such an award is made, then the appropriate post-trial reduction of that award is a credit for the sums paid by each non-collateral source (defendants) to settle the underlying subrogation claims, and not the sums that were paid to Era by subrogated collateral sources; and

2. Reaffirming the Court's previous order barring the defendants from offering evidence or argument for the purpose of informing the jury about Era's receipt of payments from collateral sources (Era's own insurers); and

3. Barring the defendants from offering testimony in their case-in-chief from two witnesses (Mike Cumnock and Mike Snellgrove) who were not identified in the defendants' mandatory Rule 26 disclosures; and

4.  Determining as a matter of law that all claims and rights of Era Aviation, Inc., including its claim for punitive damages, were assigned and transferred to Era Helicopters, LLC, prior to Era Aviation's bankruptcy; and

5.  Determining that the UNC defendants may be held strictly liable for selling, installing and repairing a defective product under Alaska law; and

6   Sustaining plaintiff's objections to the defendants' trial exhibits listed in Appendices "A" and "B."

Respectfully Submitted,

Dated:  March __30__, 2007            **LAW OFFICES OF JON A. KODANI**

s/  Jeffrey J. Williams

By:     Jon A. Kodani, Esq.
        Jeffrey J. Williams, Esq.

2200 Michigan Avenue
Santa Monica, CA  90404
Tel. (310) 453-6762
EMail *lojak@kodanilaw.com*

Attorneys for Plaintiff
Era Helicopters, LLC

- 20 -

<u>**Appendix "A"**</u>
<u>**Plaintiff's Objections to Defendants' Evidence**</u>

Pursuant to the Court's order (Doc. 413), counsel met and conferred on February 6, 2007, for the purpose of reviewing trial exhibits. Based on that meeting, plaintiff Era Helicopters, LLC, respectfully offers the following objections to the defendants' exhibits:

1. **D25** (Era e-mails)
2. **D26** (USAU Accident Scene Report)
3. **D27** (Release)
4. **D35** (Era Training Manual)
5. **D36** (NTSB Report)
6. **D40** (Cliff Mitchell e-mail)
7. **D42** (bucket inventory)
8. **D44** (sling loads manual)
9. **D46** (Era external load PowerPoint)
10. **D51** (email regarding altitude)
11. **D52** (email regarding torque)
12. **D53** (autopsy checklist)
13. **D54** (Sidla email)
14. **D55** (DOI Accident Review)
15. **D56** (DOI Aviation Safety Review)
16. **D57** (Era Presentations)
17. **D58** (FAA Report of Accident)
18. **D75** (Interagency Helicopter Operations Guide)
19. **D76** (SEI Bucket Data)
20. **D77** (PWC Report)
21. **D78** (Battle Mountain Report)
22. **D84** (cockpit mockup)
23. **D85** (proof of payment)
24. **D238** (Era PowerPoint presentation)

A-1

## 1.0  Defense Exhibit D25

Plaintiff objects to defense exhibit **D25** (Era e-mails).  This exhibit contains two groups of e-mails.

- First, the exhibit contains a collection of e-mails from Era's insurance company (USAU).  These e-mails are stamped ERA000088-91, 93 and 114.  The Court has already ruled that Alaska's **collateral source rule** prevents the defendants from offering evidence of payments Era received from USAU, and USAU is no longer a party to this lawsuit.  (Doc. 196.)  The exhibit is **not relevant**.  (FED.R.EVID. 401).  There is **no evidentiary foundation** for this exhibit (FED.R.EVID. 901), and the persons who wrote and received these e-mails will not be testifying (either in person or by deposition) during the trial.  The exhibit should be excluded because the exhibit's limited (at best) probative value "is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, [or] waste of time …"  (**FED.R.EVID. 403**.)

- Second, this same exhibit also contains another e-mail purportedly authored by a Canadian government investigator (Mr. Gus Sidla) who was working with the NTSB.  This e-mail is stamped ERA0000111-113.  There is **no evidentiary foundation** for this exhibit.  (FED.R.EVID. 901).  The exhibit is **not relevant**.  (FED.R.EVID. 401).  This e-mail contains **inadmissible hearsay**.  This e-mail contains **inadmissible opinions** from a person (Mr. Sidla) who has not been designated as an expert witness, and whose qualifications, education and training

A-2

are unknown.  Mr. Sidla (the author of the e-mail) was not deposed in this case, and he will not be testifying at trial.

## 2.0  Defense Exhibit D26

Plaintiff objects to defense exhibit **D26** (USAU Accident Scene Report).  The exhibit is **not relevant**.  (FED.R.EVID. 401).  The Court has already ruled that Alaska's **collateral source rule** prevents the defendants from offering evidence of payments Era received from USAU, and USAU is no longer a party to this lawsuit.  (Doc. 196.)  The exhibit should be excluded because the exhibit's limited (at best) probative value "is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, [or] waste of time …" (**FED.R.EVID. 403**.)

## 3.0  Defense Exhibit D27

Plaintiff objects to defense exhibit **D27** (Release).  The exhibit is **not relevant**.  (FED.R.EVID. 401).  The Court has already ruled that Alaska's **collateral source rule** prevents the defendants from offering evidence of payments Era received from USAU, and USAU is no longer a party to this lawsuit.  (Doc. 196.)  The exhibit should be excluded because the exhibit's limited (at best) probative value "is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, [or] waste of time …"  (**FED.R.EVID. 403**.)

A-3

## 4.0  Defense Exhibit D35

Plaintiff objects to defense exhibit **D35** (Era Training Manual).  The defendants apparently plan to offer this exhibit to demonstrate the training the pilot should have received prior to the crash.  However, the exhibit was written in 2003 – three years *after* this crash.  The exhibit also addresses scores of issues which are totally unrelated to this case.  The exhibit is **not relevant**.  (FED.R.EVID. 401).  The exhibit is an inadmissible **subsequent remedial measure.**  (FED.R.EVID. 407).  The exhibit should be excluded because the exhibit's limited (at best) probative value "is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, [or] waste of time …"  (**FED.R.EVID. 403**.)

## 5.0  Defense Exhibit D36

Plaintiff objects to defense exhibit **D36** (NTSB Report).  This exhibit has **already been ruled inadmissible** by the Court.  (Doc. 196, 202, 386 and 388.)  The exhibit is **inadmissible under federal law**.  (49 U.S.C. § 1154(b).)  The exhibit contains the **unreliable opinions of unidentified witnesses whose qualifications and methodology are unknown**.  (FED.R.EVID. 702.)  The exhibit contains **inadmissible hearsay statements** and **hearsay-within-hearsay**.  (FED.R.EVID. 705).  Hearsay statements are not admissible just because they are repeated in a "public record."  The exhibit should be excluded because the exhibit's limited (at best) probative value "is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, [or] waste of time …" (**FED.R.EVID. 403**.)

## 6.0  Defense Exhibit D40

Plaintiff objects to defense exhibit **D40** (Cliff Mitchell e-mail).  The exhibit is **not relevant**.  (FED.R.EVID. 401).  The exhibit contains **inadmissible hearsay statements** and **hearsay-within-hearsay**.  (FED.R.EVID. 705).  The exhibit should be excluded because the exhibit's limited (at best) probative value "is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, [or] waste of time …"  (**FED.R.EVID. 403**.)

## 7.0  Defense Exhibit D42

Plaintiff objects to defense exhibit **D42** (bucket inventory).  The defendants apparently plan to use this exhibit to persuade the jury to speculate that a smaller water bucket might have been available for use on this firefighting mission.  However, there is no indication on the face of the exhibit that the exhibit accurately reflects the inventory of buckets that were available on August 13, 2000.  The exhibit is **not relevant**. (FED.R.EVID. 401).  There is **no evidentiary foundation** for this exhibit. (FED.R.EVID. 901).  The exhibit contains **inadmissible hearsay statements**. (FED.R.EVID. 705).  The exhibit should be excluded because the exhibit's limited (at best) probative value "is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, [or] waste of time …"  (**FED.R.EVID. 403**.)

## 8.0  Defense Exhibit D44

Plaintiff objects to defense exhibit **D44** (sling loads manual).  The defendants apparently plan to offer this exhibit to demonstrate the proper procedures for operating a helicopter carrying a bambi bucket.  However, the exhibit was written in 2003 – three years *after* this crash.  The exhibit is **not relevant**.  (FED.R.EVID. 401).  The exhibit is an inadmissible **subsequent remedial measure.**  (FED.R.EVID. 407).  The exhibit should be excluded because the exhibit's limited (at best) probative value "is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, [or] waste of time …" (**FED.R.EVID. 403**.)

## 9.0  Defense Exhibit D46

Plaintiff objects to defense exhibit **D46** (Era external load PowerPoint).  The defendants apparently plan to offer this exhibit to demonstrate the proper procedures for operating a helicopter carrying a bambi bucket.  However, there is no evidence this exhibit was ever shown to the pilot of this helicopter, or used by Era prior to the crash.  The exhibit is **not relevant**.  (FED.R.EVID. 401).  The exhibit should be excluded because the exhibit's limited (at best) probative value "is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, [or] waste of time …" (**FED.R.EVID. 403**.)

Era Av 4EH/PO/WO Lg24175/20070330

## 10.0  Defense Exhibit D51

Plaintiff objects to defense exhibit **D51** (email regarding altitude).  This exhibit purports to be an email forwarded to the NTSB during the course of its investigation, reflecting the assumptions of some unidentified person regarding the possible conditions that might have existed at the crash site.   There is **no evidentiary foundation** for this exhibit.  (FED.R.EVID. 901).  The exhibit contains the **unreliable opinions of unidentified witnesses whose qualifications and methodology are unknown**.  (FED.R.EVID. 702.)  The exhibit is **not relevant**.  (FED.R.EVID. 401).  The exhibit should be excluded because the exhibit's limited (at best) probative value "is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, [or] waste of time …" (**FED.R.EVID. 403**.)   The exhibit contains **inadmissible hearsay statements** and **hearsay-within-hearsay**.  (FED.R.EVID. 705).

## 11.0  Defense Exhibit D52

Plaintiff objects to defense exhibit **D52** (email regarding torque).  This exhibit purports to be an email forwarded to PWC, reflecting an accident investigator's assumptions regarding the possible conditions that might have existed at the time of the crash. There is **no evidentiary foundation** for this exhibit.  (FED.R.EVID. 901).  The exhibit contains the **unreliable opinions of unidentified witnesses whose qualifications and methodology are unknown**.   (FED.R.EVID. 702.)   The exhibit is **not relevant**. (FED.R.EVID. 401).  The exhibit should be excluded because the exhibit's limited (at best) probative value "is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, [or]

waste of time …" (**FED.R.EVID. 403**.)  The exhibit contains **inadmissible hearsay statements** and **hearsay-within-hearsay**.  (FED.R.EVID. 705).

## 12.0  Defense Exhibit D53

Plaintiff objects to defense exhibit **D53** (autopsy checklist).  The exhibit contains **inadmissible hearsay statements** and **hearsay-within-hearsay**.  (FED.R.EVID. 705).  The exhibit contains the **unreliable opinions of unidentified witnesses whose qualifications and methodology are unknown**.  (FED.R.EVID. 702.)  The exhibit is **not relevant**.  (FED.R.EVID. 401).  The exhibit should be excluded because the exhibit's limited (at best) probative value "is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, [or] waste of time …" (**FED.R.EVID. 403**.)

## 13.0  Defense Exhibit D54

Plaintiff objects to defense exhibit **D54** (Sidla email).  This exhibit purports to be a copy of an email sent by the Canadian NTSB to PWC, reflecting the Canadian investigator's own personal opinions about the reports prepared by PWC.  The author of this email (Mr. Sidla) was not deposed in this case, he will not be testifying at the time of trial, and he has not been designated as an expert witness.  There is **no evidentiary foundation** for this exhibit.  (FED.R.EVID. 901).  The exhibit contains the **unreliable opinions of unidentified witnesses whose qualifications and methodology are unknown**.  (FED.R.EVID. 702.)  The exhibit is **not relevant**.  (FED.R.EVID. 401).  The exhibit should be excluded because the exhibit's limited (at best) probative value "is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or

misleading the jury, or by considerations of undue delay, [or] waste of time …" (**FED.R.EVID. 403**.)   The exhibit contains **inadmissible hearsay statements** and **hearsay-within-hearsay**.  (FED.R.EVID. 705.)


## 14.0  Defense Exhibit D55

Plaintiff objects to defense exhibit **D55** (DOI Accident Review).  This exhibit is a PowerPoint presentation prepared by the DOI.  **The Court has already ruled that this same exhibit is not admissible.**  (Doc. 196.)   The exhibit contains the **unreliable opinions of unidentified witnesses whose qualifications and methodology are unknown**.  (FED.R.EVID. 702.)  The exhibit is **not relevant**.  (FED.R.EVID. 401).  The exhibit should be excluded because the exhibit's limited (at best) probative value "is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, [or] waste of time …" (**FED.R.EVID. 403**.)   The exhibit contains **inadmissible hearsay statements** and **hearsay-within-hearsay**.  (FED.R.EVID. 705.)


## 15.0  Defense Exhibit D56

Plaintiff objects to defense exhibit **D56** (DOI Aviation Safety Review).  This exhibit is a summary of accidents that occurred during 200 and that involved DOI aircraft.  The exhibit refers to a number of accidents that are totally unrelated to this crash.  There is **no evidentiary foundation** for this exhibit.  (FED.R.EVID. 901).  The exhibit contains the **unreliable opinions of unidentified witnesses whose qualifications and methodology are unknown**.  (FED.R.EVID. 702.)  The exhibit is **not relevant**. (FED.R.EVID. 401).  The exhibit should be excluded because the exhibit's limited (at

best) probative value "is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, [or] waste of time …"  (FED.R.EVID. 403.)  The exhibit contains **inadmissible hearsay statements** and **hearsay-within-hearsay**.  (FED.R.EVID. 705).

### 16.0  Defense Exhibit D57

Plaintiff objects to defense exhibit **D57** (Era Presentations).  This exhibit is a summary of some preliminary findings prepared by Era at a very early stage of the investigation process.  The exhibit contains the **unreliable opinions of unidentified witnesses whose qualifications and methodology are unknown**.  (FED.R.EVID. 702.)  The exhibit is **not relevant**.  (FED.R.EVID. 401).  The exhibit should be excluded because the exhibit's limited (at best) probative value "is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, [or] waste of time …"  (**FED.R.EVID. 403**.)  The exhibit contains **inadmissible hearsay statements** and **hearsay-within-hearsay**.  (FED.R.EVID. 705).

### 17.0  Defense Exhibit D58

Plaintiff objects to defense exhibit **D58** (FAA Report of Accident).  This exhibit is a copy of the FAA's report regarding this accident, including the FAA's opinions regarding the cause of the crash.  The exhibit contains the **unreliable opinions of unidentified witnesses whose qualifications and methodology are unknown**.  (FED.R.EVID. 702.)  The exhibit is **not relevant**.  (FED.R.EVID. 401).  The exhibit should be excluded because the exhibit's limited (at best) probative value "is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or

misleading the jury, or by considerations of undue delay, [or] waste of time …" (**FED.R.EVID. 403**.)    The exhibit contains **inadmissible hearsay statements** and **hearsay-within-hearsay**.  (FED.R.EVID. 705).

## 18.0  Defense Exhibit D75

Plaintiff objects to defense exhibit **D75** (Interagency Helicopter Operations Guide). This exhibit contains a plethora of confusing technical information that is not relevant to any issues in this case.  The exhibit is **not relevant**.  (FED.R.EVID. 401).  There is **no evidentiary foundation** for this exhibit.  (FED.R.EVID. 901).  The exhibit contains **inadmissible hearsay statements** and **hearsay-within-hearsay**.  (FED.R.EVID. 705). The exhibit should be excluded because the exhibit's limited (at best) probative value "is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, [or] waste of time …" (**FED.R.EVID. 403**.)

## 19.0  Defense Exhibit D76

Plaintiff objects to defense exhibit **D76** (SEI Bucket Data).  The exhibit is **not relevant**. (FED.R.EVID. 401).    There is **no evidentiary foundation** for this exhibit. (FED.R.EVID. 901).

## 20.0  Defense Exhibit D77

Plaintiff objects to defense exhibit **D77** (PWC Report).  This exhibit describes a separate dissimilar incident involving a different helicopter, different pilot, and different failure mode.  To be admissible, the proponent of evidence involving "other

incidents" must generally demonstrate "substantial similarity" with the incident involved in the litigation.  (See, e.g., <u>Bierria v. Dickinson Mfg. Co., Ltd.</u>, 36 P.3d 654, 657 (Alaska 2001); <u>Four Corners Helicopters, Inc. v. Turbomeca, S.A.</u>, 979 F.2d 1434, 1439-1440 (10th Cir. (Colo.) 1992).)  The exhibit is **not relevant**.  (FED.R.EVID. 401). There is **no evidentiary foundation** for this exhibit.  (FED.R.EVID. 901).  The exhibit contains **inadmissible hearsay statements** and **hearsay-within-hearsay**. (FED.R.EVID. 705).  The exhibit should be excluded because the exhibit's limited (at best) probative value "is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, [or] waste of time …"  (**FED.R.EVID. 403**.)  The exhibit contains the **unreliable opinions of unidentified witnesses whose qualifications and methodology are unknown**. (FED.R.EVID. 702.)


### 21.0  Defense Exhibit D78

Plaintiff objects to defense exhibit **D78** (Battle Mountain Report).  **The Court has already ruled that this exhibit is inadmissible.**  (Doc. 333.)  This exhibit describes a separate dissimilar incident involving a different helicopter, different pilot, and different failure mode.  To be admissible, the proponent of evidence involving "other incidents" must generally demonstrate "substantial similarity" with the incident involved in the litigation.  (See, e.g., <u>Bierria v. Dickinson Mfg. Co., Ltd.</u>, 36 P.3d 654, 657 (Alaska 2001); <u>Four Corners Helicopters, Inc. v. Turbomeca, S.A.</u>, 979 F.2d 1434, 1439-1440 (10th Cir. (Colo.) 1992).)  The exhibit is **not relevant**.  (FED.R.EVID. 401). The exhibit contains **inadmissible hearsay statements** and **hearsay-within-hearsay**. (FED.R.EVID. 705).  The exhibit should be excluded because the exhibit's limited (at

best) probative value "is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, [or] waste of time …" (**FED.R.EVID. 403**.)  The exhibit contains the **unreliable opinions of unidentified witnesses whose qualifications and methodology are unknown**. (FED.R.EVID. 702.)

## 22.0  Defense Exhibit D84

Plaintiff objects to defense exhibit **D84** (cockpit mockup).  Neither this exhibit nor a photograph of this exhibit was available for review by plaintiffs' counsel at the mandatory exhibit review meeting.

## 23.0  Defense Exhibit D85

Plaintiff objects to defense exhibit **D85** (proof of payment).   The exhibit is **not relevant**.  (FED.R.EVID. 401).  The Court has already ruled that Alaska's **collateral source rule** prevents the defendants from offering evidence of payments Era received from USAU, and USAU is no longer a party to this lawsuit.  (Doc. 196.)  The exhibit should be excluded because the exhibit's limited (at best) probative value "is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, [or] waste of time …" (**FED.R.EVID. 403**.)

## 24.0  Defense Exhibit D238

Plaintiff objects to defense exhibit **D238** (Era PowerPoint presentation).  This exhibit is a summary of some preliminary findings prepared by Era at a very early stage of the investigation process.  The exhibit contains the **unreliable opinions of unidentified witnesses whose qualifications and methodology are unknown**.  (FED.R.EVID. 702.) The exhibit is **not relevant**.  (FED.R.EVID. 401).  The exhibit should be excluded because the exhibit's limited (at best) probative value "is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, [or] waste of time …" (**FED.R.EVID. 403**.)  The exhibit contains **inadmissible hearsay statements** and **hearsay-within-hearsay**. (FED.R.EVID. 705).

**<u>Appendix "B"</u>**
**<u>Plaintiff's Objections to Deposition Excerpts Identified By Defendants</u>**

Pursuant to the Court's order (Doc. 413), counsel met and conferred on February 6, 2007, for the purpose of reviewing trial exhibits. Based on that meeting, plaintiff Era Helicopters, LLC, respectfully offers the following objections to excerpts of the following deposition transcripts identified by defendants:

1. **<u>Deposition of Cullen Baker</u>** (September 21, 2004)
2. **<u>Deposition of Terry Bennett</u>** (September 30, 2003)
3. **<u>Deposition of Terry Bennett</u>** (August 12, 2004)
4. **<u>Deposition of Terry Bennett</u>** (August 13, 2004) (Rule 30(b)(6))
5. **<u>Deposition of Terry Bennett</u>** (August 13, 2004) (Vol. II of II)
6. **<u>Deposition of Thomas Berthe</u>** (March 26, 2003)
7. **<u>Deposition of Terry Cole</u>** (July 1, 2003)
8. **<u>Deposition of Tealeye Cornejo</u>** (September 13, 2005)
9. **<u>Deposition of Anthony P. Davis</u>** (June 2, 2004)
10. **<u>Deposition of Jutta Demers</u>** (March 25, 2003)
11. **<u>Deposition of Les Hanberg</u>** (November 18, 2003)
12. **<u>Deposition of Mark Jones</u>** (August 13, 2004)
13. **<u>Deposition of Gus Lapthorne</u>** (April 23, 2003)
14. **<u>Deposition of Richard (Lash) Larew</u>** (October 1, 2003)
15. **<u>Deposition of Clifford Mitchell</u>** (September 24, 2003)
16. **<u>Deposition of George Neufeld</u>** (March 27, 2003)
17. **<u>Deposition of Richard Oeder</u>** (September 24, 2003)
18. **<u>Deposition of Ron Ortuso</u>** (March 27, 2003)
19. **<u>Deposition of Stephen Rauch</u>** (June 3, 2004)
20. **<u>Deposition of Thomas Young</u>** (September 25, 2003)

Era Av 4EH/PO/WO Lg24175/20070330

### 1.0  Deposition of Cullen Baker

(September 21, 2004)

1.1  **73:2-14**, **74:5-75:15** and **75:24-76:24**

    a.       The testimony is **not relevant**.  (FED.R.EVID. 401).

### 2.0  Deposition of Terry Bennett

(September 30, 2003)

2.1  **11:10-12, 38:20-23**

    a.       The testimony is **not relevant**.  (FED.R.EVID. 401).

    b.       The testimony should be excluded because the testimony's limited (at best) probative value "is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, [or] waste of time …"  (**FED.R.EVID. 403**.)

2.2  **29:17-30:22, 31:4-1932:1-10, 32:14-23, 33:6-16, 42:8-20, 42:25-43:9, 43:12-25, 46:25-48:1, 51:15-54:3, 55:18-56:6** and **56:15-58:15**

    a.       The testimony relates to evidence (the OAS PowerPoint) which has **already been ruled inadmissible**.  (Doc. 196)

    b.       The questions **assume facts not in evidence**.

    c.       The testimony contains the **unreliable opinions of lay witnesses whose qualifications and methodology are unknown**.  (FED.R.EVID. 702.)

d.      The testimony is **not relevant**.  (FED.R.EVID. 401).

e.      The testimony should be excluded because the testimony's limited (at best) probative value "is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, [or] waste of time …"  (**FED.R.EVID. 403**.)

f.      The testimony contains **inadmissible hearsay statements** and **hearsay within-hearsay**.  (FED.R.EVID. 705).


### 3.0  Deposition of Terry Bennett

(August 12, 2004)

3.1     **28:6-25**

a.      The question is **argumentative**, **misstates the evidence**, and **assumes facts not in evidence**.

b.      The testimony is **not relevant**.  (FED.R.EVID. 401).

c.      The testimony should be excluded because the testimony's limited (at best) probative value "is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, [or] waste of time …"  (**FED.R.EVID. 403**.)

3.2     **30:23-32:1, 33:22-34:5**

a.      The testimony contains **inadmissible hearsay statements** and **hearsay within-hearsay**.  (FED.R.EVID. 705).

b.      The testimony is **not relevant**.  (FED.R.EVID. 401).

3.3    **51:24-53:2**, **53:6-7**, **53:17-54:12**, **54:18-55:6**, **55:12-19**, **56:6-18**, **56:24-57:18**, **58:2-18**, **58:20-59:5**, and **59:11-21**

    a.    The questions **assume facts not in evidence**.

    b.    The testimony is **not relevant**.  (FED.R.EVID. 401).

    c.    The testimony should be excluded because the testimony's limited (at best) probative value "is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, [or] waste of time …"  (**FED.R.EVID. 403**.)

3.4    **60:13-69:17**, **70:2-71:22**, **72:11-73:3**, **73:9**-21, 74**:16-75:5**, **75:9-76:1**, **80:8-24**, **82:2-25**, **85:14-87:1**, **88:19-22**, **94:18-96:9**, **96:16-97:8**, **97:11-14**, **98:6-101:5**, **101:17-103:9**, **103:23-107:21**, **119:18-120:5**, **121:25-122:**5 and **137:16-25**

    a.    The testimony addresses a matter (the "Battle Mountain" incident) that has **already been ruled inadmissible**.  (Doc. 333)

    b.    The testimony is **not relevant**.  (FED.R.EVID. 401).

    c.    The testimony should be excluded because the testimony's limited (at best) probative value "is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, [or] waste of time …"  (**FED.R.EVID. 403**.)

3.5    **89:8-93:9** and **136:12-19**

    a.    The testimony is **not relevant**.  (FED.R.EVID. 401).

b.      The testimony should be excluded because the testimony's limited (at best) probative value "is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, [or] waste of time …" (**FED.R.EVID. 403**.)

3.6    **132:18-133:1**

a.      The questions **assume facts not in evidence**.

b.      The testimony contains the **unreliable opinions of lay witnesses whose qualifications and methodology are unknown**. (FED.R.EVID. 702.)

## 4.0  Deposition of Terry Bennett

(August 13, 2004) (Rule 30(b)(6))

4.1    *All* designated excerpts

a.      The testimony addresses a matter (the "Battle Mountain" incident) that has **already been ruled inadmissible**. (Doc. 333)

b.      The testimony is **not relevant**. (FED.R.EVID. 401).

c.      The testimony should be excluded because the testimony's limited (at best) probative value "is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, [or] waste of time …" (**FED.R.EVID. 403**.)

Era Av 4EH/PO/WO Lg24175/20070330

### <u>5.0  Deposition of Terry Bennett</u>

(August 13, 2004) (Vol. II of II)

5.1    ***All*** designated excerpts

    a.    The testimony addresses matters (hearsay statements made by alleged witnesses) that have **already been ruled inadmissible**.  (Doc. 333)

    b.    The testimony contains **inadmissible hearsay statements** and **hearsay within-hearsay**.  (FED.R.EVID. 705).

    c.    The testimony is **not relevant**.  (FED.R.EVID. 401).

    d.    The testimony should be excluded because the testimony's limited (at best) probative value "is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, [or] waste of time …"  (**FED.R.EVID. 403**.)

### <u>6.0  Deposition of Thomas Berthe</u>

(March 26, 2003)

6.1    **27:20-28:23** and **139:10-140:3**

    a.    The testimony refers to evidence (the NTSB Report and conclusions) which has **already been ruled inadmissible**.  (Doc. 196, 202, 386, 388)

    b.    The testimony is **not relevant**.  (FED.R.EVID. 401).

    c.    The testimony contains **inadmissible hearsay statements** and **hearsay within-hearsay**.  (FED.R.EVID. 705).

d.    The testimony should be excluded because the testimony's limited (at best) probative value "is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, [or] waste of time …" (**FED.R.EVID. 403**.)

e.    The testimony contains the **unreliable opinions of lay witnesses whose qualifications and methodology are unknown**. (FED.R.EVID. 702.)

6.2    **32:5-13**

a.    The testimony refers to evidence (the OAS PowerPoint) which has **already been ruled inadmissible**. (Doc. 196)

b.    The testimony is **not relevant**. (FED.R.EVID. 401).

c.    The testimony should be excluded because the testimony's limited (at best) probative value "is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, [or] waste of time …" (**FED.R.EVID. 403**.)

6.3    **61:10-19** and **61:2-62:13**

a.    The testimony is **not relevant**. (FED.R.EVID. 401).

b.    The testimony should be excluded because the testimony's limited (at best) probative value "is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, [or] waste of time …" (**FED.R.EVID. 403**.)

c.    The testimony contains **inadmissible hearsay statements** and **hearsay within-hearsay**. (FED.R.EVID. 705.)

6.4    **130:18 - 131:6**, **133:6 - 137:5**, **140:24 - 142:3** and **144:7-12**

    a.      The testimony is **not relevant**.  (FED.R.EVID. 401).

    b.      The testimony should be excluded because the testimony's limited (at best) probative value "is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, [or] waste of time …"  (**FED.R.EVID. 403**.)

    c.      The testimony contains the **unreliable opinions of lay witnesses whose qualifications and methodology are unknown**.  (FED.R.EVID. 702.)

## 7.0  Deposition of Terry Cole

(July 1, 2003)

7.1    **165:10-17, 166:23-169:24** and **171:10-24**

    a.      The questions **assume facts not in evidence**.

    b.      The testimony contains the **unreliable opinions of lay witnesses whose qualifications and methodology are unknown**.  (FED.R.EVID. 702.)

    c.      The testimony is **not relevant**.  (FED.R.EVID. 401).

    d.      The testimony should be excluded because the testimony's limited (at best) probative value "is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, [or] waste of time …"  (**FED.R.EVID. 403**.)

7.2 **204:13-205:8**

    a.    The testimony contains **inadmissible hearsay statements** and **hearsay within-hearsay**.  (FED.R.EVID. 705).

    b.    The testimony contains the **unreliable opinions of lay witnesses whose qualifications and methodology are unknown**.  (FED.R.EVID. 702.)

    c.    The testimony is **not relevant**.  (FED.R.EVID. 401).

    d.    The testimony should be excluded because the testimony's limited (at best) probative value "is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, [or] waste of time …"  (**FED.R.EVID. 403**.)

7.3 Plaintiff cross-designates the following excerpts from this deposition:

    a.    **198:24-199:16**

## **8.0  Deposition of Tealeye Cornejo**
(September 13, 2005)

8.1 *All* designated excerpts

    a.    The testimony relates only to evidence (the NTSB Report and conclusions) which has **already been ruled inadmissible**.  (Doc. 196, 202, 386, 388)

    b.    The testimony is **not relevant**.  (FED.R.EVID. 401).

    c.    The testimony contains **inadmissible hearsay statements** and **hearsay within-hearsay**.  (FED.R.EVID. 705).

     d.     The testimony should be excluded because the testimony's limited (at best) probative value "is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, [or] waste of time …"  (**FED.R.EVID. 403**.)

     e.     The testimony contains the **unreliable opinions of lay witnesses whose qualifications and methodology are unknown**.  (FED.R.EVID. 702.)

### 9.0  Deposition of Anthony P. Davis

(June 2, 2004)

9.1    **78:4-7, 79:25-84:20, 86:22-87:12, 107:13-108:3** and **108:9-110:10**

     a.     The testimony is **not relevant**.  (FED.R.EVID. 401).

     b.     The testimony should be excluded because the testimony's limited (at best) probative value "is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, [or] waste of time …"  (**FED.R.EVID. 403**.)

     c.     The testimony contains the **unreliable opinions of lay witnesses whose qualifications and methodology are unknown**.  (FED.R.EVID. 702.)

9.2    Plaintiff cross-designates the following excerpts from this deposition:

     a.     **77:20-78:3, 118:1-118:23, 130:2-5, 130:16-20, 139:25-141:15,** and **154:1-16**

## 10.0  Deposition of Jutta Demers

(March 25, 2003)

10.1    **173:2-174:2**

    a.      The testimony is **not relevant**.  (FED.R.EVID. 401).

    b.      The testimony should be excluded because the testimony's limited (at best) probative value "is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, [or] waste of time …"  (**FED.R.EVID. 403**.)

## 11.0  Deposition of Les Hanberg

(November 18, 2003)

11.1    Plaintiff has no objections to the excerpts of this deposition that were provided to plaintiff's counsel on or before February 20, 2007.

11.2    Plaintiff reserves all objections to any other excerpts identified by the defendants after February 20, 2007.

## 12.0  Deposition of Mark Jones

(August 13, 2004)

12.1    Plaintiff has no objections to the excerpts of this deposition that were provided to plaintiff's counsel on or before February 20, 2007.

12.2    Plaintiff reserves all objections to any other excerpts identified by the defendants after February 20, 2007.

### 13.0  Deposition of Gus Lapthorne

(April 23, 2003)

13.1    Defendants did not identify any specific excerpts from this transcript on or before February 20, 2007.

13.2    Plaintiff reserves all objections to any excerpts identified by the defendants after February 20, 2007.

### 14.0  Deposition of Richard (Lash) Larew

(October 1, 2003)

14.1    **57:2-12, 60:24-25, 63:17-25, 64:13-18, 68:12-69:2, 69:16-24** and **71:3-6**

a.    The testimony addresses a matter (payments from USAU) that has **already been ruled inadmissible**.  (Doc. 196)

b.    The questions **assume facts not in evidence**.

c.    This testimony is barred by the **collateral source rule**.

d.    The testimony is **not relevant**.  (FED.R.EVID. 401).

e.    The testimony should be excluded because the testimony's limited (at best) probative value "is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, [or] waste of time …"  (**FED.R.EVID. 403**.)

B-12

14.2    **65:6-13** and **66:2-13**

    a.    The testimony addresses a matter (the OAS PowerPoint) that has **already been ruled inadmissible**.  (Doc. 196 and 333)

    b.    The questions **assume facts not in evidence**.

    c.    The testimony contains **inadmissible hearsay statements** and **hearsay within-hearsay**.  (FED.R.EVID. 705).

    d.    The testimony contains the **unreliable opinions of lay witnesses whose qualifications and methodology are unknown**.  (FED.R.EVID. 702.)

    e.    The testimony is **not relevant**.  (FED.R.EVID. 401).

    f.    The testimony should be excluded because the testimony's limited (at best) probative value "is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, [or] waste of time …"  (**FED.R.EVID. 403**.)

### 15.0  Deposition of Clifford Mitchell

(September 24, 2003)

15.1    **55:15-56:10**

    a.    The testimony contains **inadmissible hearsay statements** and **hearsay within-hearsay**.  (FED.R.EVID. 705).

15.2    **76:3-77:7**

    a.    The testimony addresses a matter (the OAS PowerPoint) that has **already been ruled inadmissible**.  (Doc. 196 and 333)

B-13

b.    The questions **assume facts not in evidence**.

c.    The testimony contains **inadmissible hearsay statements** and **hearsay within-hearsay**.  (FED.R.EVID. 705).

d.    The testimony contains the **unreliable opinions of lay witnesses whose qualifications and methodology are unknown**.  (FED.R.EVID. 702.)

e.    The testimony is **not relevant**.  (FED.R.EVID. 401).

f.    The testimony should be excluded because the testimony's limited (at best) probative value "is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, [or] waste of time …"  (**FED.R.EVID. 403**.)

15.3    Plaintiff cross-designates the following excerpts from this deposition:

a.    **78:3-13, 118:22-119:24, 130:4-17** and **138:12-139:2**

## 16.0  Deposition of George Neufeld

(March 27, 2003)

16.1    Plaintiff has no objections to the excerpts of this deposition that were provided to plaintiff's counsel on or before February 20, 2007.

16.2    Plaintiff reserves all objections to any other excerpts identified by the defendants after February 20, 2007.

B-14

### 17.0  Deposition of Richard Oeder

(September 24, 2003)

17.1    Plaintiff has no objections to the excerpts of this deposition that were provided to plaintiff's counsel on or before February 20, 2007.

17.2    Plaintiff reserves all objections to any other excerpts identified by the defendants after February 20, 2007.

### 18.0  Deposition of Ron Ortuso

(March 27, 2003)

18.1    Plaintiff has no objections to the excerpts of this deposition that were provided to plaintiff's counsel on or before February 20, 2007.

18.2    Plaintiff reserves all objections to any other excerpts identified by the defendants after February 20, 2007.

### 19.0  Deposition of Stephen Rauch

(June 3, 2004)

19.1    *All* designated excerpts

   a.    The testimony addresses matters (the OAS PowerPoint and Rauch's witness interviews) that have **already been ruled inadmissible**.  (Doc. 196 and 333)

   b.    The questions **assume facts not in evidence**.

Era Av 4EH/PO/WO Lg24175/20070330

c.      The testimony contains **inadmissible hearsay statements** and **hearsay within-hearsay**.  (FED.R.EVID. 705).

d.      The testimony contains the **unreliable opinions of lay witnesses whose qualifications and methodology are unknown**.  (FED.R.EVID. 702.)

e.      The testimony is **not relevant**.  (FED.R.EVID. 401).

f.      The testimony should be excluded because the testimony's limited (at best) probative value "is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, [or] waste of time …"  (**FED.R.EVID. 403**.)

19.2    Plaintiff cross-designates the following excerpts from this deposition:

a.      **96:14-16, 97:15-17, 104:1-19, 115:14-116:9, 122:8-11, 136:25-139:23** and **209:17-210:6**

## <u>20.0  Deposition of Thomas Young</u>

(September 25, 2003)

20.1    Plaintiff has no objections to the excerpts of this deposition that were provided to plaintiff's counsel on or before February 20, 2007.

20.2    Plaintiff reserves all objections to any other excerpts identified by the defendants after February 20, 2007.

## CERTIFICATE OF SERVICE
*Era Helicopters, LLC v. UNC Airwork Corp. et al.*
D.Alaska Case No. A02-0131 CV (JKS)

[XXXX]    I hereby certify that on **       March 30, 2007       **,
I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses:

**For Defendants UNC Airwork Corp.**
**and Dallas Airmotive, Inc.**
David A. Devine, Esq.
Ken Eggers, Esq.
GROH EGGERS, LLC
3201 C Street, Suite 400
Anchorage, AK  99503
Tel. (907) 562-6474
Fax (907) 562-6044
EMail *devined@groheggers.com*
      *wardm@groheggers.com*

**For Defendant Pratt & Whitney**
**Canada Corp.**
William F. Brattain II
BAKER BRATTAIN, L.L.C.
N Street Plaza
821 N Street Suite 101
Anchorage, AK  99501
Tel. (907) 277-3232
Fax (907) 272-4850
EMail *brattain@bakerbrattain.com*
      *williamfbrattain@hotmail.com*

       s/ Jeffrey J. Williams

Jeffrey J. Williams, Esq.
LAW OFFICES OF JON A. KODANI

**Attorneys for Plaintiff**
**Era Aviation, Inc.**

2200 Michigan Avenue
Santa Monica, CA 90404-3906
Tel: (310) 453-6762
Fax: (310) 829-3340
**Email: *lojak@kodanilaw.com***