David A. Devine, AK Bar No. 7906015
GROH EGGERS, LLC
2600 Cordova Street, Suite 110
Anchorage, AK 99503
Phone: (907) 562-6474
Fax:    (907) 562-6044
devined@groheggers.com

Raymond L. Mariani, NY Bar No. RM2077
NIXON PEABODY LLP
50 Jericho Quadrangle, Suite 300
Jericho, NY 11753
Phone: (516) 832-7520
Fax:    (516) 832-7555
rmariani@nixonpeabody.com

Attorneys for Defendants
Dallas Airmotive, Inc. and
UNC Airwork Corp.

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA

| | | |
|---|---|---|
| ERA HELICOPTERS, LLC, <br> a Delaware Company, | ) <br> ) <br> ) | |
|    Plaintiff, | ) <br> ) | |
|   vs. | ) <br> ) | Case No. A02-0131 CV  (JKS) |
| UNC AIRWORK CORPORATION a/k/a DAI <br> Airwork Corporation, a Delaware corporation; <br> DALLAS AIRMOTIVE, INC., d/b/a UNC <br> Airwork Corporation and DAI Airwork, a <br> Delaware corporation; PRATT & WHITNEY <br> CANADA, INC., a Canadian corporation; and <br> DOES 1 THROUGH 500, Inclusive, | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) | |
|    Defendants. <br> _____ | ) <br> ) | **DAI'S SECOND <br> SUPPLEMENTAL TRIAL BRIEF** |

   Defendants Dallas Airmotive, Inc. and UNC Airwork Corporation (hereinafter jointly

"DAI"), by and through counsel, file this Second Supplemental Trial Brief pursuant to this

Court's Order at Docket 413. Following the meetings and conferences of counsel and the preparation of the joint proposed pretrial order, DAI believes the following legal issues remain in dispute between the parties:

1.  Can Era pursue a claim for the $2,047,480 it previously received from USAU?

2.  What claims, if any, were properly assigned from Era Aviation, Inc. to Era Helicopters, Inc.?

3.  Can DAI be considered a seller of the at-issue CT disk for purposes of strict products liability?

4.  What loss of use damages, if any, is Era entitled to pursue?

    a.  Can Era recover any loss of use damages in this case?

    b.  Can Era recover loss of use damages after December 2000, when it received $2,047,480 from its subrogated insurer, USAU

5.  What prejudgment interest, if any, is Era entitled to pursue?

6.  What punitive damages, if any, is Era entitled to pursue?

    a.  Is a claim for punitive damages assignable?

    b.  Can Era Helicopters recover punitive damages for harm done to anyone other than Era Helicopters?

    c.  Should the question of punitive damages be presented to the jury?

7.  What special jury instructions should be given?

8.  Can Era add new trial exhibits not previously identified?

# I

## <u>Era Cannot Recover the $2,047,480 Paid By USAU</u>

This issue has been extensively briefed and is currently the subject of DAI's Motion for Rulings of Law re: Recoverable Damages filed at Docket 448. In trying to assert a claim in this case for the $2,047,480 it already received from USAU, Era has steadfastly ignored both the previous orders of this Court and controlling Alaska Supreme Court precedent. Era admits that "USAU and the other participating insurers of Era's helicopter possessed a right of subrogation" and that "the defendants paid a substantial sum of money to settle subrogation claims made by USAU on behalf of itself and the other participating insurers of the helicopter." Docket 456. However, Era refuses to distinguish between a collateral source and a subrogation claim, and tries to morph the two distinct concepts into a new "subrogated collateral sources" rule, even though there is no such rule in Alaska.

The principle that an insured, which is compensated by an insurance carrier for a property loss, lacks the legal authority to pursue a subrogation claim that the carrier elects to pursue itself has long been established in Alaska. *Truckweld Equipment Co. v. Swenson Trucking*, 649 P.2d 234 (Alaska 1982) (a subrogated property insurer should be joined as a real party in interest to the litigation.); *Brinkerhoff v. Swearingen Aviation Corp.*, 663 P.2d 937, 942 (Alaska 1983) (insurance company's decision to settle its subrogation claim prevented the insured property owner from adding the carrier's subrogation claim to his own claim for damages).

*Ruggles ex rel. Estate of Mayer v. Grow*, 984 P.2d 509 (Alaska 1999) is directly on point. "When an insurer pays expenses on behalf of an insured it is subrogated to the

insured's claim. **The insurer effectively receives an assignment of its expenditure by operation of law and contract.**" *Id.* at 512 (emphasis added). The Court made it clear that "**the subrogated claim belongs to the insurer**" who "may pursue a direct action against the tortfeasor, discount and settle its claim, or determine that the claim should not be pursued." *Id.* (emphasis added).

*Thomann v. Fouse*, 93 P.3d 1048, 1051 n 10 (Alaska 2004) made the identical points:

1.      When an insurer pays expenses on behalf of an insured it is subrogated to the insured's claim;

2.      The insurer effectively receives an assignment of its expenditure by operation of law and contract;

3.      The subrogated claim belongs to the insurer; and

4.      The insurer has the right to pursue a direct action against the tortfeasor, discount and settle its claim, or determine that the claim should not be pursued.

In this case, USAU chose to pursue its subrogation claim in a direct action against the defendants. USAU then chose to settle its claims and thereafter dismissed them "in their entirety and with prejudice." Stipulation and Order at 4, Docket No. 189. Because the owner of the $2,047,480 subrogation claim chose to dismiss the claim in its entirety and with prejudice, Era has no authority to resurrect the claim in the hope of gaining a double recovery. "**[T]he insurance company's decision to settle its claim foreclosed this option.**" *Brinkerhoff*, 663 P.2d at 942 (emphasis added).

Era's Opposition doesn't just ignore controlling Alaska subrogation law; it also completely fails to address this Court's earlier Orders which made it clear that Era is ***not***

allowed to recover a judgment that includes the $2,047,480 already paid by USAU.  In the

Order at Docket 333 at 1 this Court ruled: **"If Era is awarded damages, the full amount of**

**the insurance proceeds paid to Era will be subtracted from the award (not simply the**

**amount for which the insurer settled the subrogated claim)."**  (emphasis added).  See

also the Order at Docket 404 at 1-2:

> Initially, United States Aviation Underwriters, Inc. ("Aviation
> Underwriters") and Era sought compensation for the loss of Era's
> helicopter from Defendants UNC Airwork Corporation/Dallas
> Airmotive, Inc. (collectively "DAI") and Pratt & Whitney Canada,
> Inc. ("PWC") for defective manufacturing, and from DAI for
> negligent repair and maintenance. … Aviation Underwriters settled
> its action with the Defendants. **All that remains is Era's claim for**
> **damages, to which Aviation Underwriters was not subrogated,**
> **_i.e._, losses that were not covered by Era's insurance with**
> **Aviation Underwriters.** (emphasis added).

and the Order at Docket 439:

> In addition, the subrogation claims that originally formed a part of
> this litigation have settled.  **Only ERA's claims for uninsured**
> **losses remain.** (emphasis added).

   In the face of repeated rulings from this Court and controlling authority from the

Alaska Supreme Court, Era stubbornly repeats its assertion that it is entitled to recover the

$2,047,480 from the defendants in this case pursuant to the Alaska collateral source statute,

AS 09.17.070.   However, the collateral source statute does **_not_** apply to subrogation

payments.   Instead, the statute only applies to payments received by a plaintiff "as

compensation for the same injury from collateral sources that do **_not_** have a right of

subrogation by law or contract." AS 09.17.070. (emphasis added).  The statute only applies

to "**_unsubrogated_** payments from collateral sources." *Gibson v. GEICO General Ins. Co.*,

(Alaska Supreme Court Op. No. 6106 – March 2, 2007) at *11.  (emphasis added).  Era is relying on a statute that simply has no application to this case.

The distinction between a collateral source and a subrogated source makes common sense as well as legal sense.  A collateral source payment may well give a plaintiff a windfall double recovery but it does *not* expose a defendant to a double liability.  In such cases, an argument can be made that since the windfall to the plaintiff doesn't actually inflict an additional harm on the defendant, there is no reason to deprive the plaintiff of the entire windfall.  But in the case of a subrogation claim, the defendant *is* subject to a double liability since the subrogated insurer has the right to pursue its subrogation claim.  As Era itself admits, that is exactly what happened in this case.  USAU pursued its own subrogation claim against the defendants for the $2,047,480 and the defendants settled and secured the dismissal of that claim.

Era's heavy reliance on *Falconer v. Adams*, 974 P.2d 406 (Alaska 1999) is equally misplaced and its argument that *Falconer* and Alaska cases dealing with subrogation claims cannot be reconciled is wrong.  *Falconer* did *not* involve a settlement of an insurer's subrogation claim.  *Falconer* instead involved a case where one defendant was trying to obtain a credit for a payment made by another defendant, despite the fact that Alaska abandoned joint and several liability, repealed the Uniform Contribution Among Joint Tortfeasors Act, and instituted a pure several liability scheme where no defendant can ever be compelled to pay damages beyond those allocated to it based on its own percentage of fault.

The Alaska Supreme Court recognized exactly this limitation in *Wing v. GEICO*

*Insurance Co.*, 17 P.3d 783 (Alaska 2001). In that case, Wing was injured by an uninsured motorist. GEICO, her automobile insurer, made payments to Wing for medical expenses and an additional $6,000 for economic loss. Wing sought an award against GEICO under her uninsured motorist coverage. At arbitration, her award of damages was reduced by the payments previously made by GEICO. Wing argued that the collateral source rule as interpreted in *Falconer v. Adams*, precluded the offset, but the Court disagreed:

> Wing is wrong. GEICO made all the relevant payments to Wing, or directly on her behalf, whereas in *Falconer* the issue involved credit, in the form of offsets, claimed by one defendant for payments made to the plaintiff by another defendant.

*Wing*, 17 P.3d at 788. *Falconer* might be relevant if Pratt & Whitney were to settle with Era and if DAI then sought a credit for the amount of that settlement; but *Falconer* is not even remotely relevant to the subrogation issue presented in DAI's Motion for Rulings of Law. The issue raised in DAI's motion should be determined in accordance with long established Alaska subrogation law, not by reference to a collateral source statute that by definition does not apply to payments made by a subrogated insurer.

## II

### Era Aviation Had No Power To Assign a Claim for $2,100,000

In its Opposition filed March 21, 2007, Era for the first time produced a copy of a purported assignment of claims from Era Aviation, Inc. to Era Helicopters, LLC. Era steadfastly refused to produce the document to the defendants, arguing that since discovery closed before Era Aviation filed bankruptcy and this issue arose, Era did not have to provide any information. Because DAI was deprived of all opportunity to engage in discovery, it

cannot admit that the purported assignment is valid and enforceable. There are serious questions about the alleged assignment including the fact that it contradicts the previous declaration of Era Helicopters' chief financial officer, Anna Goss, who swore under oath that Era Aviation assigned the claims to Offshore Aviation, Inc. Goss Declaration at Docket 395. DAI will have to explore these discrepancies at trial since it has been denied a fair opportunity to address them in discovery.

Even if Era Helicopters has a valid assignment of claims, that assignment could not include a claim for the $2,047,480 that USAU paid Era Aviation since upon payment of that sum, the claim was assigned by operation of subrogation law to USAU. By the time of the alleged Era assignment in June 2005, USAU had not only pursued its own subrogation claim for the $2,047,480 – it had already settled and dismissed that claim with prejudice a full year before the alleged assignment. See Docket 189.

Era claims that the fair market value of the helicopter on the day of the accident was $2,100,000. Everyone admits USAU paid Era $2,047,480 and then pursued, settled and dismissed a subrogation claim for that amount. At the date of the alleged assignment, the property damage claim Era Aviation actually possessed was not a claim for $2,100,000 but only a claim for no more than $52,520. Era Aviation had nothing more to assign to Era Helicopters, and therefore Era Helicopters has nothing more to pursue in this lawsuit.

### III

### DAI is Not a Seller of a Product
### For Purposes of Strict Products Liability

DAI is in the aircraft repair business, not the business of selling helicopter CT disks.

DAI did not sell the CT Disk that Era claims was a defective product, and there is no evidence that DAI charged Era separately for the CT Disk. In fact, there is no reference at all in DAI's documents about any price for the CT Disk. DAI provided Era with a repair service, not a product.

In *Bell v. Precision Airmotive Corporation*, 42 P.3d 1071 (Alaska 2002), the U.S. District Court certified the following question to the Alaska Supreme Court:

> In a hybrid sale/service transaction where the predominant purpose of the transaction is to overhaul and service an [airplane] engine, is an overhauler/repairer strictly liable for selling and installing, during the course of the overhaul, a used, defective component part that the overhauler/repairer had subjected to extensive repair, inspection and testing?

The Alaska Supreme Court answered this question "yes" based on the fact that in that case the overhauler/repairer charged the airplane's owner separately for the component part:

> When the product and service components are kept separate by the parties to the transaction, as when a lawn-care firm bills separately for fertilizer applied to a customer's lawn *or when a machinery repairer replaces a component part and bills separately for it, the firm will be held to be the seller of the product.* This is especially true when the parties to the transaction explicitly characterize the property aspect as a sale.

*Id.* at 1072 (emphasis in original).

The Alaska Supreme Court consciously chose "not" to "address the more difficult situation … 'when the parties do not clearly separate the product and service components' in a hybrid sales-service transaction." *Id.* at 1072. However, the Court has previously made it clear that while "sellers, manufacturers, wholesale or retail dealers and distributors" are "subject to strict products liability", such liability applied only "to products, not services."

*Saddler v. Alaska Marine Lines, Inc.*, 856 P.2d 784, 787 (Alaska 1993).  Specifically, the Court has ruled that a repairer of a truck ram assembly could not be held strictly liable as a matter of law.  *Swenson Trucking & Excavating, Inc. v. Truckweld Equipment Co.*, 604 P.2d 1113, 1116 (Alaska 1980).

In this case, DAI was not the seller of the CT Disk.  DAI was instead a repairer as in the *Swenson Trucking* case.

## IV

## Era Cannot Recover Loss of Use Damages

### A.    AS 09.30.070 Precludes Any Award of Loss of Use Damages.

Era agrees that Alaska law prevents it from recovering both loss of use damages and prejudgment interest, but it argues that its loss of use damages in this case are for the period of time from August 2000 to April 2001, while prejudgment interest does not begin until the defendants were served with the Summons and Complaint in July 2002.

AS 09.30.070 reflects the public policy of the State of Alaska that a plaintiff should not be allowed to pursue a claim for prejudgment interest, *i.e.* a claim for the loss of use of money, until the plaintiff first serves legal process or delivers to the defendant a "written notification that an injury has occurred and that a claim may be brought against the defendant for that injury."  AS 09.30.070(b).  The requirement of a written notification applies to both personal injury and property damage cases.  *Id.*

Prejudgment interest and loss of use damages are mutually exclusive remedies in cases involving damage to personal property because they compensate a plaintiff for the same loss of use of the property.  *Alaska Construction Equipment v. Star Trucking, Inc.*, 128

P.3d 164, 170 (Alaska 2006); *State v. Stanley*, 506 P.2d 1284, 1295 (Alaska 1973), rehearing denied 509 P.2d 279. Since loss of use damages are the equivalent of prejudgment interest in personal property cases, the same public policy applies when a plaintiff pursues loss of use in lieu of prejudgment interest. A plaintiff cannot pursue a claim for loss of use damages unless and until it first delivers to the defendant a written notification that an injury has occurred and that a claim will be made against that defendant for the injury.

Era is claiming loss of use damages from August 2000 to April 2001, but Era did not deliver written notification of its claim against DAI until July 2002 when it served defendants with the Summons and Complaint in this action. As a result, Era cannot recover any loss of use damages from August 2000 to April 2001. Era is instead limited to a possible award of prejudgment interest on a principal amount of no more than $52,520 -- the difference between $2,100,000, which Era claims was the fair market value of the helicopter, and the $2,047,480 that Era received from USAU in December 2000.

## B.  Era Cannot Claim Loss of Use Damages After December 2000.

In the alternative, Era cannot claim loss of use damages after December 2000. Era is seeking loss of use damages for a nine month period from August 13, 2000 when the crash occurred until April 2001. However, there was a significant intervening event. In December 2000, Era received $2,047,480 from its subrogated insurer, USAU. This means that as of December 2000, Era had full use of the $2,047,480 and therefore was no longer deprived of the money value of its property. Once Era had the use of the money value of its helicopter, it would constitute a double recovery to let plaintiff both use the money and seek

loss of use damages. "[L]oss of use damages may no longer accrue for an owner once the owner has received actual payment for the value of its property [.]" *Alaska Construction*, 128 P.3d at 170.

In *Liimatta v. Vest*, 45 P.3d 310 (Alaska 2002) an injured bicyclist sued the motorist who hit her. Before trial, the motorist's insurance carrier advanced plaintiff the sum of $10,214. The Supreme Court held that this amount had to be deducted from the jury verdict, but the Court also held that it was error to award the plaintiff prejudgment interest on the $10,214 since plaintiff received and had use of that money. *Id.* at 321. The Court held that to the extent the advanced funds were intended to compensate plaintiff for her past damages, an award of prejudgment interest on those funds after the day she received them would give her a "windfall double recovery, because [plaintiff] was no longer deprived of the use of the funds after she received them." *Id.* at 322. Instead, prejudgment interest was limited "to the periods when [plaintiff] was actually deprived of damages due her." *Id.*

The same principle applies here. Era cannot claim loss of use damages for destruction of its helicopter after it had use of $2,047,480 in December 2000 because it was no longer deprived of the value of its helicopter. To let Era use over $2,000,000 and still claim loss of use damages would constitute an impermissible double recovery, and therefore no loss of use damages should be permitted after December 2000.

## V

### Prejudgment Interest Only Accrues on Era's Uninsured Property Loss.

In *Tookalook Sales & Service v. McGahan*, 846 P.2d 127, 129 (Alaska 1993), the Court first noted that the questions surrounding an award of prejudgment interest are

questions of law.  The Court then held that prejudgment interest would not automatically accrue on all consequential damages sustained by a plaintiff and, in fact, interest should not be awarded when it would result in a double recovery.  In that case, an action to rescind a contract for the sale of a motor home, the Court would not allow the plaintiff to recover prejudgment interest on the amount borrowed from a finance company in connection with the sale since the jury's award of consequential damages already included the interest payments plaintiff actually paid the finance company and since plaintiff did "not actually lose the use of those funds borrowed from" the finance company.  *Id.* at 130.

Because Era received $2,047,480 in December 2000, it did not actually lose the use of that money and cannot seek prejudgment interest on that amount.   Any claim for prejudgment interest must be limited to interest on property damages that were ***not*** covered by Era's insurance with USAU.   Thus, if Era can prove uninsured property damages of $52,520, it could ask for prejudgment interest on that amount from the date the Summons and Complaint were served upon the defendants.

## VI

## Punitive Damages

### A.     A Claim for Punitive Damages is not Assignable.

At the outset it should be noted that "punitive damages are a harsh remedy 'not favored in law.  They are to be allowed only with caution and within narrow limits.'" *Chizmar v. Mackie*, 896 P.2d 196, 210 (Alaska 1995).  That a claim for punitive damages is a claim that is personal to the claimant can be seen in the United States Supreme Court's recent decision in *Phillip Morris USA v. Williams*, 127 S.Ct. 1057, 1063 (2007), where the

Court held that it would be an unconstitutional taking to award punitive damages for harm done to anyone other than the plaintiff in the lawsuit.  In keeping with this philosophy more scrutiny should be applied to a purported assignment of a punitive damage claim than any other assignment.

The Alaska Supreme Court has recognized the general proposition that "it is illegal and ineffective to assign a claim for personal injury that has not been reduced to judgment." *Id.* at 99.  The Court noted that the reason often cited for the ban against assignment of non-contractual causes of action was the fear that "unscrupulous people would purchase causes of action and thereby traffic in law suits for pain and suffering." *Croxton v. Crowley Maritime Corporation*, 758 P.2d 97 (Alaska 1988).  The courts should be even more concerned about trafficking in punitive damages lawsuits.

The Alaska Supreme Court has never been asked to rule on the issue of whether a punitive damages claim can be assigned.  DAI submits the better approach is that taken by the California Supreme Court in *Murphy v. Allstate Insurance Co*., 553 P.2d 584 (Cal. 1976), which held that a claim for punitive damages is ***not*** assignable.  See also, *Essex Insurance Co. v. Five Star Dye House, Inc.*, 137 P.3d 192, 198 (Cal. 2006) (a claim for punitive damages is not assignable).

**B.**     <u>**Era Cannot Recover for Harm to Anyone Other than Era.**</u>

The parties disagree over the formulation of the punitive damages issue.  Era says it can recover punitive damages if DAI acted with malice or reckless disregard to the

"interests of others"[1] while DAI contends that Era may only recover punitive damages upon proof that DAI acted with malice or reckless disregard to the interests of "Era Aviation, Inc."[2]

The United States Supreme Court recently made it clear that any award of punitive damages to a plaintiff for harm done to someone else is an unconstitutional taking and therefore cannot be tolerated. *Phillip Morris USA v. Williams*, 127 S.Ct. 1057, 1063 (2007). A jury cannot award plaintiff punitive damages for any harm done to anyone other than the plaintiff. That means that the plaintiff, Era Helicopters, LLC, cannot recover for any harm to the helicopter pilot or anyone else, including Era Aviation, Inc. Since there is no evidence at all that DAI did anything to harm Era Helicopters, LLC, no punitive damage claim can be submitted to the jury. If, however, punitive damages are allowed on an assignment theory, such damages cannot be awarded to punish DAI for any harm done to anyone other than Era Aviation, Inc.

## C.    There is Insufficient Evidence of Malice to Warrant Presentation to a Jury.

"[P]unitive damages are a harsh remedy 'not favored in law. They are to be allowed only with caution and within narrow limits.'" *Chizmar v. Mackie*, 896 P.2d 196, 210 (Alaska 1995). In connection with a claim for punitive damages, the trial court must make a threshold determination as to whether the plaintiff can support a prima facie case for punitive damages. *Mitchell v. Heinrichs*, 27 P.3d 309, 311 (Alaska 2001) [Trial court's

---

[1] See joint proposed pretrial order at Docket 461, page 41 and plaintiff's proposed special verdict form at Docket 461, page 90.
[2] See joint proposed pretrial order at Docket 461, page 41 and DAI's proposed special verdict form at Docket 461, page 93.

summary judgment dismissing plaintiff's punitive damage claims affirmed]; *Chizmar v. Mackie*, 896 P.2d at 210.    [Trial court's directed verdict dismissing plaintiff's punitive damage claims affirmed].    Moreover, punitive damages may not be awarded unless supported by clear and convincing evidence:

> Specifically, the plaintiff must prove by clear and convincing evidence that the defendant's conduct was outrageous, such as acts done with malice, bad motive, or reckless indifference to the interests of another. … "If the evidence does not give rise to an inference of actual malice or conduct sufficiently outrageous to be deemed equivalent to actual malice, then the trial court need not submit the issue of punitive damages to the jury."

*Lee Houston & Associates, Ltd. v. Racine*, 806 P.2d 848, 856 (Alaska 1991).

Plaintiff's claim for punitive damages is based on its unsupported allegation that DAI recklessly installed an unairworthy component part in Era's engine.  UNC Airwork's records indicate that the helicopter's CT Disk was subjected to an over-temperature event (commonly referred to as a "hot start") at Era Aviation's facilities in November 1997. Subsequent to the hot start, the CT Disk was examined by UNC Airwork's Materials Review Board consisting of lead inspectors and engineers who were qualified to analyze the part and make a final determination regarding any repair.  During this inspection, a blemish (or "grooved condition") was found in the rivet head area on the disk.  Although a temporary "red tag" was placed by a lower level inspector, indicating the disk had not yet been polished, the disk was polished by the Miami facility, inspected, and returned to service.

When the disk failed, the fir trees of the disk were broken off at the base of the fir tree where it meets the body of the disk, ***not*** near the rivet head area.  Plaintiff's experts all claim that excess sulfur caused the disk to fracture, not the blemish.  Era's experts admit that

the blemish in the rivet head area bears no connection to any corrosion on the fir trees or the fracture at the base of the fir trees.  Plaintiff's own experts long ago conceded that the blemish did ***not*** cause the disk fracture and is ***no***t related to the failure mode theory advanced by Era in this matter.  For that reason, this Court has excluded all reference to or evidence of the blemish or grooving.  Order at Docket 376, p. 5.

In its Order at Docket 376, this Court determined that "Era's own experts did not find a causal connection between the evidence [of grooving] and the eventual failure of the CT disk[.]"  Docket 376, p. 2.  Moreover, "Era does not even provide a theory that would explain how grooving could contribute to cause a failure of the CT disk or how a replacement disk would not have failed."  Docket 376, p. 5.  Based on these previous determinations by the Court, it is clear that there is no admissible evidence of actual malice or reckless conduct sufficiently outrageous to be deemed the equivalent of actual malice.  Therefore the Court should exercise its gate-keeping function at this time and dismiss Era's claim for punitive damages.

## VII

### Objections to Plaintiff's Proposed Special Jury Instructions

1.     Plaintiff's proposed special instruction No. P-1 does not accurately describe the law and would instruct the jury that a defendant can be found liable even if it has exercised all possible care.  In fact, the Alaska Supreme Court has held that "manufacturers [and sellers] are not absolute insurers of their products."  *Caterpillar Tractor Co. v. Beck*, 593 P.2d 871, 879 (Alaska 1979), appeal after remand 624 P.2d 790.  Further:

Strict liability will not impose legal responsibility simply because a

*Era Helicopters, LLC v. UNC et al.*
Case No. A02-0131 CV (JKS)

> product causes harm.  A product must be defective as marketed if
> liability is to attach, and "defective" must mean something more than a
> condition causing physical injury.

*Id*. at 879.  Moreover, "[a] product is not necessarily defective merely because an injury occurred."  *Id*. at p. 879.

2.     Plaintiff's proposed special instruction No. P-2 does not accurately state the law as it applies to an alleged seller of a product.  In fact, to prevail against DAI on a products liability claim, the plaintiff must not only prove that DAI sold the CT Disk at issue in this case, but that DAI was a seller rather than a service provider.  See discussion in Section III of this trial brief, *supra*.

3.     Plaintiff's proposed special instruction No. P-3 does not accurately state the law regarding the Alaska collateral source statute and Alaska subrogation law.  See discussion in Section I of this trial brief, *supra*.

## VIII

### Era's New Exhibits

In the proposed pretrial order, Era tries to add three exhibits it did not previously identify on the exhibit list it filed with the Court at Docket 437.  The defendants object to Era's unilateral identification of new trial exhibits without first obtaining leave of Court to do so.

1.     Exhibit P-230 is a portion of a document that purports to assign the claims of Era Aviation, Inc. to Era Helicopters, LLC.  The document was allegedly signed in June

2005,[3] which means it should have been disclosed in a supplemental Rule 26 disclosure almost two years ago. It wasn't.

The issue of a possible assignment first arose after DAI learned that Era Aviation, Inc. had filed for bankruptcy protection and had abandoned any claim it may have had against DAI. DAI brought this to the Court's attention, and plaintiff was ordered to substitute any real party in interest that claimed to be Era Aviation's successor for purposes of this lawsuit. Docket 392. Following that order, Era Helicopters, LLC appeared in this case as the plaintiff. Docket 393. Defendant Pratt & Whitney filed a motion to reopen discovery for the limited purpose of inquiring into the purported assignment of claims. Docket 398. DAI joined in Pratt & Whitney's motion. Docket 399. Plaintiff never produced any information regarding the purported assignment and vigorously opposed the motion to reopen discovery, arguing that the issue of who owns the claims being asserted and how it acquired the right to assert them was "*not* related to the 'subject matter of this lawsuit' and therefore not a subject for discovery. Docket 400 at p. 5.

The Court denied defendants' motion to reopen discovery. Docket 402. Era never produced the purported assignment, nor any information about the assignment, until March 21, 2007 when it was attached to an Era opposition brief. Docket 456, Ex. 1. There are serious questions about the purported assignment, including the fact that it contradicts the previous declaration of Era Helicopters' chief financial officer, Anna Goss, who swore under oath that Era Aviation first assigned the claims to Offshore Aviation, Inc. Goss Declaration at Docket 395.

---

[3] Note, however that there is no date filled in for the signature of Era Helicopters, LLC.

It would be fundamentally unfair to let Era refuse to produce the assignment in discovery, thwart all efforts by the defendants to learn any information about the purported assignment, and then let Era introduce a portion of the purported assignment at trial merely because Era has now belatedly recognized that its right to pursue this claim is, in fact, an element it must prove.

2.      Exhibits P-231 and P-232 are documents from 1996 and 1998 that have long been in the possession of plaintiff.  They should have been listed on Era's exhibit list in a timely fashion, and Era has not sought leave from the Court nor offered any just cause for allowing them to be identified as exhibits now.

With respect to Era's other exhibits, DAI incorporates herein its objections to plaintiff's exhibits filed at Docket 434.

Respectfully submitted this 30th day of March, 2007.

> Defendants Dallas Airmotive, Inc. and
> UNC Airwork Corporation
>
> By:___ s/ David A. Devine_____
>     David A. Devine (AK Bar No. 7906015)
>     GROH EGGERS, LLC
>     2600 Cordova Street, Suite 110
>     Anchorage, AK 99503
>     Phone: (907) 562-6474
>     Fax: (907) 562-6044
>     E-Mail: devined@groheggers.com
>
>     Raymond L. Mariani, NY Bar No. RM2077
>     NIXON PEABODY LLP
>     50 Jericho Quadrangle, Suite 300
>     Jericho, N.Y. 11753
>     Phone:  (516) 832-7520
>     Fax:     (516) 832-7555
>     E-Mail:  rmariani@nixonpeabody.com

I HEREBY CERTIFY that on March 30, 2007,
a copy of the foregoing was served **electronically** on:

Jon A. Kodani, Esq.
Jeffrey J. Williams, Esq.
LAW OFFICE OF JON A. KODANI

Attorney for Plaintiff Era Helicopters, LLC

William F. Brattain II, Esq.
BAKER BRATTAIN, LLC

Attorney for Defendant Pratt & Whitney

  s/ David A. Devine