Jon A. Kodani, Esq. (*pro hac vice*)
Jeffrey J. Williams, Esq. (*pro hac vice*)
**LAW OFFICES OF JON A. KODANI**
2200 Michigan Avenue
Santa Monica, CA  90404
Tel. (310) 453-6762

**Attorneys for Plaintiff**
Era Helicopters, LLC

## UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| **ERA HELICOPTERS, LLC**, a Delaware company, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | Civil Case No. |
| vs. ) | **A02-0131 CV (JKS)** |
| ) | |
| **UNC AIRWORK CORPORATION** a/k/a ) | |
| DAI Airwork Corporation, a Delaware corporation; ) | |
| **DALLAS AIRMOTIVE, INC.** d/b/a ) | |
| UNC Airwork Corporation and DAI Airwork Corporation, ) | |
| a Delaware corporation; ) | |
| **PRATT & WHITNEY CANADA, INC.**, ) | |
| a Canadian corporation; and ) | |
| **DOES 1 through 500**, Inclusive, ) | |
| ) | |
| Defendants. ) | |
| ) | |

### PLAINTIFF'S SECOND SUPPLEMENTAL TRIAL BRIEF

## TABLE OF CONTENTS

1.0    SUMMARY OF UNRESOLVED MAJOR ISSUES . . . . . . . . . . . . . . .    2

2.0    PLAINTIFF MAY ASK THE JURY TO AWARD
       DAMAGES FOR THE FAIR MARKET VALUE OF
       THE DESTROYED HELICOPTER, AND IF THOSE
       DAMAGES ARE AWARDED, THEN THE
       APPROPRIATE POST-TRIAL REDUCTION IS A
       CREDIT FOR THE SUMS PAID BY EACH
       NON-COLLATERAL SOURCE (DEFENDANTS)
       TO SETTLE THE SUBROGATION CLAIMS, AND
       NOT THE SUMS THAT WERE PAID TO ERA
       BY SUBROGATED COLLATERAL SOURCES . . . . . . . . . . . . . . . . .    3

       2.1    The Collateral Source Statute Must Be Read
              Broadly To Forbid Any Reduction Unless The
              Defendants Can Prove That The Collateral
              Sources Were Not Subrogated, And If The
              Defendants Fail To Meet That Burden Of
              Proof, Then There Can Be No Reduction . . . . . . . . . . . . . . . . . .    4

       2.2    Alaska's Collateral Source Statute Forbids A
              Reduction Even Though Era's Insurance
              Company Actively Pursued, Settled, And Then
              Dismissed Its Own Subrogation Claims . . . . . . . . . . . . . . . . . .    6

       2.3    *Gibson v. GEICO* Does Not Say That The Statute
              Applies Only To Unsubrogated Payments From
              Collateral Sources – That Case Says The Statute
              Applies Only To Payments From Collateral Sources . . . . . . . . .    8

3.0    THE DEFENDANTS MAY NOT OFFER
       EVIDENCE OF PAYMENTS ERA RECEIVED
       FROM COLLATERAL SOURCES . . . . . . . . . . . . . . . . . . . . . . . . . . .    9

4.0    THE UNC DEFENDANTS MAY NOT OFFER
       TESTIMONY IN THEIR CASE-IN-CHIEF FROM
       TWO EMPLOYEES WHO WERE NEVER
       IDENTIFIED DURING DISCOVERY OR IN
       MANDATORY RULE 26 DISCLOSURES . . . . . . . . . . . . . . . . . . . . .    10

Era Av 4EH/PO/WO Lg24175/20070330

## <u>TABLE OF CONTENTS</u>
*(continued)*

**5.0    ALL CLAIMS AND RIGHTS OF
ERA AVIATION, INC. WERE ASSIGNED
TO PLAINTIFF ERA HELICOPTERS, LLC** . . . . . . . . . . . . . . . . . . .    12

  **5.1    The Assignment Occurred *Before* Era Aviation Filed
  A Voluntary Petition For Chapter 11 Bankruptcy** . . . . . . . . . . .    13

  **5.2    The Defendants Were Provided With A Copy Of The
  Assignment In A Reasonable And Timely Manner** . . . . . . . . . . .    13

  **5.3    The Written Assignment Is Consistent With The
  Declaration Of Ms. Anna Goss** . . . . . . . . . . . . . . . . . . . . . . . . . . .    15

  **5.4    The Assignor (Era Aviation, Inc.) Possessed
  A Valid Legal Claim For The $2.1 Million Fair
  Market Value Of The Helicopter** . . . . . . . . . . . . . . . . . . . . . . . . .    16

  **5.5    Claims For Punitive Damages Can Be Assigned** . . . . . . . . . . . .    17

**6.0    THE UNC DEFENDANTS MAY BE HELD
STRICTLY LIABLE FOR INSTALLING A
DEFECTIVE COMPONENT PART IN ERA'S
ENGINE, EVEN IF THE UNC DEFENDANTS
DID NOT "SELL" THAT DISK TO ERA** . . . . . . . . . . . . . . . . . . . . . .    18

**7.0    PLAINTIFF'S OBJECTIONS TO DEFENDANTS'
EXHIBITS HAVE NOT BEEN RESOLVED,
AND THOSE OBJECTIONS SHOULD BE SUSTAINED** . . . . . . . . .    19

**8.0    CONCLUSION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    19

# TABLE OF AUTHORITIES

## Cases

Bell v. Precision Airmotive Corp.,
42 P.3d 1071 (Alaska 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     18

Britton v. Co-Op Banking Group,
4 F.3d 742 (9th Cir. (E.D.Cal.) 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     12

Croxton v. Crowley Maritime Corp.,
758 P.2d 97 (Alaska 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     17

Cuson v. Maryland Cas. Co.,
735 F.Supp. 966 (D.Hawaii 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     17

Deal v. Kearney,
851 P.2d 1353 (Alaska 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     17

Falconer v. Adams,
974 P.2d 406 (Alaska 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     4-7, 9, 16

First Federal Sav. and Loan v. Oppenheim, Appel, Dixon & Co.,
629 F.Supp. 427 (S.D.N.Y. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     17

Gibson v. GEICO General Ins. Co.,
— P.3d — (2007 WL 625206) (Alaska 2007) . . . . . . . . . . . . . . . . . . . . . . .     3, 8

Kleinwort Benson v. Quantum Financial Services, Inc.,
285 Ill.App.3d 201 [673 N.E.2d 369] (Ill.App. 1996) . . . . . . . . . . . . . . . .     17

Oppel v. Empire Mut. Ins. Co.,
517 F.Supp. 1305 (S.D.N.Y. 1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     18

Era Av 4EH/PO/WO Lg24175/20070330

# TABLE OF AUTHORITIES

**Cases** *(continued)*

Ruggles v. Grow,
984 P.2d 509 (Alaska 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .          7

Thomann v. Fouse,
93 P.3d 1048 (Alaska 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .          7

Tolan v. Era Helicopters, Inc.,
699 P.2d 1265 (Alaska 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .          9

Wing v. GEICO Insurance Co.,
17 P.3d 783 (Alaska 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .          7

**Statutes and Rules**

FED.R.CIV.P. 26(a)(1)(A) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .          11

Fed.R.Civ.P. 37(c)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .          11

AK.ST.ANN. § 09.17.070(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .          3, 6, 8-9, 16

AK.ST.ANN. § 09.68.060 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .          12

Era Av 4EH/PO/WO Lg24175/20070330

Pursuant to the Court's Order (Doc. 413), plaintiff Era Helicopters, LLC, respectfully submits the following Second Supplemental Trial Brief:

## 1.0     SUMMARY OF UNRESOLVED MAJOR ISSUES.

Based on the parties' discussions during the preparation of the joint proposed Pretrial Order, plaintiff Era Helicopters, LLC, believes that the following major issues are still unresolved:

1. **If the jury awards damages to plaintiff for the fair market value of the helicopter, may that award be reduced by the sums paid to Era by subrogated collateral sources?**  Plaintiff submits the answer to this question is "*no*."

2. **May the defendants offer evidence of payments made to Era by collateral sources?**  Plaintiff submits the answer to this question is also "*no*."

3. **May the defendants offer testimony in their case-in-chief from two employee witnesses (Mike Cumnock and Mike Snellgrove) who were never identified during discovery or in mandatory Rule 26 disclosures?**  Plaintiff submits the answer to this question is also "*no*."

4. **Whether the claims of Era Aviation, Inc., including its claim for punitive damages, were assigned to plaintiff Era Helicopters, LLC?**  Plaintiff submits the answer to this question is "*yes*."

5. **Whether the UNC defendants may be held strictly liable for selling, installing and repairing the CT disk?**  Plaintiff submits the answer to this question is also "*yes*."

6. **Whether the court should exclude the defendants' exhibits described in Appendices "A" and "B"?**  Plaintiff submits the answer to this question is also "*yes*."

**2.0    PLAINTIFF MAY ASK THE JURY TO AWARD DAMAGES FOR THE FAIR MARKET VALUE OF THE DESTROYED HELICOPTER, AND IF THOSE DAMAGES ARE AWARDED, THEN THE APPROPRIATE POST-TRIAL REDUCTION IS A CREDIT FOR THE SUMS PAID BY EACH NON-COLLATERAL SOURCE (DEFENDANTS) TO SETTLE THE SUBROGATION CLAIMS, AND NOT THE SUMS THAT WERE PAID TO ERA BY SUBROGATED COLLATERAL SOURCES.**

The parties continue to debate the issue of how much money should be deducted from any award the jury might eventually make for the fair market value of the helicopter. The parties' dispute centers on the proper application of Alaska's statutory collateral source rule:

> (a) After the fact finder has rendered an award to a claimant, and after the court has awarded costs and attorney fees, a defendant may introduce evidence of amounts received or to be received by the claimant as compensation for the same injury from collateral sources that do not have a right of subrogation by law or contract.  (AK.ST.ANN. § 09.17.070(a))[1]

This statute authorizes a limited post-trial reduction only when the injured victim has been paid by "collateral sources that *do not* have a right of subrogation by law or contract." Because everyone in this case agrees that Era Aviation received payments from collateral

---

[1]    Despite the defendants' claims to the contrary, the issue here must be resolved under the collateral source rule, because the reduction the defendants are seeking represents the total sum that was paid to Era by its own insurers.  Era's own insurers are, by definition, collateral sources, and so the collateral source rule must decide whether the defendants are entitled to any reduction.  A different analysis would apply if the defendants sought a reduction based only on the sums they paid to USAU, since the defendants (unlike Era's own insurers) are not "collateral sources."  (Gibson v. GEICO General Ins. Co., — P.3d — (2007 WL 625206) (Alaska 2007).)  But to date, the defendants have not asked for any such reduction.

sources that *did* have a right of subrogation: (1) plaintiff contends the statute forbids any reduction, (2) but the defendants say that the statute does not even apply here, and a reduction must be made in accordance with the common law that existed prior to the enactment of the statute. (Doc. 462.) In other words, the parties' dispute can be summarized as follows:

- Plaintiff believes the statute must be read broadly to preclude all reductions based on payments made by collateral sources, unless the defendants can prove that the reduction is based on payments made by "collateral sources that do not have a right of subrogation."

- Defendants believe the statute must be read narrowly to apply only to payments made by "collateral sources that do not have a right of subrogation," and that the common law (not the statute) determines whether a reduction can be made based on payments made by subrogated collateral sources (as in this case).

**2.1    The Collateral Source Statute Must Be Read Broadly To Forbid Any Reduction Unless The Defendants Can Prove That The Collateral Sources Were Not Subrogated, And If The Defendants Fail To Meet That Burden Of Proof, Then There Can Be No Reduction.**

In Falconer v. Adams, 974 P.2d 406, 411-413 (Alaska 1999), the Alaska Supreme Court analyzed section 09.17.070, and held that a plaintiff *can* recover for a subrogated claim that the subrogee has settled, and that the trial court *cannot* reduce the plaintiff's award by the amounts paid by subrogated collateral sources. (Falconer v. Adams, supra, 974 P.2d

at pp. 411-413.)  The court also went on to hold that unless the defendant proves that the collateral sources were unsubrogated, then there can be no reduction:

> **Accordingly, when, as here, a defendant fails to prove unsubrogated collateral source payments, the appropriate recourse for the trial court is to deny reduction of the verdict;**  on appeal of an unsupported reduction, the correct remedy is reversal, not a remand for a second opportunity to prove up the claim.  (<u>Falconer v. Adams</u>, <u>supra</u>, 974 P.2d at p. 413, fn. 8.)

According to the defendants, "*Falconer* did not involve a settlement of an insurer's subrogation claim."  (Doc. 462, pp. 5-6.)  But a cursory review of <u>*Falconer*</u> shows that: (1) the victim of the tort (Falconer) was paid by his own insurance company (State Farm); (2) State Farm was subrogated; (3) State Farm settled its subrogation rights by accepting money from the defendant's insurer (Allstate); and (4) the Supreme Court of Alaska held that the trial court committed reversible error when it reduced the victim's award by the sums paid to Falconer by his own insurance company (State Farm).[2]

On the salient points, <u>*Falconer*</u> cannot be easily distinguished form this case: (1) the victim of the tort (Era) was paid by its own insurance company (USAU); (2) USAU was subrogated; (3) USAU settled its subrogation rights by accepting money from the defendants; and (4)  it would be reversible error to reduce any award by the sums paid to Era by its own insurance company.

---

[2]       The only real distinction between <u>*Falconer*</u> and this case is that in <u>*Falconer*</u>, State Farm apparently never filed  or joined a formal lawsuit before it accepted money to settle its subrogation claims.  However, the filing of a lawsuit does not appear to be a distinction that is significant or material to any issue here.

## 2.2     Alaska's Collateral Source Statute Forbids A Reduction Even Though Era's Insurance Company Actively Pursued, Settled, And Then Dismissed Its Own Subrogation Claims.

The defendants complain that the plaintiff's interpretation of section 09.17.070 would expose defendants to "double liability," since they already paid a sum to the subrogated insurer (USAU) and they are now being asked to pay again to Era.  (Doc. 462, p. 5.) However, this exact same complaint was lodged by then-Chief Justice Matthews in his dissenting opinion in _Falconer_: "Under today's opinion GEICO, having with Allstate paid $5,000 to State Farm on State Farm's subrogated claim, will have to pay the same amount for the same loss to Falconer.  Double payment here is thus not merely a fear, it is a reality." (Falconer v. Adams, supra, 974 P.2d at p. 415 [Matthews,C.J. dissenting].)  Of course, the _Falconer_ majority held that it was reversible error to reduce the plaintiff's award ***even if that meant the defendants would be exposed to a "double liability."***  (Id. at p. 413, fn. 8 ["We find no reason to presume that the parties and their insurers will be unable to protect against the possibility of double recovery through negotiations or separate proceedings."])

Additionally, in the context of this case, the threat of exposing the defendants to a "double liability" is more imagined than real.  The defendants would only be exposed to a "double payment" if they fail to obtain a credit for the sums they paid to settle the subrogation claims.  If they do receive a credit for those payments, then there is no risk of a "double liability" if they are also asked to pay additional sums that they never paid to USAU in the first place.  Rather than being exposed to a true "double liability," the defendants are simply barred form artificially inflating the value of their offset to match the sums paid by collateral sources, as was permitted by _Brinkerhoff_ prior to the enactment of section 09.17.070.

The defendants also say that Ruggles v. Grow, 984 P.2d 509 (Alaska 1999) "is directly on point." (Doc. 462, p. 3.) Not so. (*See*, Doc. 196, p. 15 ["Absent in the present case is the fundamental point behind Ruggles – there is no evidence that U.S. Aviation has asked era to refrain from pursuing the insurer's claims."]) Similarly, the defendants also say that Thomann v. Fouse, 93 P.3d 1048 (Alaska 2004) "made the identical points." (Doc. 462, p. 3.) However, *Thomann* does not address section 09.17.070 or the issue involved in *Falconer*, nor does *Thomann* say anything that would help decide whether an award can be reduced for sums paid to the victim by subrogated collateral sources.

Plaintiff does not deny that its insurers (represented by the former plaintiff, USAU) had a nearly unfettered right to settle their subrogation claims as they deemed fit. However, neither the existence of that right, nor the fact that the USAU settled the subrogation claims, means that the defendants are now entitled to reduce an award by the amount of money that was paid to Era by USAU and the other insurers. Notably, the defendants paid much less to the insurers than the insurers paid to Era, and the insurers in this case (unlike the insurers in *Ruggles*) did not demand that Era discontinue its pursuit of the difference between those two sums.

Finally, the defendants' reliance on Wing v. GEICO Insurance Co., 17 P.3d 783 (Alaska 2001), is similarly misplaced. (Doc. 462, p. 6.) In *Wing*, the injured plaintiff's arbitration award was reduced to reflect sums paid to her by her own insurance company. However, that reduction occurred in the context of a suit between the plaintiff/victim and her own insurer (GEICO). Because the reduction was sought by the plaintiff/victim's own insurer, the collateral source rule and *Falconer* did not apply. (Wing. v GEICO, supra, 17 P.3d at p. 788 ["Because all payments were made by GEICO for or to Wing, there was no collateral source to be considered."]) This, of course, is not the situation in this case,

because Era has neither sought nor obtained an award against its own insurers.  If such an award was ever obtained, then the award would naturally be reduced to reflect payments already made to Era by USAU.

**2.3**    ***Gibson v. GEICO* Does Not Say That The Statute Applies Only To Unsubrogated Payments From Collateral Sources – That Case Says The Statute Applies Only To Payments From Collateral Sources.**

Citing Gibson v. GEICO General Ins. Co., — P.3d — (2007 WL 625206) (Alaska 2007), the defendants claim that "[t]he statute only applies to 'unsubrogated payments from collateral sources.'"  (Doc. 462, p. 5.)  But this argument only serves to demonstrate the rather disingenuous and shallow nature of the defendants' position.  Nowhere in *Gibson* did the Alaska Supreme Court ever hold, suggest, or even imply that section 09.17.070 applied only to *unsubrogated* payments from collateral sources, as the defendants claim.  Instead, the Alaska Supreme Court held that "AS 09.17.070 does not apply to this situation since payments from a tortfeasor's insurance company are not considered 'collateral' payments." (Id. at p. *5.)

Plaintiff wholeheartedly agrees with *Gibson* on this point, and that is why plaintiff has repeatedly said that any credit for the payments made by the *defendants* (not collateral sources) is an issue that is *not* covered by the statute.  But the same cannot be said about reductions for money Era received from its own insurers, who are undeniably collateral sources.  As to the payments made by these subrogated collateral sources, *Gibson* says nothing that is very useful to the analysis here, and *Gibson* definitely does *not* say that section 09.17.070 is the wrong starting point for the Court's analysis.

In summary, *if* the jury awards damages to the plaintiff for the fair market value of the helicopter, then Alaska's statutory collateral source rule forbids any reduction of that

award based on the $2,047,480.00 that was paid to Era Aviation, Inc. by its own insurers, because the defendants cannot prove that Era's insurers were *unsubrogated* collateral sources. (AK.ST.ANN. § 09.17.070.) **"Accordingly, when, as here, a defendant fails to prove unsubrogated collateral source payments, the appropriate recourse for the trial court is to deny reduction of the verdict …"** (Falconer v. Adams, supra, 974 P.2d 406, 413, fn. 8 (Alaska 1999).)

### 3.0     THE DEFENDANTS MAY NOT OFFER EVIDENCE OF PAYMENTS ERA RECEIVED FROM COLLATERAL SOURCES.

In addition to a damages component discussed above, Alaska's collateral source rule also has an evidentiary component in that strictly forbids the defendants from telling the jury about payments made to Era by collateral sources (like USAU.) (*See*, *e.g.*, Tolan v. Era Helicopters, Inc., 699 P.2d 1265, 1267 (Alaska 1985) ["The collateral source rule thus prohibits the reduction of a plaintiff's damages when he has received compensation from another source. It also has an evidentiary role, excluding evidence of other compensation on the theory that such evidence would affect the jury's judgment unfavorably to the plaintiff on the issues of liability and damages."])

Consistent with this evidentiary component of the collateral source rule, the Court has previously ruled that the defendants may not tell the jury about the money that Era received from its own insurance companies. (Doc. 196, p. 15 ["The Court will grant Plaintiffs' motion to exclude evidence of insurance payments already received in relation to the helicopter crash."].) Despite this clear and unambiguous ruling:

1.    The defendants have identified several trial exhibits (D25, 26, 27, 85) that disclose the fact that Era was paid by USAU and the other insurers, in violation of the collateral source rule; and

2.    The defendants have proposed three special jury instructions (Pretrial Order, pp. 80-82) that tell the jury that Era was paid by USAU and the other insurers, in violation of the collateral source rule; and

3.    The defendants have identified various excerpts form the deposition of Mr. Richard Larew (Exh. D106 and D251) which explain the nature and amount of payments era received from its own insurers, in violation of the collateral source rule

To allow the jury to learn that Era was paid for some of its losses would violate the letter and the spirit of the collateral source rule, and would necessarily constitute reversible error. Plaintiff respectfully urges the Court to reaffirm its previous ruling that all such evidence is inadmissible.

## 4.0    THE UNC DEFENDANTS MAY NOT OFFER TESTIMONY IN THEIR CASE-IN-CHIEF FROM TWO EMPLOYEES WHO WERE NEVER IDENTIFIED DURING DISCOVERY OR IN MANDATORY RULE 26 DISCLOSURES.

In the proposed Pretrial Order, the UNC defendants have listed two witnesses who were never identified in the defendants' Rule 26 disclosures or during the course of discovery.  (Pretrial Order, pp. 126-127.)  These two witnesses, Mr. **Mike Cumnock** and Mr. **Mike Snellgrove**, are listed as "Shall Be Called" by the UNC defendants, and both

- 9 -

witnesses are identified as employees of the UNC defendants.  According to the UNC defendants, these two witnesses will testify on a variety of issues including "procedures," "training," "manuals" and the "work performed" by the UNC defendants.  (Ibid.)

Mr. Cumnock and Mr. Snellgrove were never identified in the UNC defendants' Rule 26 disclosures; neither witness was identified in the defendants' expert disclosures; and neither witness was mentioned or identified during the course of discovery.  Moreover, many of the issues on which these witnesses will testify were the subject of a Rule 30(b)(6) deposition where the UNC defendants designated a third person (Mr. Weldon Walshe) to testify on the same issues.

Rule 26(a)(1)(A) mandates the early disclosure of the names of "each individual likely to have discoverable information that the disclosing party may use to support its claims or defenses …"  (FED.R.CIV.P. 26(a)(1)(A).)  Rule 37 puts teeth into Rule 26 by prohibiting the UNC defendants from *sneaking* these two witnesses into this case.  Rule 37 provides an automatic and mandatory sanction of exclusion for these two witnesses:

> **A party that without substantial justification fails to disclose information required by Rule 26(a) … is not, unless such failure is harmless, permitted to use as evidence at a trial … any witness … not so disclosed.**  (Fed.R.Civ.P. 37(c)(1).)

Based on the foregoing, plaintiff respectfully submits that Mr. Cumnock and Mr. Snellgrove are not allowed to testify in defendants' case-in-chief.

/ / /

- 10 -

## 5.0    ALL CLAIMS AND RIGHTS OF ERA AVIATION, INC. WERE ASSIGNED TO PLAINTIFF ERA HELICOPTERS, LLC.

The defendants continue to raise a substantial fuss about the assignment of Era Aviation, Inc.'s claims to the present plaintiff, Era Helicopters, LLC.   According to the defendants, to the extent any assignment occurred: (1) that assignment occurred after Era Aviation had abandoned its claims in bankruptcy; (2) the defendants were never given a copy of the assignment until recently; (3) the assignment is "inconsistent" with the declaration of Ms. Anna Goss; (4) the assignor (Era Aviation, Inc.) only transferred its right to recover $52,520.00 that was left unpaid by Era's own insurers; and (5) claims for punitive damages cannot be assigned.   (*See*, Proposed Pretrial Order, pp. 17-18.)   Each of these arguments is addressed separately, below.[3]

/ / /

---

[3]    Plaintiff Era Helicopters, LLC does not deny that it must prove its rights as the assignee of Era Aviation's claims.   "An assignee of a contractual right must prove the validity of his ownership claims.   [Citation omitted.]   Additionally, general contract principles dictate that to prove an effective assignment, the assignee must come forth with evidence that the assignor meant to assign rights and obligations under the contracts."   (Britton v. Co-Op Banking Group, 4 F.3d 742, 746 (9th Cir. (E.D.Cal.) 1993).)   During the trial, plaintiff will satisfy this burden of proof with testimony from Era Helicopters' CFO (Ms. Goss).

Of course, its is also undisputed that the defendants may assert against Era Helicopters any defenses that could have been asserted against Era Aviation.   "If there is an assignment of a thing in action, the action by the assignee is without prejudice to a setoff or other defense existing at the time of, or before notice of the assignment."   (AK.ST.ANN. § 09.68.060.)

**5.1     The Assignment Occurred *Before* Era Aviation Filed A Voluntary Petition For Chapter 11 Bankruptcy.**

It is undisputed that the helicopter was owned by Era Aviation, Inc.  (*See*, Proposed Pretrial Order, p. 11, Stipulated Fact No. 1.)

On April 1, 2005, Era Aviation, Inc. assigned all of its claims in this matter to Era Helicopters, LLC.  (Exh. P230 [Master Bill of Sale and Assignment] [copy attached to this brief].)

On December 28, 2005 – more than eight months *after* the assignment of these claims to Era Helicopters, LLC – Era Aviation, Inc. filed a voluntary petition for Chapter 11 bankruptcy protection.  (*In re Era Aviation, Inc.*, U.S. Bankruptcy Court, District of Alaska, Case No. 05-02265, Doc. 1.)

Based on these undisputed facts, there is no merit to the defendants' claim that Era Aviation abandoned its claims in bankruptcy before assigning those claims to the present plaintiff, Era Helicopters, LLC.

**5.2     The Defendants Were Provided With A Copy Of The Assignment In A Reasonable And Timely Manner.**

All discovery in this case was closed on October 1, 2004.  (Doc. 199.)  The assignment occurred on April 1, 2005.  (Exh. P230.)  Thus, ***the assignment did not exist during the time when discovery was being conducted in this case.***

On February 6, 2006, the defendants filed a motion asking the Court to substitute the real party in interest.  (Doc. 389.)  The Court granted the defendants' motion on March 13, 2006 (Doc. 392), and on March 27, 2006, plaintiff Era Helicopters, LLC was substituted in place of Era Aviation, Inc.  (Doc. 393).  The defendants objected to the substitution, and

asked the Court for permission to conduct discovery on the issue of the assignment of Era Aviation's claims to Era Helicopters, LLC.  (Doc. 394, 396, 398 and 399.)  On June 23, 2006, the Court overruled the defendants' objections to the substitution, and denied the defendants' motion to reopen discovery on the issue of the assignment of Era Aviation's claims.  (Doc. 402.)  Accordingly, *the Court refused to allow the defendants to conduct discovery related to the assignment.*

On February 20, 2007, plaintiff filed its exhibit list.  (Doc. 427.)  The assignment was *not* listed as an exhibit on that list because plaintiff believed that *as of June 23, 2006, there were no disputed issues as to the propriety of the assignment.*

Also on February 20, 2007, the defendants filed their respective Trial Briefs.  (Doc. 420 and 429.)  Pursuant to the Court's order (Doc. 413), the defendants' Trial Briefs were required to "disclose and address those theories of the case that the party will present at trial."  (Doc. 413, p. 4.)  *The defendants' Trial Briefs make no mention of any issues regarding the assignment of Era Aviation's claims to Era Helicopters, LLC.*

On March 1, 2007, all counsel met in Anchorage to discuss the preparation of the Pretrial Order.  During that meeting, the defendants' lawyers disclosed – *for the first time ever* – that they intended to dispute the existence and validity of the assignment of Era Aviation's claims.  *Prior to this meeting on March 1, 2007, plaintiff reasonably believed that there were no issues relating to the assignment, based on the Court's order* (Doc. 402) *and the defendants' Trial Briefs* (Doc. 420 and 429.)

On March 20, 2007, plaintiff provided the defendants with a copy of the assignment, and advised that the assignment would be included in plaintiff's exhibits list as exhibit P230. *Accordingly, the defendants were provided with a copy of the assignment within three*

- 13 -

*weeks after the defendants first disclosed their plan to attack the validity and scope of the*
*assignment.*

**5.3    The Written Assignment Is Consistent With The Declaration Of Ms. Anna**
       **Goss.**

In response to the defendants' objections to the substitution of Era Helicopters, LLC
in place of Era Aviation, Inc., plaintiff provided the Court with a declaration from Ms. Anna
Goss, the CFO of Era Helicopters, LLC.  (Doc. 395, Attchmnt. 1.)  The defendants argue
that the written assignment (Exh. P230) is "inconsistent with" Ms. Goss's declaration
regarding the issues of "who became the assignee and as to the date of the assignment."
(Pretrial Order, p. 17.)

*There are no inconsistencies of any kind on any material issues relating to the*
*assignment.*    Both Ms. Goss's declaration (Doc. 395, Attchmnt. 1) and the written
assignment (Exh. P230) both clearly and unequivocally identify Era Helicopters, LLC as the
assignee of Era Aviation's claims.

To the extent the defendants believe there are some other "inconsistencies" that need
to be explored, plaintiff is ready to make Ms. Goss available for a pretrial deposition at a
location near Ms. Goss's place of work, if the Court deems such a deposition necessary and
appropriate.  Ms. Goss is also prepared to testify at trial, if necessary.

/ / /

**5.4    The Assignor (Era Aviation, Inc.) Possessed A Valid Legal Claim For The**
**$2.1 Million Fair Market Value Of The Helicopter.**

According to the defendants, the assignor (Era Aviation, Inc.) possessed only a claim
for $52,520.00 in losses that were not paid by Era's own insurers.  (Pretrial Order, p. 18.)
This argument should be rejected on at least two grounds.

1.    First, *before* the assignment, the Court ruled that the assignor (Era Aviation, Inc.)
      would be entitled to ask the jury to award $2.1 million for the fair market value of
      the destroyed helicopter, even though Era had been paid for some of those losses by
      its own insurers.  (Doc. 33 ["Era may offer evidence of its total damages at trial."])
      That right was subsequently assigned to Era Helicopters, LLC.  (Exh. P230.)

2.    Second, the defendants' argument is based on a mistaken interpretation of the law.
      Alaska's statutory collateral source rule forbids any reduction of an award based on
      the $2,047,480.00 that was paid to Era Aviation, Inc. by its own insurers, because the
      defendants cannot prove that Era's insurers were *unsubrogated* collateral sources.
      (AK.ST.ANN. § 09.17.070.)  **"Accordingly, when, as here, a defendant fails to**
      **prove unsubrogated collateral source payments, the appropriate recourse for**
      **the trial court is to deny reduction of the verdict …"**  (Falconer v. Adams, 974
      P.2d 406, 413, fn. 8 (Alaska 1999).)

/ / /

**5.5    Claims For Punitive Damages Can Be Assigned.**

- 15 -

The defendants say that to the extent Era Aviation, Inc. possessed a claim for punitive damages, that claim could not be assigned without violating public policy against champerty and maintenance. (Pretrial Order, p. 18.)  This argument is patently absurd and frivolous.

Of course, as a general rule, there can be no valid assignment of a claim for personal injuries, because to do so would threaten to promote trafficking in pain and suffering. (Croxton v. Crowley Maritime Corp., 758 P.2d 97, 99 (Alaska 1988).)  On the other hand, claims which do not involve personal injuries (like the claims in this case) may be freely assigned without violating public policy.  (Deal v. Kearney, 851 P.2d 1353, 1356 (Alaska 1993).)  Here, the underlying claims are not based on any "personal injuries."  In fact, the "personal injury" aspect of this case (arising from the wrongful death of the pilot) was resolved in separate litigation in Florida.  In this case, the only claims are for property damage and general monetary obligations, all of which are freely assignable as a matter of law.

Plaintiff is unaware of an published decisions from Alaska courts which hold that punitive damages claims may not be assigned, and no Alaska authorities have been identified by the defendants.  However, because Era Aviation's underlying property damage claims are assignable, the general rule is that Era's related claims for punitive damages are also freely assignable.  (See, e.g., Cuson v. Maryland Cas. Co., 735 F.Supp. 966, 970 (D.Hawaii 1990); First Federal Sav. and Loan Ass'n of Pittsburgh v. Oppenheim, Appel, Dixon & Co., 629 F.Supp. 427, 447 (S.D.N.Y. 1986); Kleinwort Benson North America, Inc. v. Quantum Financial Services, Inc., 285 Ill.App.3d 201, 213 [673 N.E.2d 369, 378] (Ill.App. 1996); Oppel v. Empire Mut. Ins. Co., 517 F.Supp. 1305, 1307 (S.D.N.Y. 1981).)

Era Av 4EH/PO/WO Lg24175/20070223

**6.0    THE UNC DEFENDANTS MAY BE HELD STRICTLY LIABLE FOR INSTALLING A DEFECTIVE COMPONENT PART IN ERA'S ENGINE, EVEN IF THE UNC DEFENDANTS DID NOT "SELL" THAT DISK TO ERA.**

The UNC defendants claim that they cannot be held strictly liable for damages caused by the defective CT disk, because they "only installed the CT disk in the left hand [engine], which is not a 'sale' as intended by Alaska law."  (Pretrial Order, p. 19.)   The defendants are wrong.

In Bell v. Precision Airmotive Corp., 42 P.3d 1071 (Alaska 2002), the Alaska Supreme Court agreed that "[i]n a hybrid sale/service transaction where the predominant purpose of the transaction is to overhaul and service an engine, [the] overhauler/repairer [is] strictly liable for selling and installing, during the course of the overhaul, a used, defective component part that the overhauler/repairer had subjected to extensive repair, inspection and testing[.]"  (Id. at pp. 1071-1072.)

The evidence to be presented at trial will prove that the UNC defendants: (1) sold the CT disk to Era when the disk was new; (2) charged Era for the CT disk; and (3) performed extensive repairs on the CT disk before reinstalling the disk in Era's engine.  Under these circumstances, the UNC defendants are subject to strict liability as the "seller" of a defective product, provided (of course) that plaintiff meets the required burden of proof during the trial.

/ / /

**7.0    PLAINTIFF'S OBJECTIONS TO DEFENDANTS' EXHIBITS HAVE NOT BEEN RESOLVED, AND THOSE OBJECTIONS SHOULD BE SUSTAINED.**

- 17 -

Plaintiff's objections to defendants' exhibits are set forth in attached Appendices "A" and "B." Those objections have not been resolved by the parties. Plaintiff respectfully requests that its objections be sustained for the reasons discussed in Appendices "A" and B."

## 8.0    CONCLUSION.

Based on the foregoing, plaintiff respectfully submits that the Court should issue an order:

1. Reaffirming the Court's previous order that plaintiff may ask the jury to award damages for the fair market value of the helicopter, and determining that if such an award is made, then the appropriate post-trial reduction of that award is a credit for the sums paid by each non-collateral source (defendants) to settle the underlying subrogation claims, and not the sums that were paid to Era by subrogated collateral sources; and

2. Reaffirming the Court's previous order barring the defendants from offering evidence or argument for the purpose of informing the jury about Era's receipt of payments from collateral sources (Era's own insurers); and

3. Barring the defendants from offering testimony in their case-in-chief from two witnesses (Mike Cumnock and Mike Snellgrove) who were not identified in the defendants' mandatory Rule 26 disclosures; and

4. Determining as a matter of law that all claims and rights of Era Aviation, Inc., including its claim for punitive damages, were assigned and transferred to Era Helicopters, LLC, prior to Era Aviation's bankruptcy; and

- 18 -

5.  Determining that the UNC defendants may be held strictly liable for selling, installing and repairing a defective product under Alaska law; and

6   Sustaining plaintiff's objections to the defendants' trial exhibits listed in Appendices "A" and "B."

Respectfully Submitted,

Dated:  March __30__, 2007            **LAW OFFICES OF JON A. KODANI**

                                      s/  Jeffrey J. Williams_____

                                      By:     Jon A. Kodani, Esq.
                                              Jeffrey J. Williams, Esq.

                                      2200 Michigan Avenue
                                      Santa Monica, CA  90404
                                      Tel. (310) 453-6762
                                      EMail *lojak@kodanilaw.com*

                                      Attorneys for Plaintiff
                                      Era Helicopters, LLC

- 19 -